**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVELIA RODRIGUEZ; ERIKKA WILSON; A.N., A MINOR; AIDEN GUNDLACH; ZACHARY BUCKUS; RAYMON MARINES; AND J.V., A MINOR on behalf of themselves and all others similarly situated, | Case No. 1:23-cv-04953 |
| Plaintiffs, | Judge Sharon Johnson Coleman |
| v. | **Hearing Requested** |
| BYTEDANCE INC.; BEIJING DOUYIN INFORMATION SERVICE CO. LTD. F/K/A BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; BYTEDANCE LTD.; BYTEDANCE PTE. LTD.; BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; AND TIKTOK INC. F/K/A MUSICAL.LY INC., | |
| Defendants. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
BY DEFENDANTS BYTEDANCE INC., BYTEDANCE LTD.,
BYTEDANCE PTE. LTD., AND TIKTOK INC.</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS AND ALLEGATIONS................................................................ 2

      A.    The CapCut App and Privacy Policy ........................................................... 2

      B.    Defendants .................................................................................................... 2

      C.    Plaintiffs and the Amended Complaint ........................................................ 2

ARGUMENT ........................................................................................................................ 3

I.      LEGAL STANDARD UNDER RULE 12(B)(6) ................................................ 3

II.     CAPCUT'S PRIVACY POLICY PRECLUDES MOST OF
       PLAINTIFFS' CLAIMS ..................................................................................... 4

III.    THE CFAA CLAIM FAILS ................................................................................ 6

      A.    Plaintiffs Authorized CapCut to Access Their Devices............................. 6

      B.    Plaintiffs Do Not Allege CFAA "Loss"...................................................... 8

      C.    Plaintiffs Do Not Allege a Threat to Public Health or Safety................... 9

IV.    THE CDAFA CLAIM FAILS ............................................................................ 9

V.     THE VPPA CLAIM FAILS................................................................................ 10

      A.    CapCut is Not a "Video Tape Service Provider"...................................... 11

      B.    There Was No VPPA "Disclosure" ........................................................ 11

      C.    No PII Was Disclosed ............................................................................... 13

VI.    THE ECPA AND CIPA CLAIMS FAIL .......................................................... 14

      A.    There Was No "Interception" of Any "Contents," So the ECPA
           and CIPA Section 631 Claims Fail .......................................................... 14

      B.    There Was No "Recording" of "Confidential" Communications,
           So the CIPA Section 632 Claim Fails...................................................... 17

VII.   THE SCA CLAIM FAILS ................................................................................ 17

VIII.  THE CONSTITUTIONAL AND COMMON-LAW PRIVACY CLAIMS
       FAIL.................................................................................................................. 18

      A.    The Collection Was Disclosed and Within Common-Sense
           Expectation ............................................................................................... 19

      B.    Plaintiffs Do Not Plausibly Allege a Highly Offensive Collection
           of Data in Which They Have a Reasonable Expectation of Privacy ....... 19

IX.    THE UCL CLAIM FAILS................................................................................. 22

X.     THE FAL CLAIM FAILS ................................................................................. 24

i

**TABLE OF CONTENTS**
(continued)

**Page**

XI.  THE LARCENY AND CONVERSION CLAIMS FAIL .................................. 25

XII.  THE RESTITUTION AND UNJUST ENRICHMENT CLAIMS FAIL ............ 26

XIII.  THE BIPA CLAIMS FAIL................................................................................ 26

    A.  Plaintiffs Do Not Plausibly Allege The Collection of Their Biometric Identifiers or Biometric Information...................................... 27

    B.  Plaintiffs Fail to Allege Other Elements of a BIPA Claim...................... 32

CONCLUSION.......................................................................................................................... 34

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alario v. Knudsen*,
2023 WL 8270811 (D. Mont. Nov. 30, 2023) ..........................................................................9

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ...............................................................................................8

*Antonyan v. Ford Motor Co.*,
2022 WL 1299964 (C.D. Cal. Mar. 30, 2022)....................................................................24, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................3, 18, 20

*Bank of N.Y. v. Fremont Gen. Corp.*,
523 F.3d 902 (9th Cir. 2008) ...................................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................3, 7, 12

*Berryman v. Merit Prop. Mgmt., Inc.*,
62 Cal. Rptr.3d 177 (Cal. Ct. App. 2007) ...............................................................................23

*In re BPS Direct, LLC*,
2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) ...........................................................................20

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ....................................................................7, 8

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ..............................................................................14, 16

*Brown v. Madison Reed, Inc.*,
622 F. Supp. 3d 786 (N.D. Cal. 2022) ...................................................................................24

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) .................................................................................................3

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) ......................................................................27, 31, 32

*Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*,
770 F.3d 322 (5th Cir. 2014) ................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Castelaz v. Estee Lauder Cos.*,
    2024 WL 136872 (N.D. Ill. Jan. 10, 2024)................................................................27, 28, 29

*Clarke v. Aveda Corp.*,
    2023 WL 9119927 (N.D. Ill. Dec. 1, 2023).............................................................27, 28, 29

*Colo. Republican Comm. v. Doe*,
    2016 WL 3922156 (D. Colo. July 21, 2016) .........................................................................9

*Cottle v. Plaid Inc.*,
    536 F. Supp. 3d 461 (N.D. Cal. 2021) ..................................................................................8

*Daichendt v. CVS Pharmacy, Inc.*,
    2022 WL 17404488 (N.D. Ill. Dec. 2, 2022)..........................................................27, 28, 29

*Dinerstein v. Google, LLC*,
    73 F.4th 502 (7th Cir. 2023) ...............................................................................................20

*Doe v. Meta Platforms, Inc.*,
    2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .....................................................................19

*Ehardt v. Austin*,
    2010 WL 11712819 (N.D. Ill. Jan. 26, 2010) ...............................................................16, 17

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ..............................................................................................13

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................................24

*Emblaze Ltd. v. Apple Inc.*,
    2015 WL 396010 (N.D. Cal. Jan. 29, 2015) ..................................................................30, 31

*Epstein v. Epstein*,
    843 F.3d 1147 (7th Cir. 2016) ............................................................................................16

*Esparza v. Lenox Corp.*,
    2023 WL 2541352 (N.D. Cal. Mar. 16, 2023)................................................................14, 17

*In re Facebook Priv. Litig.*,
    572 F. App'x 494 (9th Cir. 2014) ........................................................................................23

*Florida v. Riley*,
    488 U.S. 445 (1989)............................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
  958 F.2d 896 (9th Cir. 1992) ...................................................25

*Ghanaat v. Numerade Labs, Inc.*,
  2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) ...................................13

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) .........................................14

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ......................................15, 20

*In re Google Cookie*,
  806 F.3d 125 (3d Cir. 2015)....................................................10

*Griffith v. TikTok Inc.*,
  2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ..................................9, 23

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................18, 19, 23

*Hart v. TWC Prod. & Tech. LLC*,
  2023 WL 3568078 (N.D. Cal. Mar, 30, 2023)......................................6

*Hepp v. Ultra Green Energy Servs., LLC*,
  2016 WL 1073070 (N.D. Ill. Mar. 18, 2016).....................................4

*Hernandez v. Hillsides, Inc.*,
  211 P.3d 1063 (Cal. 2009) ....................................................18

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) .................................................4

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  865 P.2d 633 (Cal. 1994) ...............................................4, 6, 19

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) .................................................6

*In re Hulu Priv. Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) .........................................13

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........................................22

## TABLE OF AUTHORITIES

**Page(s)**

*Indiana v. TikTok Inc.*,
No. 02D03-2212-PL-401 (Ind. Sup. Ct. Nov. 29, 2023) ............................................1

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................24

*Kwikset Corp. v. Superior Ct.*,
246 P.3d 877 (Cal. 2011) ....................................................................22

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..........................................................25

*Mazzorana v. Kelly*,
2022 WL 1211482 (N.D. Ill. Apr. 25, 2022) ......................................................16

*McCoy v. Alphabet Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 201) ......................................................18, 21

*McGoveran v. Amazon Web Servs., Inc.*,
2023 WL 2683553 (D. Del. Mar. 29, 2023) ......................................................32

*McGoveran v. Amazon Web Servs., Inc.*,
488 F. Supp. 3d 714 (S.D. Ill. 2020)............................................................31

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ..........................................................33

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)............................................................10, 11, 13

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..........................................................23

*Paracor Fin., Inc. v. GE Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996) ................................................................26

*People v. Williams*,
305 P.3d 1241 (Cal. 2013) ....................................................................4

*Pfizer Inc. v. Superior Ct.*,
105 Cal. Rptr.3d 795 (Cal. Ct. App. 2010)......................................................24

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) ..........................................................4

vi

# **TABLE OF AUTHORITIES**

**Page(s)**

*Pratt v. Higgins*,
    2023 WL 4564551 (N.D. Cal. July 17, 2023)..........................................................................10

*Price v. Apple, Inc.*,
    2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .........................................................................26

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..................................................................................27

*Rivera v. Google, Inc.*,
    366 F. Supp. 3d 998 (N.D. Ill. 2018) ...............................................................................20, 21

*Rodriguez v. Sony Comput. Ent. Am., LLC*,
    801 F.3d 1045 (9th Cir. 2015) ..............................................................................................11

*Rosenfeld v. Talamantes*,
    2022 WL 2903144 (C.D. Cal. May 23, 2022) ....................................................12, 18, 19, 25

*Saeedy v. Microsoft Corp.*,
    2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ..................................................................21

*Siry Inv., L.P. v. Farkhondehpour*,
    513 P.3d 166 (Cal. 2022) ......................................................................................................25

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................................................................................4

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................................26

*Sterk v. Redbox Automated Retail, LLC*,
    770 F.3d 618 (7th Cir. 2014) ................................................................................................11

*Taha v. Int'l Brotherhood of Teamsters Local 781*,
    947 F.3d 464 (7th Cir. 2020) ................................................................................................10

*Thomasson v. GC Servs. Ltd. P'ship*,
    321 F. App'x 557 (9th Cir. 2008) .........................................................................................17

*In re TikTok Inc. Consumer Privacy Litig.*,
    No. 1:20-cv-04699 (N.D. Ill. Jul. 28, 2022) ..........................................................................1

*United States v. Abouammo*,
    2022 WL 17584238 (N.D. Cal. Dec. 12, 2022)....................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*United States v. Corbitt*,
    588 F. App'x. 594 (9th Cir. 2014) ...................................................................21

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ...........................................................................6

*Valentine v. Wideopen W. Fin., LLC*,
    2013 WL 5423846 (N.D. Ill. Sept. 27, 2013) .................................................16

*Valenzuela v. Keurig Green Mountain, Inc.*,
    2023 WL 3707181 (N.D. Cal. May 24, 2023) .................................................16

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021).............................................................................6, 7, 8

*Vance v. Microsoft Corp.*,
    534 F. Supp. 3d 1301 (W.D. Wash. 2021)......................................................33

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................24

*Williams v. Rohm & Hass Pension Plan*,
    2003 WL 2227111 (S.D. Ind. Sept. 26, 2003) .....................................12, 18, 19, 25

*Williamson v. Curran*,
    714 F.3d 432 (7th Cir. 2013) ...........................................................................4

*Zak v. Bose Corp.*,
    2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)............................................14, 15

**Statutes**

740 ILCS 14 *et seq*.................................................................4, 27, 32, 33, 34

18 U.S.C. § 1030 *et seq*..............................................................4, 6, 7, 8, 9

18 U.S.C. § 2510 *et seq*...............................................................4, 14, 16, 17

18 U.S.C. § 2701 *et seq*.....................................................................4, 17, 18

18 U.S.C. § 2710 *et seq*............................................................4, 10, 11, 12, 13

Cal. Bus. & Prof. Code § 17200 *et seq* ..............................................................22

Cal. Bus. & Prof. Code § 17500 *et seq* ..............................................................24

Cal. Civ. Code § 3515.................................................................................4, 6, 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cal. Pen. Code § 502 *et seq* ..................................................................................4, 10

Cal. Pen. Code § 631 *et seq* ..................................................................................4, 14

Cal. Pen. Code § 632 *et seq* .............................................................................4, 14, 17

**Other Authorities**

Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 4:7 (2024) ......................................7

Federal Rules of Civil Procedure Rule 9(b) ...........................................................23, 24

Federal Rules of Civil Procedure Rule 12(b)(6) .......................................................1, 3

Public Access Op. No. 14-008, 2014 WL 4407615 ...................................................27

Public Access Op. No. 17-011, 2017 WL 10084298 ............................................31, 32

S. Rep. No. 100-599 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1 ..........................10

## INTRODUCTION

This purported data privacy lawsuit involving the "CapCut" video-editing app is no more than a bad copycat of a prior lawsuit long-since resolved. Indeed, Plaintiffs' original complaint copied whole sections from a prior complaint involving Defendant TikTok Inc.'s "TikTok" app that had nothing to do with CapCut and no resemblance to how CapCut functions. After this defect was called out, Plaintiffs filed an amended complaint that only compounds, rather than cures, this problem. They now assert *fourteen* separate causes of action—nearly every privacy statute on the books—regardless of merit or relevance. ECF No. 22 ("Amended Complaint" or "ACAC"). Like the original complaint, the allegations in the Amended Complaint bear no resemblance to what CapCut is or how it functions.

Plaintiffs' attempt to copy the prior lawsuit also fails for reasons recognized by the courts in that suit and other suits: the Privacy Policy *does* "disclose the ways in which Defendants collect, use, and share data and information submitted by App users." Memorandum Opinion & Order at 50–51 & n.26, *In re TikTok Inc. Consumer Privacy Litig.*, No. 1:20-cv-04699, (N.D. Ill. Jul. 28, 2022), ECF No. 261; *see also* Order Granting Defendants' Motion to Dismiss at 18, *Indiana v. TikTok Inc.*, No. 02D03-2212-PL-401, (Ind. Sup. Ct. Nov. 29, 2023) (dismissing similar complaint because "TikTok disclosed to TikTok users the ways in which their data may be accessed and with whom it may be shared"). Because CapCut plainly discloses its data collection practices in its Privacy Policy, and for myriad other reasons explained below, this action should be dismissed under Rule 12(b)(6).

## STATEMENT OF FACTS AND ALLEGATIONS

### A. The CapCut App and Privacy Policy

CapCut is a video-editing tool with various filters, effects, and music that users can apply to their photographs and videos before sharing those photographs and videos on social media platforms. ACAC ¶¶ 1, 51. As with all apps published in the major app stores, use of CapCut is subject to a published privacy policy that must be agreed to by users. *Id.* ¶ 124. CapCut's Privacy Policy is described and linked on the app store's page where users can download the app. *See* Declaration of Anthony J Weibell March 14, 2024 ("Weibell Dec.") Exs. 6–7. After downloading the app, a user must agree to CapCut's Terms of Service and acknowledge having read its Privacy and Cookies Policies before accessing any part of the app. *Id.* ¶ 9, Ex. 8. Users are also presented with a notice about the Privacy Policy each time they log in. *Id.*

### B. Defendants

CapCut is published by Defendant ByteDance Pte. Ltd. with certain services in the U.S. provided by Defendant ByteDance Inc. ACAC ¶¶ 27–28. Plaintiffs have sued and served two other entities that do not operate CapCut: TikTok Inc., which is the provider of the TikTok platform in the United States; and ByteDance Ltd., a Cayman Islands company that Plaintiffs incorrectly allege is headquartered in Beijing. *Id.* ¶¶ 24, 29.[1]

### C. Plaintiffs and the Amended Complaint

Plaintiffs claim to be CapCut users. Despite the plain language of the Privacy Policy, Plaintiffs allege that "unbeknownst to users," CapCut collected their personal data, photos, videos,

---

[1] Only the four defendants that have been served (ByteDance Pte. Ltd., ByteDance Inc., TikTok Inc., and ByteDance Ltd.) are referred to herein as "Defendants." Two foreign entities are named as defendants but have not been served and have not appeared: Beijing Douyin Information Service Co. Ltd. and Beijing ByteDance Technology Co. Ltd.

and other information, including their biometric information. ACAC ¶¶ 99–100, 103–05, 303. Based on this core allegation, Plaintiffs assert fourteen causes of action: violations of the federal Computer Fraud and Abuse Act ("CFAA"), Video Privacy Protection Act ("VPPA"), Electronic Communications Privacy Act ("ECPA") and Stored Communications Act ("SCA"); violations of California's Comprehensive Data Access and Fraud Act ("CDAFA"), Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), California Invasion of Privacy Act ("CIPA") and constitutional right to privacy; intrusion upon seclusion, conversion, statutory larceny and restitution/unjust enrichment under California law; and violation of the Illinois Biometric Information Privacy Act ("BIPA"). *Id.* ¶¶ 155–329.

## ARGUMENT

## I. LEGAL STANDARD UNDER RULE 12(B)(6)

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts will not accept the truth of conclusory allegations or unwarranted inferences, nor will they accept legal conclusions as true merely because they are cast in the form of factual allegations. *Id.* at 678–79.

Nor should the Court accept as true allegations contradicted by documents incorporated by reference or by facts subject to judicial notice. This rule "prevents a plaintiff from 'evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit.'" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). "[T]his circuit has taken a

relatively expansive view of the documents that a district court properly may consider in disposing of a motion to dismiss," including "information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436, 443 (7th Cir. 2013). Because CapCut's Terms of Service and Privacy Policy are publicly available and govern the relationship between CapCut and Plaintiffs, and because Plaintiffs place them at issue in their Amended Complaint, *see* ACAC ¶¶ 124, 128–39, they are central to Plaintiffs' claims and may be considered for this motion. *Hepp v. Ultra Green Energy Servs., LLC*, 2016 WL 1073070, at *2 n.1 (N.D. Ill. Mar. 18, 2016) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]").

## II. CAPCUT'S PRIVACY POLICY PRECLUDES MOST OF PLAINTIFFS' CLAIMS

All privacy claims are defeated by consent.[2] Contrary to the premise of the Amended Complaint, CapCut's data collection practices are not secret or hidden—they were published to the world. As with all apps published in the major app stores, CapCut publishes and informs users of its Privacy Policy, which discloses the collection of all data at issue. Users expressly or impliedly consent to the policy upon downloading and using the app.

---

[2] *See, e.g.*, *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 648 (Cal. 1994) ("no wrong is done to one who consents"); Cal. Civ Code § 3515 (same); 18 U.S.C. § 1030(a)(2) (CFAA); 18 U.S.C. § 2710(b)(2)(B) (VPPA); 18 U.S.C. § 2511(2)(c) (ECPA); 18 U.S.C. § 2701(a) (SCA); Cal. Pen. Code § 502(c)(2) (CDAFA); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955–56 (N.D. Cal. 2017) (California constitutional right to privacy and common-law intrusion upon seclusion); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (FAL and UCL); Cal. Pen. Code §§ 631(a), 632(a) (CIPA); *People v. Williams*, 305 P.3d 1241, 1245 (Cal. 2013) (statutory larceny); *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008) (conversion); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) (unjust enrichment); 740 ILCS 14/15(b)(3) (BIPA).

The CapCut Privacy Policy discloses all of the plausibly alleged conduct in the Amended Complaint and thus defeats most of Plaintiffs' claims.[3] It discloses that CapCut collects users' usage data, photos, videos, and other user-generated content, as well as registration information provided by the user (*e.g.*, birthdate, gender and other social network account information), unique device identifiers, and location data. *See* Weibell Dec. Ex. 4 at 3–4 (CapCut Privacy Policy, April 25, 2022). The Privacy Policy also explains that "to enable special video effects, for content moderation, and for other non-personally-identifying operations," CapCut "may collect information about the images and audio that are a part of your User Content," including "identifying the objects and scenery that appear" and "the existence and location within an image of face and body features and attributes." *Id.* Ex. 4 at 3. The Privacy Policy does not disclose the collection of face scans and voiceprints because, as explained in Section XIII, CapCut does not collect that information, and Plaintiffs do not adequately allege otherwise.

Not only does the Privacy Policy disclose what CapCut collects, it also discloses how it may use the data (targeted advertising, personalization and research) and with whom it might share it (with "any member of our group, which means our subsidiaries, our ultimate holding company and its subsidiaries, or companies that we control, are controlled by or under common control, and our service providers and strategic business partners, in each case in or outside your country"). *Id.* Ex. 4 at 5, 6. Every version of the Privacy Policy since April 25, 2022, has included identical or near-identical language regarding the types of data collected, its uses of the data and with whom it may share the data. *See, e.g.*, *id.* Ex. 5.

---

[3] The claims precluded by the Privacy Policy are Plaintiffs' CFAA, ECPA, SCA, CDAFA, UCL, FAL, CIPA, constitutional privacy, intrusion upon seclusion, conversion, statutory larceny, and restitution/unjust enrichment claims. *See supra* n.2. Although VPPA and BIPA claims have separate statutory requirements for notice and consent, those claims are not well-pled and fail for other reasons explained below.

Plaintiffs were provided these disclosures. They cannot now sue on the theory that CapCut collected this data "without notice . . . or [their] knowledge and consent." ACAC ¶ 120; *see also Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at \*10 (N.D. Cal. Mar, 30, 2023); *Hill*, 865 P.2d at 648; Cal. Civ. Code § 3515. Plaintiffs' CFAA, ECPA, SCA, CDAFA, UCL, FAL, CIPA, constitutional privacy, intrusion upon seclusion, conversion, statutory larceny, and restitution/unjust enrichment claims should thus be dismissed on this independent threshold defect. Each individual claim also fails for additional reasons explained below.

## III.    THE CFAA CLAIM FAILS

The Computer Fraud and Abuse Act (CFAA) is an "anti-hacking statute" that targets hackers who obtain unauthorized *access* to data. It is not "an expansive misappropriation" statute that governs *use* of data. *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022) (CFAA is focused on deterring computer hackers). The statute only applies to those who "intentionally access[] a computer without authorization or exceed[] authorized access," 18 U.S.C. § 1030(a)(2), not companies that allegedly collect and share too much user data. A private right of action is permitted only when a plaintiff can show specific types of harm recognized by the statute, all "aimed at preventing the typical consequences of hacking." *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021).

This claim suffers two defects. First, the CapCut app, like any app, cannot access data on a device outside the app (such as photos stored on a phone) unless the user expressly grants that permission at the system level. Second, Plaintiffs do not allege facts showing they have suffered the specific type and amount of loss required by the CFAA for standing.

### A.  *Plaintiffs Authorized CapCut to Access Their Devices*

The provision under which Plaintiffs sue, Section 1030(a)(2)(C), concerns only those who "intentionally access[] a computer without authorization or exceed[] authorized access." 18 U.S.C.

§ 1030(a)(2). Exceeding authorized access means the defendant "accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 141 S. Ct. at 1662. The CFAA is only concerned with whether *access* was authorized, not whether *use* was authorized. *See id.* at 1652 (CFAA "does not cover those who . . . have improper motives for obtaining information that is otherwise available to them.").

Plaintiffs' theory that Defendants exceeded their authorized access on Plaintiffs' devices (ACAC ¶ 157) is foreclosed by the simple fact that Plaintiffs voluntarily downloaded the CapCut app on their devices and granted any permissions for the app to access specific types of data on their devices. *See* ACAC ¶¶ 10, 13, 15, 17, 18, 19, 20; *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *8 (N.D. Cal. Aug. 30, 2019) (plaintiffs "concede[d] that [they] voluntarily installed the software update . . . On that ground alone, Plaintiffs' CFAA claim fails."). Plaintiffs make no allegation that Defendants accessed any particular areas of their devices outside of the app itself. At most, they offer the barebones assertion that Defendants have the ability to access unnamed files on their devices. *See* ACAC ¶ 105. But the ability to violate a statute is not the same as violating that statute. *See, e.g.*, Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 4:7 (2024) (evidence showing capacity to commit a crime is inadmissible to show the defendant did commit the crime). Without identifying any specific files that Defendants accessed outside of the CapCut app, the assertion is mere speculation and must be disregarded. *See Twombly*, 550 U.S. at 555.

Nor could Plaintiffs plausibly make such an allegation because the operating systems of Plaintiffs' devices are designed to block any unauthorized access outside of the app. *See Apple Platform Security*, ("access from apps to user data is carefully mediated . . . all apps are sandboxed—to provide the tightest controls"), https://support.apple.com/guide/security/app-

security-overview-sec35dd877d0/1/web/1 (last visited Mar. 14, 2024); *Android Safety*, ("With Android, you choose when to share certain sensitive data with apps you download."), https://www.android.com/safety/privacy/ (last visited Mar. 14, 2024).

Because Plaintiffs do not plead unauthorized access, the CFAA claim must be dismissed.

### B. *Plaintiffs Do Not Allege CFAA "Loss"*

Plaintiffs have no standing to bring a CFAA claim because they cannot and do not allege "loss to 1 or more persons during any 1-year period" as that term is defined. 18 U.S.C. § 1030(c)(4)(A)(i)(I); *id.* § 1030(g). The CFAA defines "loss" narrowly: it is financial loss "relate[d] to costs caused by harm to computer data, programs, systems, or information services." *Van Buren*, 141 S. Ct. at 1659–60 (citing § 1030(e)(11)). This provision "focus[es] on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." *Id.* at 1660. A plaintiff must have incurred costs greater than $5,000 in a given year. *See* § 1030(a)(4).

Plaintiffs assert two putative "losses": (1) the "secret transmission of [their] private and personally identifiable data and content," which allegedly diminished the value of that data, and (2) their devices and batteries were "systematically drained" by Defendants' alleged data collection. ACAC ¶ 158. Neither of these is CFAA loss. Courts have roundly rejected the argument that diminished data value constitutes "costs caused by harm" to the devices at issue. *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019) (denial of profits someone "might have received from commodifying" personal data is not CFAA loss); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 486 (N.D. Cal. 2021) (diminished data value is not CFAA loss). Plaintiffs' "battery drain" theory fails because they cannot allege any dollar value associated with that purported harm or facts suggesting the amount could come close to $5,000. A "bald assertion of $5,000 in

8

damages . . . without any facts to support the allegation is insufficient to sustain a CFAA claim." *Brodsky*, 2019 WL 4141936, at *8 (citations omitted).

### C. *Plaintiffs Do Not Allege a Threat to Public Health or Safety*

Plaintiffs' alternative theory of CFAA harm—that Defendants expose data to access by China-based affiliates and government—fails because Plaintiffs do not allege facts showing "a threat to *public* health or safety." 18 U.S.C. § 1030(c)(4)(A)(i)(IV) (emphasis added). There is no violation unless the defendant "disables computers or deletes data essential to providing medical treatment, public utilities, or emergency response services," or causes a similar *public* catastrophe. *Colo. Republican Comm. v. Doe*, 2016 WL 3922156, at *2 (D. Colo. July 21, 2016).

Plaintiffs do not allege that their devices contain anything but their own photos and data. *See* ACAC ¶¶ 10–22. Defendants' collection of personal data from "ordinary Americans" is not a threat to public health or safety, regardless of Plaintiffs' speculation about their connections to the Chinese government. *See Griffith v. TikTok Inc.*, 2023 WL 9019035, at *5 (C.D. Cal. Dec. 13, 2023) (rejecting same theory). And Plaintiffs' theory is premised on speculation that third parties (here, foreign actors) would use the data for harmful ends—not that Defendants' access itself is harmful. *See, e.g.*, ACAC ¶ 159. A third party's potential use of data cannot support a CFAA claim. *See Colo. Republican Comm.*, 2016 WL 3922156, at *2. And anti-China fearmongering is no substitute for injury. *See Alario v. Knudsen*, 2023 WL 8270811, at *9 (D. Mont. Nov. 30, 2023) ("SB 419 explicitly bans TikTok because of its direct connection to a specific foreign nation. At best, the State's comparison is weak. At worst, it is reflective of the pervasive undertone of anti-Chinese sentiment that permeates the State's case and the instant legislation.").

## IV. THE CDAFA CLAIM FAILS

Plaintiffs' claim under the CDAFA, the state-law analogue to the CFAA, fails for the same reason as the federal claim: Plaintiffs have not suffered the type of harm required by the statute.

The CDAFA only grants a private action for "damage or loss by reason of a violation." *See* Cal. Pen. Code § 502(e)(1). The CDAFA limits "loss" to "costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023). Plaintiffs identify two costs in pleading their CDAFA claim: diminution in the value of one's data and the loss of the right to control personal data. ACAC ¶¶ 220–21. Neither is cognizable under the statute. *See Pratt*, 2023 WL 4564551, at *9; *In re Google Cookie*, 806 F.3d 125, 152 (3d Cir. 2015) (dismissing CDAFA claim for same reason as CFAA claim: failure to allege statutory loss). And while they do not even raise it in the context of the CDAFA claim, Plaintiffs' battery/device drain theory also would not suffice. Plaintiffs offer no factual allegations demonstrating that any draining of their devices was due to Defendants' collection of data, as opposed to the expected functioning of the app. They merely conclude that any drain was "due to Defendants' clandestine and unlawful activities." ACAC ¶ 122; *see also id.* ¶¶ 158, 254, 261, 276. That naked assertion cannot defeat a motion to dismiss. *See Taha v. Int'l Brotherhood of Teamsters Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

## V. THE VPPA CLAIM FAILS

The Video Privacy Protection Act (VPPA) holds liable "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Congress passed the VPPA in 1988 after a Washington, D.C. newspaper obtained and published Supreme Court nominee Robert Bork's video rental history. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). The Senate Report explaining the passage of the VPPA states that Congress's intent was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1. "The classic example will always be a video clerk leaking an individual customer's video rental

10

history. Every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *Nickelodeon*, 827 F.3d at 290.

Here, there is no VPPA violation because (1) CapCut is not a "video tape service provider" under the statute; (2) there was no "disclosure"; and (3) CapCut never disclosed "personally identifiable information" under the VPPA.

### A. *CapCut is Not a "Video Tape Service Provider"*

The VPPA only applies to those "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). The concern of the statute is that such a service provider risks "leaking an individual customer's video rental history," thereby permitting an unauthorized person "to identify a specific individual's video-watching behavior." *Nickelodeon*, 827 F.3d at 290. CapCut is not such a video tape service provider. CapCut is a video-editing tool that does not even remotely resemble a video service that rents, sells, or offers a library of "pre-recorded" videos to subscribers. Users provide their videos to CapCut, not the other way around. CapCut users do not "request[] or obtain[]" their videos "from" CapCut. 18 U.S.C. § 2710(a)(3). The VPPA does not apply. *Nickelodeon*, 827 F.3d at 280–81 (Google was not a video tape service provider where it provided the software used to track visits to third-party video website).

### B. *There Was No VPPA "Disclosure"*

To state a VPPA claim, a plaintiff must sufficiently allege a "disclosure" to unexempted third parties of the specific type of information covered by the statute. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 626 (7th Cir. 2014) (rejecting VPPA claim). "[I]ntra-corporate disclosures are not unauthorized disclosures under the Act." *Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (citing *Sterk*).

Plaintiffs' allegations about sharing of data between Defendants fail to identify any unexempted disclosure. Plaintiffs allege that Defendants "operate as a single enterprise" and "do not function as separate and independent corporate entities." ACAC ¶ 30. Specific to CapCut, they plead that (1) Defendants "collectively" launched the CapCut app, (2) "U.S. and China-based employees of the Defendant family of companies perform work concerning the CapCut app that is at the center of the lawsuit," and (3) CapCut data may be shared with TikTok. *Id.* ¶¶ 1, 31, 72. Because Plaintiffs allege that Defendants are a single company, no disclosure between them could violate the VPPA.

To the extent Plaintiffs' VPPA claim relies on the potential disclosure to foreign government entities by operation of foreign law, *see* ACAC ¶¶ 162, 166, 167, Plaintiffs fail to plead that any non-conjectural act of disclosure has taken place. Plaintiffs instead rest on baseless claims about China. *See, e.g.*, *id.* ¶¶ 74–92. Nowhere do Plaintiffs allege that any specific data collected *from them* was actually disclosed to anyone external to Defendants—in China or elsewhere. They do not even identify what types of data were shared with foreign parties, let alone any specific disclosure or recipient of that data. *See id.* ¶ 120 ("Defendants made ***some or all*** such stolen data and content accessible to individuals in China[.]"). Without such facts, the claim is implausible and must be dismissed. *Twombly*, 550 U.S. at 555; *see also Williams v. Rohm & Hass Pension Plan*, 2003 WL 2227111, at *4 (S.D. Ind. Sept. 26, 2003) (Plaintiffs cannot rely on allegations about absent class members); *Rosenfeld v. Talamantes*, 2022 WL 2903144, at *13 (C.D. Cal. May 23, 2022) (same).

Because Plaintiffs have not sufficiently alleged any disclosure under the VPPA, the claim fails as a matter of law.

### C.  *No PII Was Disclosed*

The VPPA only prohibits disclosures of very specific categories of personally identifiable information ("PII"): that which "identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). In other words, the PII disclosed must "readily permit[] an ordinary person to identify a particular individual as having watched certain videos." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017); *see also Nickelodeon*, 827 F.3d at 290 (same). To survive a motion to dismiss, then, Plaintiffs must allege that Defendants knowingly disclosed: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two[.]" *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015). "The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos." *Id.* at 1095. Therefore, courts dismiss VPPA claims where plaintiffs fail to allege this connection.

Plaintiffs do not specify what identifying information was allegedly disclosed about them, nor do they allege that Defendants shared information connecting user identity with videos. Plaintiffs' claim does not even make sense: CapCut is not used to view others' videos, but to edit one's own. *See* ACAC ¶ 1. Thus, there is no video viewing history to share. Instead, Plaintiffs offer conclusory allegations that "the content Defendants gave to third parties identified Plaintiffs" and "included personally identifying information as well as information regarding Plaintiffs' downloads, views, edits, 'likes' and comments regarding videos, templates and other audio-visual material during the use of Defendants' services." *Id.* ¶ 166. Absent specific factual allegations that Defendants disclosed information to third parties that identified Plaintiffs and the videos they requested and obtained, Plaintiffs' VPPA claim fails. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095; *Ghanaat v. Numerade Labs, Inc.*, 2023 WL 5738391, at *3 (N.D. Cal. Aug. 28, 2023).

13

## VI.  THE ECPA AND CIPA CLAIMS FAIL

The federal Wiretap Act (ECPA) prohibits the unauthorized "interception" of an "electronic communication" during transit. 18 U.S.C. § 2511(1)(a)–(e). Similarly, Section 631 of the California Invasion of Privacy Act (CIPA) prohibits using electronic means to "learn the contents or meaning" of any "communication" in an "unauthorized manner." Cal. Pen. Code § 631(a). Section 632 of CIPA penalizes anyone who "uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Pen. Code § 632(a).

### A.  *There Was No "Interception" of Any "Contents," So the ECPA and CIPA Section 631 Claims Fail*

Plaintiffs assert wiretapping claims under both ECPA and CIPA Section 631. These wiretapping statutes focus on the collection of information by an undisclosed third-party interloper, so it is unsurprising that Plaintiffs' claims fail for several independent reasons.[4] First, the only "communications" Plaintiffs allege with any specificity are between themselves and CapCut or other CapCut users to whom CapCut's presence was disclosed. Second, Plaintiffs fail to allege any interception of communications in transit. Third, because there was no interception, no claim can lie for the disclosure or use of intercepted information.[5]

**Defendants Were a Known Party to Any Communications.** "[B]y definition, parties to a conversation cannot eavesdrop on their own conversation." *Esparza v. Lenox Corp.*, 2023 WL 2541352, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing wiretapping claims). As a result, both ECPA and CIPA exempt from liability any "party" to a communication. *Id.* (citing *In re Facebook Inc.*

---

[4] Courts apply the same analysis to ECPA Section 2511 and CIPA Section 631 claims. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

[5] To the extent Plaintiffs' claims are premised on the collection of user and device IDs, location information or other data that is not the "contents" of any communication, they also fail because ECPA and CIPA prohibit the collection only of "contents," not record information about the communication. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084–85 (N.D. Cal. 2018) (user IDs and geolocation data are not "contents").

*Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020)). A defendant is a party "where his presence is known to other participants." *Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (citations omitted).

CapCut was a known recipient of any communications alleged in the Amended Complaint because Plaintiffs premise their allegations on the collection of data from the CapCut app. *See, e.g.*, ACAC ¶¶ 98–100 (alleging the collection of private videos and personal and private data from the app), 188 ("messages transmitted by Plaintiffs and the Class *using the CapCut platform*" (emphasis added)), 269 ("videos, URLs, comments, likes, and other messages and electronic communications *transmitted using the CapCut platform*" (emphasis added)). In fact, the vast majority of Plaintiffs' Amended Complaint focuses on the collection of data that had no other intended recipient besides CapCut, such as videos and alleged biometric information. The only communications involving third parties that Plaintiffs identify are messages sent through the platform to other CapCut users. These claims fail because such parties knew (based on the Privacy Policy and common sense) that CapCut was receiving those communications, *Zak*, 2019 WL 1437909, at *3, and Plaintiffs allege that all Defendants operate CapCut as a common enterprise, *see* ACAC ¶¶ 30–35. As explained above, Defendants' receipt of these communications was fully disclosed in the CapCut Privacy Policy. *See supra* Section II.

Even if Plaintiffs had identified any communications in which CapCut was not a known recipient (they do not), these claims fail because no named Plaintiff alleges that *they* actually sent any messages or videos to someone other than Defendants through the app. *See* ACAC ¶¶ 10–22. Without having alleged that they even sent such a communication, Plaintiffs cannot state a claim for the interception of their communications. *See In re Google Assistant Priv. Litig.*, 457 F. Supp.

3d 797, 833 (N.D. Cal. 2020) (dismissing ECPA claim because plaintiffs did not "plausibly allege[] that [their] own conversations were intercepted").

**Plaintiffs Do Not Allege an Interception.** An "interception" under either ECPA or CIPA is "the aural or other acquisition of the contents of any wire, electronic, or oral communication." 18 U.S.C. § 2510(4); *see Brodsky*, 445 F. Supp. 3d at 127 (ECPA and CIPA analyses are the same). To qualify under either statute, an interception must occur while the communications are in transit, *i.e.*, "contemporaneously with its transmission." *Mazzorana v. Kelly*, 2022 WL 1211482, at *1 (N.D. Ill. Apr. 25, 2022) (collecting cases); *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023) (same with respect to CIPA); *see also Epstein v. Epstein*, 843 F.3d 1147, 1149–50 (7th Cir. 2016) (contemporaneous interception is "understood as the act of acquiring electronic communication in transit").

Plaintiffs do not allege an interception because they make no factual allegations demonstrating that Defendants collected their communications *when they were sent*. Instead, they resort to pleading only the legal elements of the claim. *See* ACAC ¶¶ 184 ("during transmission"), 270 ("while these electronic communications were and are in transit"). The Court need not heed these conclusory allegations, as they "merely parrot the elements of their claims, rather than provid[e] some specific facts to ground those legal claims[.]" *Ehardt v. Austin*, 2010 WL 11712819, at *1 (N.D. Ill. Jan. 26, 2010) (citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

**Without an Interception, There Can Be No "Disclosure" or "Use" of Intercepted Communications.** Plaintiffs allege violations of ECPA Sections 2511(1)(c) and (d), which penalize the disclosure and use of intercepted information, respectively. *See* ACAC ¶¶ 189–90. CIPA Section 631 similarly penalizes those "who use[], or attempt[] to use" information obtained in violation of its prohibition on interception. These claims fail for the same reason Plaintiffs'

16

claims under Section 2511(1)(a) fail: there was no interception. Because there was no "interception," there can be no "disclosure" or "use" of intercepted information. *Valentine v. Wideopen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sept. 27, 2013).

### B. *There Was No "Recording" of "Confidential" Communications, So the CIPA Section 632 Claim Fails*

Plaintiffs also assert a claim under Section 632 of CIPA, which creates liability for one who "uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication." Cal. Pen. Code § 632(a). "California courts interpret 'eavesdrop,' as used in Section 632, to refer to a third party secretly listening to a conversation between two parties." *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008). Because Defendants were known parties to the alleged communications, and because a party cannot eavesdrop upon its own conversations, *see Esparza*, 2023 WL 2541352, at *3, Plaintiffs are left with the prohibition on secret recording. But other than reciting the elements of Section 632, *see* ACAC ¶¶ 269–70, Plaintiffs do not allege any facts showing a secret "recording" of their communications where the recording was not apparent to Plaintiffs. Nor do they identify any confidential communications that they personally sent. Having alleged no facts in support of this theory, the CIPA Section 632 claim fails. *See Ehardt*, 2010 WL 11712819, at *1 (requiring "specific facts to ground [] legal claims" on motion to dismiss).

## VII. THE SCA CLAIM FAILS

Plaintiffs fail to plead a claim for violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* Plaintiffs assert a violation of Sections 2702(a)(1) and (a)(2), both of which target the disclosure of communications in electronic storage to third parties. *See* 18 U.S.C. § 2702(a)(1)–(2). Plaintiffs assert that Defendants violated these provisions by "divulging" the contents of their

electronic communications (*e.g.*, emails and draft videos) to the Chinese government. ACAC ¶¶ 195, 209–10.

As with all of Plaintiffs' baseless claims alleging disclosure of information to the Chinese government, the SCA claim must be dismissed because these allegations are purely speculative. Plaintiffs' theory is that U.S. user data, generally, might be available to China-based employees, and that such persons are required to share data with the Chinese government by law when requested. *See* ACAC ¶¶ 74–78. That does not plausibly state a claim against Defendants here. First, Plaintiffs do not allege that the Chinese government received CapCut's U.S. user data specifically. Second, they do not allege which types of CapCut U.S. user data were purportedly shared. Third, they do not allege that *their own* communications were requested or shared. Without these specifics, it is also impossible to identify whether one of many exceptions to the SCA applies. *See generally* 18 U.S.C. § 2702(b).

This claim fails basic pleading standards and must be dismissed. *See Iqbal*, 556 U.S. at 678; *Williams*, 2003 WL 2227111, at *4; *Rosenfeld*, 2022 WL 2903144, at *13.

## VIII.    THE CONSTITUTIONAL AND COMMON-LAW PRIVACY CLAIMS FAIL

Plaintiffs next assert claims for a violation of the California Constitution's right to privacy and California common-law intrusion upon seclusion. These claims fail because (1) Plaintiffs consented to all of the data collection alleged, defeating any reasonable expectation of privacy, and (2) Plaintiffs do not allege that any sensitive information was collected *from them*.

The California Supreme Court has distilled the inquiry for constitutional and common-law privacy claims into a single analysis that asks "(1) whether there is a reasonable expectation of privacy, and (2) whether the intrusion was highly offensive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022); *see also Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1073 (Cal. 2009). This is a "high bar": a violation must "constitute an egregious breach of the social

norms underlying a privacy right." *McCoy v. Alphabet Inc.*, 2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 201) (citing *Hill*, 865 P.2d at 655).

### A. *The Collection Was Disclosed and Within Common-Sense Expectation*

Plaintiffs cannot have a reasonable expectation of privacy in their CapCut data because Defendants disclosed CapCut's collection of that data, and because common sense dictates that the app would collect data generated through a user's use of the app. "A plaintiff's expectation of privacy . . . must be objectively reasonable." *Hill*, 865 P.2d at 648. "[T]here is no reasonable expectation of privacy when the data collection is within users' common-sense expectation." *Hammerling*, 615 F. Supp. 3d at 1089. Here, Plaintiffs do not have an objectively reasonable expectation that CapCut would not collect the data generated through the app because that collection was disclosed in the Privacy Policy. *See* Section II. Even without these disclosures, users understand that the collection and use of data is part of how nearly all apps and websites work. In fact, articles on which Plaintiffs rely report that CapCut's data collection practices are "common for video-editing tools" and "like any other modern day app." *See* ACAC ¶¶ 100 (citing "TikTok's Chinese Parent Has Another Wildly Popular App in the U.S." The Wall Street Journal (March 19, 2023), https://www.wsj.com/articles/tiktoks-chinese-parent-has-another-wildly-popular-app-in-the-u-s-e14c41fc), 101 (citing "Who made Capcut? Is CapCut Safe?" Nerds Chalk (June 1, 2021), https://nerdschalk.com/who-made-capcut/).

### B. *Plaintiffs Do Not Plausibly Allege a Highly Offensive Collection of Data in Which They Have a Reasonable Expectation of Privacy*

The privacy claims also fail because Plaintiffs have not alleged the collection of anything sensitive in which they have a reasonable expectation of privacy. To survive a motion to dismiss, Plaintiffs cannot rely on the claims of absent class members. *See Williams*, 2003 WL 2227111, at *4; *Rosenfeld*, 2022 WL 2903144, at *13. Thus, in order to represent a class of individuals pursuing

19

privacy claims, each Plaintiff must allege that they suffered a privacy harm. This requires each Plaintiff to allege what was sensitive about the data collected *from them*. *See Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *8 (N.D. Cal. Sept. 7, 2023) (plaintiff must "identify with specificity what, if any, private or particularly sensitive information about them" the defendant collected); *Google Assistant*, 457 F. Supp. 3d at 832–33 (dismissing privacy claims where plaintiffs failed to identify what sensitive information was collected from them). Without factual, non-speculative allegations demonstrating that their sensitive information was wrongly obtained or misused, Plaintiffs do not even have Article III standing to bring these privacy claims. *See In re BPS Direct, LLC*, 2023 WL 8458245, at *12 (E.D. Pa. Dec. 5, 2023) (no concrete harm unless users disclosed to defendant "highly sensitive personal information such as medical diagnosis information or financial data"); *see also Dinerstein v. Google, LLC*, 73 F.4th 502, 516 (7th Cir. 2023) ("wholly speculative and implausible" contention insufficient to create standing).

In pleading their privacy claims, Plaintiffs point to the collection of "user/device identifiers, biometric identifiers and information, and private videos and private video images never intended for public consumption." ACAC ¶ 227. For the reasons described in Section XIII, Plaintiffs do not adequately allege that any biometric identifiers were collected from them, so those allegations cannot support their privacy claims. As explained below, Plaintiffs' video/image and user/device identifier allegations also cannot sustain these claims.

*Videos and images.* The collection of videos and images is not a privacy violation *per se*; there must be something sensitive about those videos that creates a reasonable expectation of privacy in them.[6] *See Rivera v. Google, Inc.*, 366 F. Supp. 3d 998, 1012 (N.D. Ill. 2018) ("Illinois

---

[6] Plaintiffs' allegation that "videos created using the CapCut app . . . are inherently private, personal and sensitive," *see* ACAC ¶ 98, is an unsupported legal conclusion that need not be given weight on a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

courts have dismissed many intrusion-upon-seclusion claims that were premised on photographs or videos for failure to satisfy the privacy element of the tort.") (collecting cases). The three California Plaintiffs[7] do not allege their videos were sensitive or private in any way. Ms. Rodriguez alleges only that she uses the app to "create . . . video content," such as a video that combines two faces into one. ACAC ¶¶ 10–11. Mr. Marines uses CapCut "in his work as a film editor" to "edit videos of himself and other people." *Id.* ¶ 19. He also does not identify anything sensitive about those videos. To the contrary, he uses the app for work, suggesting there is nothing private or sensitive about any content he creates. *See id.* Finally, J.V. uses the app to "create and edit" videos meant for social media, such as fan pages and "get ready with me" videos. *Id.* ¶ 19. Having created those videos for public consumption, she cannot reasonably have expected privacy in them. *See Florida v. Riley*, 488 U.S. 445, 457 (1989) ("There is no reasonable expectation of privacy in an area that is exposed to the public."). These Plaintiffs have not alleged that the collection of their videos is the type of "egregious" conduct that can support a privacy claim. *McCoy*, 2021 WL 405816, at *7.

*User/device identifiers and registration information.* Plaintiffs allege that Defendants collect various "user/device identifiers," such as Mac address, network identifiers, device ID and the like. ACAC ¶¶ 103–04. There is no reasonable expectation of privacy in "user/device identifiers." *Saeedy v. Microsoft Corp.*, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023).

*Sign-up information.* To the extent Plaintiffs allege that Defendants collect pieces of information that users submitted when creating an account, such as username, password, age, birthday, email address and profile image, there is no invasion of privacy. *United States v. Corbitt*, 588 F. App'x. 594, 595 (9th Cir. 2014) (no reasonable expectation of privacy in "subscriber

---

[7] The remainder of the named Plaintiffs do not assert these California law claims.

information" the user "voluntarily provided to a company in the course of a customer relationship"). Moreover, "basic contact information" and "matters of public record, such as [] date of [] birth" are not "private information." *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022). And courts have rejected the notion that the collection of passwords is highly offensive. *See id.* In any event, no individual Plaintiff alleges that CapCut was able to collect this information *from them*. J.V. alleges she never created an account; Ms. Rodriguez does not allege that she created an account; and Mr. Marines alleges that he used the app without an account before switching to the paid version and does not identify any information he provided in order to create that account. *See* ACAC ¶¶ 10–12, 19, 21.

*Location information*. The last category of data that Plaintiffs allege that Defendants collect is location information (although they do not mention it with respect to these privacy claims). As explained in Sections II and VIII.A, Defendants disclose that precise practice, so Plaintiffs cannot have maintained a reasonable expectation of privacy in their location data on the CapCut app.

## IX.    THE UCL CLAIM FAILS

Plaintiffs assert a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The statute requires plaintiffs to show that they "lost money or property as a result of the unfair competition" in order to sue. Cal. Bus. & Prof. Code § 17204. This requires Plaintiffs to demonstrate "some form of economic injury." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (Cal. 2011).

Plaintiffs proceed on four theories of harm: (1) diminution in the value of their data; (2) their devices have "been impaired and slowed"; (3) they incurred data and electricity costs "that they would not otherwise have incurred"; and (4) they were harmed as a result of the invasion of

their privacy. ACAC ¶ 254. Plaintiffs do not even attempt to identify an economic injury with respect to their fourth theory, so it cannot support UCL standing. *See Kwikset*, 246 P.3d at 885.

Plaintiffs have not pleaded facts sufficient to support the other three theories. The first fails because allegations that a plaintiff was harmed by "the dissemination of their personal information and by losing the sales value of that information" are insufficient to establish UCL standing. *See In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014). Without *plausible* allegations that Plaintiffs would actually have sold the data at issue and were impaired in doing so by Defendants' conduct, Plaintiffs cannot establish that they suffered an actual economic injury. *See Griffith*, 2023 WL 9019035, at *5. The other two theories (device drain and electricity costs) are doomed by their lack of specificity. Where, as here, "Plaintiffs have not quantified or otherwise articulated the alleged resource usage, they fail to allege an injury that can serve as the basis of standing." *Opperman v. Path, Inc*., 87 F. Supp. 3d 1018, 1055–56 (N.D. Cal. 2014) (allegation of battery drain unsupported by factual assertions does not create UCL standing because harm is "de minimis"). These theories also fail for the same reason Plaintiffs' CDAFA claim fails: they have made no allegations demonstrating that the device drain or electricity costs stem from the alleged collection of data, rather than the expected functioning of the CapCut app. *See* Section IV.

Not only have Plaintiffs failed to establish UCL standing, they also cannot show that Defendants' conduct was "unlawful, unfair, or fraudulent" as required. Because Plaintiffs' predicate claims fail, any derivative UCL unlawful claim also fails. *See Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr.3d 177, 185 (Cal. Ct. App. 2007). And when the unlawful prong fails, and the unfair prong "overlaps entirely with the conduct alleged in the . . . unlawful prong[]," then the unfair prong also fails. *Hammerling*, 615 F. Supp. 3d at 1094. Here, both claims are premised on the purported collection of "private and personally identifiable data," which Plaintiffs assert

23

violates various statutes and constitutional provisions and common law. *See* ACAC ¶¶ 248–49. Finally, "Rule 9(b)'s heightened pleading standards apply to claims for violations of the" fraudulent prong of the UCL. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). That requires Plaintiffs to specifically allege "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). But Plaintiffs do not identify any statements or omissions by Defendants that would constitute fraud. To the contrary, as explained in Section II, the Privacy Policy discloses in detail how Defendants would collect and use Plaintiffs' information.

## X.   THE FAL CLAIM FAILS

Plaintiffs claim that Defendants have violated California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 801 (N.D. Cal. 2022). Because an FAL claim sounds in fraud, it must be pled with particularity. *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 853 (N.D. Cal. 2012).

Like the UCL, standing to bring an FAL claim requires economic injury directly resulting from the alleged misconduct. *See, e.g.*, *Pfizer Inc. v. Superior Ct.*, 105 Cal. Rptr.3d 795, 800 (Cal. Ct. App. 2010). Plaintiffs cannot prove economic injury sufficient for standing under the FAL just as they cannot establish standing under the UCL. *See* Section IX.

Plaintiffs also fail to state an FAL claim for two reasons. First, as explained with respect to the fraudulent prong of the UCL, Plaintiffs have not pled the "who, what, when, where, and how" of the alleged misconduct. *See* Section IX, *supra*. Their allegations thus fail Rule 9(b). Second, Plaintiffs do not allege that they relied on any allegedly misleading statement, as required to state a claim. *See Antonyan v. Ford Motor Co.*, 2022 WL 1299964, at *4 (C.D. Cal. Mar. 30,

2022) (FAL claim premised on misleading statement requires plaintiff to show detrimental reliance). Plaintiffs allege generally that Defendants' "advertising and other statements" were misleading, *see* ACAC ¶ 259, but the only specific statements the Amended Complaint identifies are the Terms of Service and Privacy Policy. Plaintiffs cannot claim they relied on those, as they never read them. *See* ACAC ¶¶ 10, 13, 16, 17, 18, 19, 22; *see also Antonyan*, 2022 WL 1299964, at *4 (plaintiff who did not read alleged misstatement cannot pursue FAL claim).

## XI.   THE LARCENY AND CONVERSION CLAIMS FAIL

Plaintiffs assert two property claims under California law: statutory larceny and common-law conversion. Both fail because Plaintiffs have not alleged a property interest in any of the data that they plead was collected from them.

To bring either claim, Plaintiffs must establish a property right in the data that was allegedly collected by Defendants. *See Siry Inv., L.P. v. Farkhondehpour*, 513 P.3d 166, 178–79 (Cal. 2022) (statutory larceny requires Plaintiffs to show that their "property was stolen or obtained in a manner constituting theft"); *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992) (conversion requires Plaintiffs to show "ownership or right to possession of property"). One necessary element of a property right is that the plaintiff has an interest that is capable of "exclusive possession or control." *G.S. Rasmussen & Assocs., Inc.*, 958 F.2d at 903.

Plaintiffs fail to establish an exclusive property interest in the one type of data they plead was collected *from them*: videos.[8] *See* ACAC ¶¶ 10–22. Plaintiffs concede that they created those

---

[8] To the extent Plaintiffs rely on the alleged collection of other types of data, such as user/device identifiers or publicly available information such as name, age and date of birth, courts hold those things cannot be property. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) (user identifiers and browsing history); *United States v. Abouammo*, 2022 WL 17584238, at *12 (N.D. Cal. Dec. 12, 2022) (publicly available information). Because no named Plaintiff alleges that they sent any messages using CapCut, they cannot rely on the allegation that Defendants purportedly collected those messages. *See Williams*, 2003 WL 2227111, at *4; *Rosenfeld*, 2022 WL 2903144, at *13.

videos using the CapCut app. *See id.* They also allege that the app is cloud-based and the videos are stored in CapCut's cloud storage. *See, e.g., id.* ¶ 49 ("CapCut . . . is a 'cloud-based online editor' that has 'cloud-based tools[.]'"). Because Plaintiffs willingly put their videos onto CapCut's servers, to which CapCut of course has access, they cannot reasonably allege that CapCut unlawfully interfered with their exclusive possession of those videos. *See* Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it.").

## XII.  THE RESTITUTION AND UNJUST ENRICHMENT CLAIMS FAIL

Plaintiffs cannot state a claim for restitution or unjust enrichment because these are equitable claims and Plaintiffs have an adequate legal remedy. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844–45 (9th Cir. 2020) (requiring plaintiffs to plausibly allege that they "lack[] an adequate legal remedy" before seeking equitable relief). Plaintiffs have adequate legal remedies because they allege "the exact same conduct" under other causes of action seeking damages. *See Price v. Apple, Inc.*, 2022 WL 1032472, at *7 (N.D. Cal. Apr. 6, 2022); *see also* ACAC ¶ 292.

These claims also fail because Plaintiffs entered into an express contract with Defendants: the CapCut Terms of Service. *See* ACAC ¶ 128 ("Defendants have adopted various privacy policies and terms of use for the CapCut app."). "Unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties." *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).

## XIII.  THE BIPA CLAIMS FAIL

Plaintiffs' BIPA claim fails because they do not plausibly allege that the CapCut app collects *biometric* data that Defendants can use to specifically identify them. This fundamental

pleading deficiency requires dismissal for all of Plaintiffs' theories. The Court should also dismiss the claims brought under BIPA Sections 15(c), (d), and (e) as entirely conclusory.

### A. Plaintiffs Do Not Plausibly Allege The Collection of Their Biometric Identifiers or Biometric Information

BIPA does not apply to every technology that relates to faces or voices. Nor does BIPA apply generally to any use of artificial intelligence ("AI") to enhance photos, videos, or audio. Courts in this District have repeatedly affirmed that BIPA regulates the collection and use of "biometric *identifiers*," which must be capable of *identifying* someone through a biometric identification process.[9] The plain text and legislative findings of BIPA[10] and interpretations by the Illinois Attorney General[11] are all in accord: BIPA applies only to *identifying* information.

Therefore, to allege a plausible BIPA claim, Plaintiffs must offer well-pleaded factual allegations that Defendants extract data from images of their faces or their voice recordings that can be used by Defendants to *identify* Plaintiffs. *See Castelaz v. Estee Lauder Cos.*, 2024 WL

---

[9] *See, e.g.*, *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) ("[A] 'biometric identifier' is . . . a set of measurements of a specified physical component [eye, finger, voice, hand, face] *used to identify a person*." (emphasis added)); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) ("biometric identifier" means "a biology-based set of measurements … *that can be used to identify a person*" (emphasis added)); *Clarke*, 2023 WL 9119927, at *2 (Rowland, J.); *Castelaz*, 2024 WL 136872, at *7 (Jenkins, J.); *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) (Gettleman, J.), *modified on other grounds on reconsideration*, 2023 WL 3579082 (N.D. Ill. Feb. 3, 2023). BIPA also applies to "biometric information," which means "information . . . based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

[10] "Biometric" refers to "the measurement and analysis of unique physical or behavioral characteristics . . . especially as a means of verifying personal identity"; meanwhile, "identifier" means "one that identifies," and "identify" means "[t]o establish the identity of." WEBSTER'S DICTIONARY (2008 ed.). The legislative findings incorporated into BIPA confirm that its purpose is to regulate "biologically unique" "*identifiers*." 740 ILCS 14/5(c) (emphasis added). The legislature could have regulated mere "biometric *data*"—"a biology-based set of measurements" (such as the height, width, or dimensions of one's face), *Rivera*, 238 F. Supp. 3d at 1094—but it chose to regulate "biometric *identifiers*" because it was concerned about "identity theft," 740 ILCS 14/5(c), which can only be accomplished with data capable of verifying someone's identity.

[11] Public Access Op. No. 14-008, 2014 WL 4407615, at *2 (Ill. A.G. Aug. 19, 2014) (the "commonly understood meaning" of "biometric identifier" is data "that identifies a person").

136872, at *7 (N.D. Ill. Jan. 10, 2024) (dismissing BIPA claims lacking "specific factual allegations that ELC is capable of determining Plaintiffs and members of the Illinois class members' identities by using the collected facial scans"); *Clarke v. Aveda Corp.*, --- F. Supp. 3d ----, 2023 WL 9119927, at *2 (N.D. Ill. Dec. 1, 2023) (dismissing allegations that the defendant "scanned and collected, and then stored . . . digital copies of each Plaintiff's facial geometry," because plaintiffs "provide[d] no allegations demonstrating Aveda was capable of identifying them from this data"). And simply declaring that CapCut's technology "can be used to identify" users, ACAC ¶ 100, is insufficient; a complaint must contain *detailed, plausible allegations* to support that conclusion. *Clarke*, 2023 WL 9119927, at *2. Plaintiffs have not cleared this threshold pleading requirement.

**Photo- and Video-Editing Tools**. Plaintiffs allege that the CapCut app "uses an advanced video editor and camera face filters" to provide editing effects on users' photos and videos. ACAC ¶ 316. Plaintiffs further allege that, to do this, CapCut's technology "examines, detects, and localizes the face and the arrangements of its various parts . . . and then tracks the face and its various parts (and their relative arrangement) while in motion." *Id.* Critically, however, Plaintiffs do not allege that by simply detecting, localizing, and anonymously tracking their faces in photos and videos, the CapCut app was capable of *identifying* them in other content.

Plaintiffs' allegations are deficient under a trio of recent cases from this District—*Clarke*, *Castelaz*, and *Daichendt*—that apply the pleading standard for BIPA claims based on technologies that detect faces (or parts of faces) in photos or videos and track them in real-time to apply filters, effects, and the like. *Clarke* involved a "virtual try-on tool" that allegedly "scanned" photographs uploaded by users to extract "the users' facial geometry" in order to "visualize what they would look like with different hairstyles or hair colors." 2023 WL 9119927, at *1. A similar technology

was at issue in *Castelaz*. *See* 2024 WL 136872, at *1. And in *Daichendt*, the plaintiff accused a photo application called "KODAK Moments" of "scanning consumers' facial geometry" in order to verify that their passport photos met requirements that their faces were in the correct size and orientation, with eyes open, not smiling, etc. 2022 WL 17404488, at *1.

As in this case, the plaintiffs in *Clarke*, *Castelaz*, and *Daichendt* accused technologies that had nothing to do with biometric *identification* of nevertheless "scanning" their "face geometry" in violation of BIPA. But in each case, the court held that merely alleging that technology detects, locates, and tracks faces or localized parts of faces (such as the eyes, nose, or mouth) for non-identification purposes does not plausibly trigger BIPA's requirements. *Clarke*, 2023 WL 9119927, at *2; *Castelaz*, 2024 WL 136872, at *7; *Daichendt*, 2022 WL 17404488, at *5.[12]

Instead of offering plausible factual allegations that demonstrate CapCut's editing tools are capable of *identifying* users based on the analysis of their unique facial characteristics, Plaintiffs resort to speculation and misdirection. These tactics must be rejected.

*First*, Plaintiffs rely on buzzwords and innuendo, presented out of context. For example, Plaintiffs quote reviews of the CapCut app that include the phrase "facial recognition." ACAC ¶ 57. An examination of those sources reveals that "facial recognition" refers to *detecting* faces in photos and videos—that is, recognizing that *a* face is present (not a specific face), and then isolating parts of the face to apply an effect.[13] Absent from these descriptions—or Plaintiffs'

---

[12] In reaching these conclusions, the courts specifically distinguished or declined to follow out-of-district decisions that have allowed similar BIPA claims to proceed. *Clarke*, 2023 WL 9119927, at *2 n.2; *Castelaz*, 2024 WL 136872, at *7 n.6.

[13] *See, e.g.*, https://capcuttmod.com/how-to-do-gender-swap-filter-on-tiktok-using-capcut/ (cited in ACAC ¶ 57) ("By leveraging advanced facial recognition algorithms and machine learning, CapCut's Gender Swap feature automatically analyzes facial features and applies realistic changes to create a convincing transformation. This filter *detects* and modifies key facial parts, such as the eyes, nose, and mouth, ultimately producing a visually engaging gender swap effect that you can share on social media or use to enhance your storytelling." (emphasis added)).

allegations about their own use of the CapCut app—is any suggestion that the CapCut app analyzes users' faces to identify them. Similarly, Plaintiffs also point to "templates" available on CapCut that have the words "face scan" and "face recognition" in their titles. *Id.* ¶ 59. Templates are backgrounds and sequences with thematic motifs that users integrate with their own content. A CapCut template with "face recognition" in the title refers to an artistic theme (such as a background mimicking Apple's FaceID feature for iPhone devices), not the actual use of face recognition technology. Nor does Plaintiffs' reference to Defendants' "artificial intelligence [being] sophisticated" change the result. *Id.* ¶ 319. AI has a broad spectrum of technologies and applications; the term itself is not synonymous with facial recognition or biometrics.

*Second*, Plaintiffs improperly conflate TikTok and CapCut. Pursuant to a class action settlement, TikTok disclosed in 2020 that it "may collect biometric identifiers and biometric information as defined under U.S. laws, such as faceprints and voiceprints[.]" *Id.* ¶ 91. That is irrelevant to CapCut, which is a separate app that offers different features and functionality.

*Third*, Plaintiffs reference the CapCut app "code," *id.* ¶ 315, and describe several patent applications filed by ByteDance Technology Co., Ltd., an alleged affiliate of certain Defendants, *id.* ¶ 324. Plaintiffs' discussion of the code is entirely conclusory—they do not explain what the code shows. *See id.* ¶ 315. And the patent *applications* identified by Plaintiffs allegedly describe technologies such as "facial *image* identification" and the use of "face and body images" to infer age, emotional sentiment, and other generic characteristics. *Id.* ¶ 324. None describes a technology that *identifies* users through facial analysis. In any event, the mere existence of a patent does not suggest that the underlying technology "could have been implemented," much less "has been implemented," by the applicant. *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 334 (5th Cir. 2014). "It is elementary" that patents confer nothing more on their owners than the

right to exclude others from practicing a claimed invention. *See Emblaze Ltd. v. Apple Inc.*, 2015 WL 396010, at *8 (N.D. Cal. Jan. 29, 2015), *aff'd*, 639 F. App'x 639 (Fed. Cir. 2016). Patents are not evidence that a technology has been implemented at all or implemented in any particular way. Plaintiffs' allegations are insufficient.[14]

**Automated Speech Recognition (ASR).** Plaintiffs also allege that CapCut "contains *speech* recognition technology that allows users to translate voices to text . . . that can be, among other things, used to provide captions for videos." ACAC ¶ 52 (emphasis added). However, "automatic *speech* recognition technology," *id.* (emphasis added), is fundamentally different from *voice* recognition, which may rely on "voiceprints." The former merely "recognizes speech" in an audio file and transcribes it to text, *id.*, while the latter is used *to identify the speaker* based on unique voice characteristics. *See Carpenter*, 580 F. Supp. at 515 (a voiceprint is a "distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker"); *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 716 (S.D. Ill. 2020) ("Voiceprinting . . . is the use of biological characteristics—one's voice—to *verify an individual's identity*." (emphasis added)); Public Access Op. No. 17-011, 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) ("'voice recognition,' like a 'voiceprint,' is an analytical process by which a voice is measured or matched to a speaker"). Plaintiffs do not—and cannot—allege that technology used to transcribe spoken words to text was capable of *identifying* them based on their voices. Thus, while the Amended Complaint refers to "voiceprints" a handful of times, ACAC ¶¶ 123, 303, 314–15, it is devoid of any well-pleaded factual allegations demonstrating that CapCut collects or uses voiceprints.

---

[14] Notably, CapCut has features that are available in some states but not in Illinois. Plaintiffs' allegations do not even attempt to allege plausible facts showing any specific features were in fact used by them in Illinois and thus subject to BIPA.

Nor do Plaintiffs' allegations that CapCut stores and modifies voice recordings plausibly establish the collection of voiceprints. A mere audio recording of a voice is not a voiceprint.[15] And simply editing an audio recording to add certain effects does not transform an audio recording into a voice identifier. Plaintiffs' allegations (*id.* ¶ 53) that CapCut users can "edit the pitch of voices contained in the audio, distinguish voices from background noise and silence unwanted noise, add voice effects, and tune and transform voices with modulation effects" describe garden-variety editing tools—not the identification of the speaker by his or her voice. Similarly, the purported use of an "AI voice generator," *id.*, to add further effects to voice recordings does nothing to support Plaintiffs' claims. As noted above, the mere use of "AI" does not implicate BIPA.[16]

## B. *Plaintiffs Fail to Allege Other Elements of a BIPA Claim*

**Section 15(c).** Section 15(c) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). Plaintiffs do not allege that Defendants sold or directly monetized their biometric data. They claim, at most, that the features at issue have increased CapCut's popularity, which in turn has increased TikTok videos. ACAC ¶¶ 70–73. And this, in turn, allows Defendants to earn more revenue from their non-CapCut social media platforms. *Id.* ¶¶ 39, 97. These allegations fall short of alleging a

---

[15] *See* Public Access Opinion No. 17-011, 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) ("[A] voiceprint, which is a record of mechanical measurement, is not the same as a simple recording of a voice."); *Carpenter*, 580 F. Supp. 3d at 517 (quoting attorney general opinion to distinguish a voiceprint from a voice recording); *McGoveran v. Amazon Web Servs., Inc.*, 2023 WL 2683553, at *10 (D. Del. Mar. 29, 2023) ("[V]oice audio alone is neither a biometric identifier (a voiceprint) nor biometric information (information derived from a voiceprint).").

[16] Plaintiffs' allegations that ByteDance Network Technology Co., Ltd. has "filed additional patent applications" for voice recognition technologies are unavailing for the reasons discussed above, as are the allegations that one of its employees talked about voice recognition at a scientific conference. *See* ACAC ¶ 325; *see* Section XIII.A. Mere ideations about voice recognition technology—which are not even specific to CapCut—are not actionable under BIPA.

violation of Section 15(c). *See Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1306–09 (W.D. Wash. 2021). As the court held in *Vance*, to read "otherwise profit from" in Section 15(c) as describing "any use of biometric data that brings a benefit" to the private entity that collects it "would lead to absurd results that contravene BIPA itself." *Id.* at 1308–09 (rejecting allegations that "Microsoft used the biometric data to 'improve its facial recognition products and technologies,' which 'improve[d] the effectiveness' of those products and made them 'more valuable in the commercial marketplace'"). Even if Plaintiffs had plausibly alleged that CapCut collects biometric identifiers (and they do not), Plaintiffs' reading of Section 15(c) would contravene the Illinois legislature's intent to "regulate," rather than "inhibit" biometric technology. *Id.* at 1307.

**Section 15(d).** Section 15(d) of BIPA prohibits the disclosure of biometric identifiers without the subject's consent, subject to various exceptions, including to comply with applicable laws. 740 ILCS 14/15(d). Plaintiffs do not identify any third party to whom their biometric data was allegedly disclosed. *See* ACAC ¶¶ 309–10.[17] Instead, Plaintiffs suggest that "the Chinese government" might have the legal *ability* to access user data maintained by Defendants *generally* through its 1% ownership of a Defendant (Beijing Douyin Information Service Co. Ltd.) based in China. *Id.* ¶¶ 23–25; *see also id.* ¶¶ 74–88. Plaintiffs' rank speculation that the Chinese government *might* access unspecified data fails to plausibly allege a Section 15(d) violation. *See Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (plaintiff failed state a Section 15(d) claim without alleging "specifics related to any disclosure by [defendant] to a third party"). By

---

[17] Plaintiffs' conclusory allegations that Defendants share user data generated by CapCut *among themselves* to support TikTok and other platforms are irrelevant to their Section 15(d) claim because Plaintiffs allege that Defendants "operate as a single enterprise." ACAC ¶¶ 30–35. To be clear, Defendants deny these allegations, but they foreclose any claim that Defendants "disclose[d]" or "disseminate[d]" biometric data to each other in violation of BIPA.

analogy—stripped of Plaintiffs' speculation and rhetoric—the United States government has the *ability* to access records and data maintained by Defendants' U.S. subsidiaries under various conditions. But merely alleging that the government *could* access user data falls far short of alleging that purported biometric data associated with a particular app (CapCut) and user base (the putative class) actually *was* accessed by the government. Plaintiffs' Section 15(d) claim therefore fails.[18]

**Section 15(e).** Plaintiffs' allegations that Defendants failed to "store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within [Defendants'] industry," 740 ILCS 14/15(e), are entirely conclusory. Plaintiffs do not allege what the reasonable standard of care requires for app providers, or how CapCut's security protocols fell short. Instead, Plaintiffs' Section 15(e) claim is based entirely on their claim that Defendants violated Sections 15(a), (b), and (d). *See* ACAC ¶ 312. Even if those allegations were sufficient—they are not—Plaintiffs cannot tack on an additional Section 15(e) violation that is wholly based on other alleged violations of BIPA.

## <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

---

[18] In addition, disclosures of biometric data that are "required by State or federal law or municipal ordinance" are not prohibited by BIPA. 740 ILCS 14/15(d). Thus, to the extent Plaintiffs allege that Defendants are legally *required* to provide access to user data to the Chinese government—which Defendants strongly deny, particularly as to any data maintained for U.S. users—any disclosure resulting from Defendants' compliance with their legal obligations in China cannot be the basis of a Section 15(d) claim.

Dated: March 14, 2024

By: */s/ Anthony J Weibell*

Anthony J Weibell
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

J. Gregory Deis
Melissa A. Anyetei
Lucia Nale
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
gdeis@mayerbrown.com
manyetei@mayerbrown.com
lnale@mayerbrown.com
mprovance@mayerbrown.com

*Counsel for Defendants ByteDance Inc.,*
*TikTok Inc., ByteDance Pte. Ltd., and*
*ByteDance Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on March 14, 2024, which will send notification of such filing to the e-mail addresses registered.

Dated: March 14, 2024

*/s/ Anthony J Weibell*