**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVELIA RODRIGUEZ; ERIKKA WILSON; A.N., A MINOR; AIDEN GUNDLACH; ZACHARY BUCKUS; RAYMON MARINES; AND J.V. A MINOR on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE, INC.; BEIJING DOUYIN INFORMATION SERVICE CO. LTD. F/K/A BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; BYTEDANCE LTD.; BYTEDANCE PTE. LTD.; BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; AND TIKTOK, INC. F/K/A MUSICAL.LY, INC.,<br><br>Defendants. | Case No. 1:23-CV-04953<br><br>Judge Sharon Johnson Coleman |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

BACKGROUND .......... 3

LEGAL STANDARD .......... 5

ARGUMENT .......... 5

I. The Privacy Policy Does Not Bar Any Of The Claims. .......... 5

A. Plaintiffs Deny They Consented To Defendants' Wrongful Conduct. .......... 6

B. The Privacy Policy Does Not Disclose The Alleged Wrongful Conduct. .......... 7

C. Defendants Fail to Establish That There Was an Enforceable Agreement. .......... 9

II. Plaintiffs Adequately Allege a CFAA Claim. .......... 10

A. Defendants Exceeded Any Authorized Access. .......... 11

B. Plaintiffs Suffered Loss. .......... 12

C. The Threat to Public Health and Safety Is Clear. .......... 13

III. Plaintiffs Adequately Allege a CDAFA Claim. .......... 15

IV. Plaintiffs Adequately Allege a VPPA Claim. .......... 16

A. CapCut Is a "Video Tape Service Provider." .......... 16

B. The Complaint Alleges Disclosure to Third Parties. .......... 17

C. PII Was Disclosed. .......... 18

V. Plaintiffs Adequately Allege ECPA and CIPA Claims. .......... 19

A. Plaintiffs Adequately Plead "Interception" of Communication "Contents". .......... 19

B. Plaintiffs Adequately Allege "Recording" of "Confidential" Communications. .......... 22

VI. Plaintiffs Adequately Allege an SCA Claim. .......... 22

VII. Plaintiffs Adequately Allege Privacy Claims. .......... 23

A. Plaintiffs Adequately Plead A Reasonable Expectation of Privacy. .......... 23

B. Plaintiffs Adequately Plead A "Highly Offensive" Intrusion. .......... 25

VIII. Plaintiffs Adequately Allege A UCL Claim. .......... 26

IX. Plaintiffs Adequately Allege an FAL Claim. .......... 29

X. Plaintiffs Adequately Allege Claims for Larceny And Conversion. .......... 30

XI. Plaintiffs Adequately Allege a Claim for Restitution/Unjust Enrichment. .......... 31

XII. Plaintiffs Adequately Allege Claims Under Illinois BIPA. .......... 32

A. Plaintiffs Adequately Allege Collection and Possession of their Biometric Identifiers and Information. .......... 32

B. Plaintiffs Adequately Allege the Other Elements Defendants Dispute. .......... 39

C. Defendants' Narrow View of BIPA Is Inconsistent with Legislative Intent. .......... 42

CONCLUSION .......... 42

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aldana v. Gamestop, Inc.*,
2024 WL 708589 (S.D.N.Y. Feb. 21, 2024)....17, 18

*Antonyan v. Ford Motor Co.*,
2022 WL 1299964 (C.D. Cal. Mar. 30, 2022)....30, 31

*Boucher v. Fin. Sys. Of Green Bay, Inc.*,
880 F.3d 362 (7th Cir. 2018)....5

*Brown v. Google LLC*,
2023 WL 5029899 (C.D. Cal. Aug. 7, 2023)....20, 23, 28

*Calhoun v. Google LLC*,
526 F. Supp.3d 605 (N.D. Cal. 2021).... *passim*

*Calhoun v. Google, LLC*,
645 F. Supp. 3d 916 (N.D. Cal. 2022)....5, 31

*Campos v. Tubi, Inc*.,
2024 WL 496234 (N.D. Ill. Feb. 8, 2024)....10

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022)....36

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)....29

*Clarke v. Aveda Corp.*,
2023 WL 9119927 (N.D. Ill. Dec. 1, 2023)....38

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
585 F. Supp. 3d 1111 (N.D. Ill 2022)....23, 26, 31

*Coalition for Ind. Tech. Res. v. Abbott*,
2023 WL 8582597 (W.D. Tex. Dec. 11, 2023)....13

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019)....10

*Cothron v. White Sys., Inc.*,
467 F. Supp. 3d 604 (N.D. Ill. 2020)....6, 41

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................6, 10, 16

*Daichendt v. CVS Pharmacy, Inc.*,
2023 WL 3559669 (N.D. Ill. May 4, 2023) ....................34, 38, 39

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................30

*Deyerler v. HireVue, Inc.*,
2024 WL 774833 (N.D. Ill. Feb. 26, 2024) ....................33, 41, 42

*Doe v. FullStory, Inc.*,
2024 WL 188101 (N.D. Cal. Jan. 17, 2024) ....................5, 6, 19, 22

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ....................21, 32

*Doe v. Roblox Corp.*,
602 F. Supp. 3d 1243 (N.D. Cal. 2022) ....................10

*Doffing v. Meta Platforms*,
2022 WL 3357698 (D. Or. July 20, 2022) ....................10

*In re Facebook Biometric Information Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ....................36

*In re Facebook Biometric Information Privacy Litig.*,
2018 WL 2197546 (N.D. Cal. May 14, 2018) ....................9, 11, 32, 42

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) ....................28

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................7, 9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................... *passim*

*Figueroa v. Kronos Inc.*,
454 F. Supp. 3d 772 (N.D. Ill. 2020) ....................42

*Fleury v. Union Pac. RR. Co.*,
528 F. Supp. 3d 885 (N.D. Ill. 2021) ....................14

*Flores v. Motorola Sols., Inc.*,
2021 WL 232627 (N.D. Ill. Jan. 8, 2021) ....................40

*Gibson v. City of Chicago*,
910 F.2d 1510 (7th Cir. 1990) ....................5

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................5, 9, 21

*In re Google RTB Consumer Priv. Litig.*,
2022 WL 2165489 (N.D. Cal. June 13, 2022) ....................24, 26

*Health First, Inc. v. Hynes*,
2014 WL 12648552 (M.D. Fla. Sept. 17, 2014) .................... *passim*

*Hepp v. Ultra Green Energy Servs.*,
LLC, 2016 WL 1073070 (N.D. Ill. Mar. 18, 2016) ....................10

*Hernandez v. Omnitracs, LLC*,
2024 WL 1376352 (N.D. Ill. Mar. 31, 2024)....................38

*In re Hulu Privacy Litig.*,
2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ....................16

*Jackson v. Fandom*,
2023 WL 4670285 (N.D. Cal. July 20, 2023)....................10, 17

*JI v. Naver Corp.*,
2023 WL 6466211 (N.D. Cal. Oct. 3, 2023).................... *passim*

*Johnson v. NCR Corp.*,
2023 WL 1779774 (N.D. Ill. Feb. 6, 2023) ....................41

*Jones v. Google LLC*,
73 F.4th 636 (9th Cir. 2023) ....................30

*Karling v. Samsara Inc.*,
610 F. Supp. 3d 1094 (N.D. Ill. 2022) ....................36, 41

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024)....................7, 20

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ....................27, 28

*Leitner v. Morsovillo*,
2021 WL 2669547 (W.D. Mo. June 29, 2021) ....................11, 12, 23

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................31

*Maree v. Deutsche Lufthansa AG*,
2021 WL 267853 (C.D. Cal. 2021)....................10

*McCoy v. Alphabet*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....................5, 6

*Melzer v. Johnson & Johnson Inc.*,
2023 WL 3098633 (D.N.J. Apr. 26, 2023) ....................38, 40, 41

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024).................... *passim*

*Nacarino v. Chobani, LLC*,
668 F. Supp. 3d 881 (N.D. Cal. 2022) ....................32

*Naughton v. Amazon.com, Inc.*,
2022 WL19324 (N.D. Ill. Jan. 3, 2022) ....................41

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) ....................19

*Powell v. Shiseido Americas Corp.*,
2022 WL 19914948 (C.D. Ill. Aug. 22, 2022)....................38

*Price v. Carnival Corp.*,
2024 WL 221437 (S.D. Cal. Jan. 19, 2024)....................7, 23

*River Road Hotel Partners, LLC v. Amalgamated Bank*,
651 F.3d 642 (7th Cir. 2011) ....................37

*Rivera v. Google, Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................26, 37

*Rodriquez v. Sony Comput. Ent. Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ....................18

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................20

*Saunders v. Hearst Television, Inc.*,
2024 WL 126186 (D. Mass. Jan. 11, 2024)....................18

*So v. HP, Inc.*,
2023 WL 4596778 (N.D. Cal. July 17, 2023)....................13

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................32

*Sosa v. Onfido, Inc.*,
600 F. Supp. 3d 859 (N.D. Ill. 2022) ....................38

*Speed of Light Ops, LLC v. Elliot*,
2023 WL 2815875 (D. Utah Mar. 21, 2023) ....................11

*Thornley v. Clearview AI, Inc.*,
984 F.3d 1241 (7th Cir. 2021) ....................42

*Tierney v. Vahle*,
304 F.3d 734 (7th Cir. 2002) ....................10

*In re TikTok, Inc. Consumer Privacy Litig.*,
617 F. Supp. 3d 904 (N.D. Ill. 2022) ....................1, 2, 35

*Vance v. Microsoft Corp.*,
534 F. Supp. 3d 1301 (W.D. Wash. 2021) ....................40

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................... *passim*

*Wilk v. Brainshark, Inc.*,
631 F. Supp. 3d 522 (N.D. Ill. 2022) ....................33, 34, 35

*Wilson v. Redbox Automated Retail, LLC*,
448 F. Supp. 3d 873 (N.D. Ill. 2020) ....................10

**STATUTES**

740 ILCS 10/15 ....................39, 40

740 ILCS 14/5 ....................15

740 ILCS 14/10 ....................32, 33, 35, 37

740 ILCS 14/15 ....................42

740 ILCS 14/20 ....................13

18 U.S.C. § 1030 ....................11, 12, 13, 15

18 U.S.C. § 2510(4) ....................19

18 U.S.C. § 2511 ....................19, 20

18 U.S.C. § 2701 ....................22

18 U.S.C. § 2702 ....................22

18 U.S.C. § 2710 ........................................ 16, 17, 18

Cal. Penal Code § 631(a) ........................................ 20

### OTHER AUTHORITIES

Fed. R. Civ. P. 8 ........................................ 5

Fed. R. Civ. P. 12 ........................................ 2, 5, 12, 42

## INTRODUCTION

This case seeks redress for violations of the rights of millions of Americans. While Defendants lament that the complaint invokes "nearly every privacy statute on the books" (Def. Mem. ("Mem.") at 1), Plaintiffs bring these broad-ranging claims because Defendants have engaged in sweeping violations of their rights. As detailed in the complaint, independent experts have concluded that Defendants' video editing app, CapCut, poses significant threats to users and their data security, "'particularly with respect to data harvesting, data exploitation, and—possibly—covert influence.'" (Am. Compl. ("AC") ¶ 107.)

Indeed, Defendants' ongoing violations are so great that they have spurred bipartisan legislation requiring divestiture of the CapCut app (and other apps controlled by Defendant ByteDance) due to the threat they pose to user data and, indeed, "national security".[1] As the Chair of the Committee responsible for crafting the legislation observed after briefings from intelligence and data security experts, CapCut is "spying [on users] by design."[2]

Accordingly, the complaint is based on far more than mere "speculative" or "thread-bare" allegations. (Mem. at 3.) In fact, the 100-page complaint consists of 329 paragraphs, supported by specific references contained in 116 footnotes. The allegations describe in detail how Defendants collect, utilize, and disseminate CapCut users' sensitive personal data without their consent, including biometric identifiers and information, violating various laws and statutes.

Nor is this a mere "copycat" of litigation involving the TikTok app. (*Id.* at 1.)[3] The CapCut app was not even offered in the United States when the *TikTok* litigation was filed and,

---

[1] H.R. 8038, 118th Cong. (2023-2024), Ex. 1.

[2] Opening Statement of Chair Cathy McMorris Rodgers (Mar. 7, 2024), https://www.congress.gov/118/meeting/house/116945/documents/HHRG-118-IF00-MState-M001159-20240307.pdf, Ex. 2.

[3] Defendants' suggestion that the *TikTok* court found the lawsuit's claims "fail[ed]" (Mem. at 1) is inaccurate. Defendants did not even move to dismiss the *TikTok* complaint, but rather immediately

accordingly, was not a subject of that litigation or Defendants' subsequent settlement. Nonetheless, to the extent there is any overlap in the allegations here and in *TikTok*, it is because Defendants, undeterred by the prior *TikTok* litigation, engaged in a new round of data privacy violations—prohibited by many of the same federal and state laws—this time, in conjunction with a new app and a new group of users.

Indeed, Defendants significantly expanded the scope of their wrongful conduct by, among other things, using TikTok to deceptively promote the new CapCut app to underage users. Moreover, while TikTok has spent more than $1.5 billion to wall off user data from China, recent revelations show that "unlike TikTok," CapCut is "directly run by ByteDance executives in China" with none of the protections for user data that TikTok claims it has implemented.[4]

Defendants' response to these detailed claims consists of nitpicking the complaint, arguing for alleged pleading requirements that are not supported by the law, ignoring portions of the complaint that specifically address the purported deficiencies Defendants allege, and engaging in technical debates about CapCut's functions based on facts outside the complaint that do not provide a basis for summary judgment, much less dismissal under Rule 12(b)(6).

Moreover, having argued at length that "the allegations in the Amended Complaint bear no resemblance to what CapCut is or how it functions" (Mem. at 1), Defendants inconsistently assert that they disclosed all the wrongful conduct alleged in the complaint—which Defendants deny occurred at all—in CapCut's privacy policy. They did not. Among other things, Defendants did not tell users that they would: intercept their confidential communications,

---

entered into a settlement approved in the court order they cite. *In re TikTok, Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 936 (N.D. Ill. 2022) (emphasis added) (AC ¶ 91). Likewise, the unpublished Indiana state court decision Defendants cite is from a case alleging the TikTok app violated the Indiana Deceptive Consumer Sales Act (a statute not at issue here) and amounted to an advisory opinion given the court concluded it lacked personal jurisdiction. Neither case involved CapCut, its privacy policy, or the allegations here, and neither court dismissed any causes of action brought in this action.

[4] TikTok Executives Fretted About China Ties of CapCut Editing-App, Information (2024), Ex. 3.

collect their sensitive data beyond the scope of any authorization, share their sensitive data with undisclosed third parties, target underage users, or collect, utilize and profit from their biometric identifiers, biometric information and other sensitive data.

Indeed, Defendants essentially concede CapCut's privacy policy does not comply with "requirements for notice and consent" in the Illinois Biometric Information Privacy Act or the Video Privacy Protection Act. (Mem. at 5 n.3.) Thus, while Defendants' arguments are more properly brought in a motion for summary judgment, Defendants' motion on its face nonetheless makes clear the arguments are meritless. The motion should be rejected in its entirety.

## BACKGROUND

CapCut is a cloud-based video editing application originally developed in China that allows users to create, edit and customize videos, photos and audio using various templates, filters and visual effects, which users may post online or utilize for their own personal use. (AC ¶¶ 1, 49, 51-52, 67, 71.) CapCut is heavily promoted by Defendant TikTok, Inc. on its social media platform and has been downloaded hundreds of millions of times, making it one of the most popular apps in the United States. (*Id.* ¶¶ 2, 3, 68-69.) Even though Defendants recognize CapCut is not appropriate for children under 13 (*id.* ¶ 140), minors can use the app without parental authorization, subjecting their private data to extensive collection, which Defendants encourage by using the TikTok app to market CapCut to children. (*Id.* ¶¶ 16, 17, 20, 133-42.)

CapCut collects a wide range of private information from users, including their biometric information. (*Id.* ¶ 4.) Defendants use automated software, proprietary algorithms, artificial intelligence, facial recognition and other technologies to collect and commercially profit from users' identities, biometric identifiers and information, images, video and digital recordings, audio recordings, clipboard data, geolocation data, names, e-mail addresses, passcodes, social media accounts, messaging, telephone numbers and other confidential data and information. (*Id.*

¶¶ 4, 6.) Among other things, through its video-, photo-, and audio-editing functions, CapCut uses artificial intelligence and face and voice recognition technology to collect biometric identifiers and information, including scans of face geometry and voiceprints. (*Id.* ¶¶ 55-57.) CapCut users can send private messages and emails, as well as share draft or final videos, and the app gains access to the contents of those confidential communications. (*Id.* ¶¶ 58, 60-61, 72.) Because CapCut is a "'cloud-based'" video editor using "'cloud-based tools'", these operations occur, and information is stored on, servers in data centers CapCut controls. (*Id.* ¶ 49.) While the basic app is free, CapCut charges users fees for additional features and effects. (*Id.* ¶¶ 7, 66.)

ByteDance, Defendants' ultimate parent, is one of China's largest technology companies with direct ties to the Communist Chinese Party (CCP). (*Id.* ¶¶ 23-25, 74.) ByteDance and its China-based affiliates exercise "significant day-to-day control" of the U.S.-based entities and directly perform work on, and make key strategy decisions for, CapCut. (*Id.* ¶¶ 30-33, 87-88.)

Former ByteDance executives, engineers and other whistleblowers have stated that U.S. user data ByteDance collects is available to third parties in China, including the CCP and Chinese government. The complaint contains multiple reports in which company insiders have stated, among other things, that "'Everything is seen in China,'" "'Beijing-based engineers had 'access to everything,'" the CCP has its own office at ByteDance where it can access and monitor U.S. user data in real time, and the company is engaged in a "'culture of lawlessness,'" and "'blatantly illegal conduct.'" (*Id.* ¶¶ 75-78.) In addition, confidential user data is shared with third parties to generate profits through targeted advertising, developing patents, and for other purposes that generate significant profits for Defendants. (*Id.* ¶¶ 72, 100-101, 108-10, 120-21.) As a result, multiple experts have expressed significant concerns regarding CapCut's violation of users' privacy rights. (*Id.* ¶ 107.)

## LEGAL STANDARD

A Rule 12(b)(6) motion "test[s] the sufficiency of the complaint, not … the merits of the case." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A complaint need only include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and draw all permissible inferences in plaintiffs' favor." *Boucher v. Fin. Sys. Of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

## ARGUMENT

### I. The Privacy Policy Does Not Bar Any Of The Claims.

Defendants' consent argument is refuted by their own privacy policy, which does not disclose any of the wrongful conduct alleged in the complaint. Indeed, Defendants essentially concede the policy does not meet "requirements for notice and consent" under BIPA and VPPA, or even mention "biometric identifiers" or "biometric information" at all. (Mem. at 5 n.3.)[5]

Even absent such concessions, however, courts considering such arguments at the pleading stage routinely reject them—including in litigation against these same Defendants. As these courts recognize, "consent" (where relevant at all) is typically an affirmative defense,[6] and "'[c]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses'" because they "'typically turn on facts not before the court at [this] stage in the proceedings.'"

[5] Defendants list the causes of action they claim are barred by the privacy policy, but do not list BIPA and VPPA because they do not meet "statutory requirements for notice and consent." (Mem. at 5 n.3.) The statutes contain numerous requirements for specific disclosures that must be made, policies that must be put in place, and written consents that must be obtained from users Defendants do not claim to satisfy.

[6] *Calhoun v. Google, LLC,* 645 F. Supp. 3d 916, 928 (N.D. Cal. 2022) ("consent is a defense to" CIPA, intrusion upon seclusion, larceny, and UCL claims); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 828 (N.D. Cal. 2020) (SCA); *Matera v.* Google, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) (Wiretap Act); *McCoy v. Alphabet*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021); *Doe v. FullStory, Inc.*, 2024 WL 188101, at *2 (N.D. Cal. Jan. 17, 2024).

*Cothron v. White Sys., Inc.*, 467 F. Supp. 3d 604, 614 (N.D. Ill. 2020) (refusing to dismiss BIPA claim), quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

As another court explained in rejecting a similar argument in privacy litigation against Defendant TikTok (and Meta), "At this point, the contents of each applicable policy or other binding representation made by [defendant] regarding treatment of personal or healthcare information has not been established as a matter of law. The data each of the defendant's tools intercepted has not been determined. How reasonable persons would interpret the totality of the disclosures has not been decided. Accordingly, the claims will not be dismissed for any defendant based on consent." *FullStory*, 2024 WL 188101, at *3. Indeed, a case Defendants cite refused to even consider a privacy policy on a motion to dismiss: "The sufficiency of [the] privacy policy is a key disputed issue in this case. Resolution of that issue is inappropriate at this stage." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 475 (N.D. Cal. 2021).

Finally, Defendants' broadbrush assertion that "[a]ll privacy claims are defeated by consent" (Mem. at 4) is a gross exaggeration, and particularly inapt here, where the claims go far beyond mere privacy violations.[7] Defendants' argument should be rejected for several reasons.

### A. Plaintiffs Deny They Consented To Defendants' Wrongful Conduct.

As a threshold matter, Defendants' consent argument should be rejected because, as Defendants acknowledge, the complaint here affirmatively pleads that Plaintiffs never "consented" to any of the alleged wrongdoing and do not recall seeing any privacy policy or terms of service. (Mem. at 25; AC ¶¶ 10, 12-13, 16-19, 22, 139.) Several courts have held that such allegations alone are sufficient to bar dismissal based on consent because they must be

[7] *McCoy*, 2021 WL 405816, at *6 (consent "not an absolute defense to all claims"). For example, Plaintiffs allege practices such asdeceptive promotion of CapCut using TikTok, minor targeting, and harm to their devices, that are not subject to a "consent" defense. (AC ¶¶ 70-71.)

accepted as true at the pleading stage. *See, e.g., Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *6 (S.D. Cal. Jan. 12, 2024) (plaintiff's allegation that he "never provided consent" was "sufficient" to defeat defendant's motion to dismiss); *Price v. Carnival Corp.*, 2024 WL 221437, at *4 (S.D. Cal. Jan. 19, 2024) ("[a]t this stage, where the Court must take as true the Plaintiffs' well-pleaded factual allegations, Carnival's consent defense appears premature").

### B. The Privacy Policy Does Not Disclose The Alleged Wrongful Conduct.

Defendants' consent argument is further refuted by their own privacy policy, which does not disclose their wrongful conduct. As courts have observed in rejecting similar "consent" arguments, dismissal is not appropriate if any reasonable user "could plausibly have interpreted the contract language as not disclosing . . . particular conduct." *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019). "In order for consent to be actual, the disclosures must '***explicitly notify***' users of the ***practice at issue***." *Calhoun v. Google LLC*, 526 F. Supp.3d 605, 620 (N.D. Cal. 2021) (emphasis added). A privacy policy must not only disclose the ***specific nature*** of the data collected, but also the ***method*** and ***amount*** of collection. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 602-03 (9th Cir. 2020); *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *5 (N.D. Cal. Mar. 25, 2024) ("[W]hether plaintiffs consented to having their data collected is a question of fact. Drawing all inferences in plaintiffs' favor, the Court cannot determine at the 12(b)(6) stage that plaintiffs consented.").

Defendants' privacy policy does not come close to meeting this test. Nowhere, for example, does the policy say that Defendants would intercept Plaintiffs' confidential communications, collect Plaintiffs' sensitive data without authorization, share Plaintiffs' sensitive data with undisclosed third parties (including the CCP), or collect, use and monetize Plaintiffs' biometric identifiers and information. Indeed, Defendants effectively concede that the

policy does not comply with "requirements for notice and consent" in statutes such as the Illinois Biometric Information Privacy Act and Video Privacy Protection Act. (Mem. at 5 n.3.)

The policy language Defendants cite is not to the contrary. While Defendants quote language concerning "non-personally-identifying operations" from more recent versions of the privacy policy (*id.* at 5), as Defendants concede, "the Privacy Policy does not disclose the collection of face scans and voiceprints" or other biometric information (*id.*). Likewise, while Defendants cite language regarding potential information sharing with the corporate "group" (*id.*), the policy does not disclose access to data by individuals in China (which Defendants deny), or with third parties who have no business receiving it such as the CCP or entities assisting ByteDance with patents and artificial intelligence technologies. Indeed, the policy affirmatively misleads users by stating their data is stored in "secure servers located in the United States and Singapore"[8] and that the "Platform is provided and controlled by Bytedance Pte. Ltd.", a Singapore entity (Doc. 31-4, at 2).[9] Finally, while Defendants assert "all data at issue" is disclosed (Mem. at 4), the policy does not disclose specific items such as Mac address, SSID, BSSID, previously configured networks, IMEI information, IMSI information, MEID, ICCID, and SIM serial number (AC ¶ 104) and functions such as collecting "fine-grained location information and updates, accessing files on user devices and storing them and engaging in offline data collection" (*id.* ¶ 105)—much less the vast data harvesting scheme alleged here.

Courts have repeatedly rejected similar arguments. In *Campbell v. Facebook Inc.*, for example, the court held a disclosure stating "[we] may use the information we received about

[8] CapCut Privacy Policy (Mar. 28 2024), https://sf16-draftcdn-sg.ibytedtos.com/obj/ies-hotsoon-draft-sg/terms-policy/capcut_privacy_policy_en.html, Ex. 4. Earlier versions of the policy attached to the motion note that data "may be transferred to Singapore and stored at Singapore." (Doc. 31-4, at 24.)

[9] The policy further misleads users by making misrepresentations such as "[w]e are committed to protecting and respecting your privacy" (Doc. 31-4, at 2), "[w]e will take reasonable steps to secure your information" (*id.* at 6), and "we will do our best to protect your information" (*id.* at 9).

you for 'data analysis,'" was "not specific enough to establish that users expressly consented to the scanning of the content of their messages." 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014). In *Google Assistant*, the court held a disclosure that data may be shared with affiliates was "too general to conclusively establish consent," particularly where it did not disclose "the types of information" sent. 457 F. Supp. 3d at 823. In *Patterson v. Respondus, Inc.*, the court held that where policies "do not disclose that [defendant] collected *biometric* data," plaintiffs "could not possibly have consented to the further *disclosure* of that data to third parties." 593 F. Supp. 3d 783, 817 (N.D. Ill. 2022). And, in *Facebook*, the court held a disclosure stating "we give your information to the people and companies that help us provide, understand, and improve the services we offer" did "not come close to disclosing the massive information-sharing program with business partners that the plaintiffs allege in the complaint." 402 F. Supp. 3d at 792.

### C. Defendants Fail to Establish That There Was an Enforceable Agreement.

Finally, Defendants fail to meet their burden to establish the existence of an enforceable agreement and cannot do so at the pleading stage. Defendants' motion attaches 167 pages of exhibits that are not cited in the complaint and an inadmissible affidavit by Defendants' lawyer in an attempt to dispute the complaint's allegations asserting Plaintiffs never entered into any agreement with Defendants. These materials are insufficient to establish an agreement and are incomplete: the affidavit speaks only to the current website's presentation of the privacy policy (Doc. 31-1), and the motion attaches only three of the ten (or more) versions of the policy that existed over time. As another court observed in rejecting an attempt to rely on such materials at the pleading stage, "this case may involve factual questions about what [defendant's] policies looked like at different moments in time. There is no basis for preempting that fact-intensive inquiry by concluding, as a matter of law, that these specific versions of Respondent's webpages govern Plaintiffs' claims." *Patterson*, 593 F. Supp. 3d at 805. The same reasoning applies here.

In addition, Defendants make no effort to show any alleged agreement was enforceable, which would require them to dispute facts alleged in the complaint.[10] The complaint specifically alleges Defendants failed to provide users with adequate notice of the privacy policy and that the terms are unenforceable and unconscionable. (AC ¶¶ 10, 130-31.) Moreover, as Defendants concede, users did not even need to create an account before using CapCut (*id.* ¶¶ 15-16, 19, 21, 72, 129; Mem. at 22), and minor CapCut users could not enter into (or may disavow) any alleged contract (*id.* ¶¶ 15-17, 20, 133-39). *Doe v. Roblox Corp.*, 602 F. Supp. 3d 1243, 1256 (N.D. Cal. 2022) (child "would not be on inquiry notice that she was assenting to" online terms); *Doffing v. Meta Platforms*, 2022 WL 3357698, at *6 (D. Or. July 20, 2022) (online terms "procedurally unconscionable, substantively unconscionable, and unenforceable against a minor").[11]

## II. Plaintiffs Adequately Allege a CFAA Claim.

The CFAA prohibits accessing a computer without authorization or exceeding the scope of authorization. 18 U.S.C. § 1030(a)(2). Defendants assert—incorrectly—that Plaintiffs fail to allege (1) unauthorized access, (2) loss, and (3) a "threat to public health or safety".

---

[10] *See, e.g., Campos v. Tubi, Inc.*, 2024 WL 496234, at *4 (N.D. Ill. Feb. 8, 2024) (online terms unenforceable; "[c]ourts in the Seventh Circuit have considered several non-dispositive factors in conducting this assessment"); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 765 (N.D. Cal. 2019) (online terms unenforceable because features not "conspicuous enough"); *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853, at *4 (C.D. Cal. 2021) (same); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020) (online terms not unenforceable due to inadequate notice).

[11] Defendants do not show the documents can even be considered. Indeed, another case Defendants cite held judicial notice of privacy policies inappropriate because, as here, there were "disputes about the meaning and relevance of these materials." *Cottle*, 536 F. Supp. 3d at 478., Likewise, the court concluded the policies were not incorporated by reference because the complaint "does not refer extensively to [defendant's] privacy policies, and those policies are not the primary driver behind Plaintiffs' claims." *Id.* Rather, "[defendant's] privacy policies 'create[ ] a defense' to these allegations, a defense that Plaintiffs expressly dispute in the [complaint]." *Id.* As Defendants' cases recognize, the incorporation by reference doctrine is "a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Patterson*, 593 F. Supp. 3d at 806 (privacy polices not attached to complaint not incorporated). Likewise, the lone case Defendants cite for "judicial notice", *Hepp v. Ultra Green Energy Servs.*, LLC, 2016 WL 1073070 (N.D. Ill. Mar. 18, 2016), involved a motion for new trial, not a motion to dismiss. The documents (and lawyer affidavit) Defendants submit should not be considered. *Cottle*, 536 F. Supp. 3d at 478; *Jackson v. Fandom*, 2023 WL 4670285, at *2 (N.D. Cal. July 20, 2023). Nonetheless, to the extent the court disagrees, Plaintiffs attach certain "publicly available" documents found on "web pages" (Mem. at 4) and statutory and congressional materials that provide context for Defendants' documents. A proper treatment of these issues, however, would require a complete record.

### A. Defendants Exceeded Any Authorized Access.

As Defendants acknowledge, CFAA applies not only to those who access a computer "'without authorization,'" but also to individuals who "'exceed[] authorized access'" (Mem. at 6 (quoting 18 U.S.C. § 1030(a)(2))), which Plaintiffs specifically plead. (AC ¶¶ 130, 157). *See, e.g., Leitner v. Morsovillo*, 2021 WL 2669547, at *4 (W.D. Mo. June 29, 2021) (denying motion to dismiss CFAA claim where plaintiff "plausibly alleg[es] that [defendants] accessed data which was off-limits to them"); *Speed of Light Ops, LLC v. Elliot*, 2023 WL 2815875, at *4 (D. Utah Mar. 21, 2023) (denying motion to dismiss CFAA claim where defendant "had access to certain items under a valid [software] license, and then exceeded that license").

In response, Defendants attempt to rewrite the statute, arguing Plaintiffs must show unauthorized access to "areas" or "files"—not "data". (Mem. at 7.) However, the CFAA broadly prohibits actions that "exceed[] authorized access," 18 U.S.C. § 1030(a)(2), which "means to access a computer ***with authorization*** and to use such access ***to obtain*** or alter ***information*** in the computer that the accesser ***is not entitled so to obtain*** or alter," *id.* § 1030(e)(6) (emphasis added). The language from *Van Buren v. United States* Defendants cite is not to the contrary; the Court reaffirmed that § 1030(a)(2)'s prohibition "applies—at a minimum—to ***all information*** from all computers that connect to the internet." 593 U.S. 374, 379 (2021) (emphasis added). The Court merely held that a CFAA claim could not be brought against a police officer who used license-plate information for an "improper purpose" because he was authorized to obtain the information. *Id.* at 396.[12]

[12] While Defendants state CFAA is an "anti-hacking" statute (Mem. at 6), as *Van Buren* noted, it covers not only outside hackers, but "so-called inside hackers—those who access a computer with permission, but then " 'exceed' the parameters of authorized access." 593 U.S. at 389. Likewise, Defendants' distinction between "data" and "files" is artificial; data is necessarily stored in files.

In any event, Defendants concede the complaint in fact alleges that the app accesses files on user devices in a manner that is unauthorized. (Mem. at 7.) While Defendants characterize the allegations as "barebones" (*id.*), the complaint specifically alleges CapCut is used to "***access files on user devices*** and store them" without authorization (AC ¶ 105; *id.* ¶¶ 103-04, 158). Such allegations are sufficient. Moreover, factual disputes regarding CapCut's operations, "specific files" accessed, and the "design" of the operating systems of Plaintiffs' devices (Mem. at 7) are inappropriate for resolution at this stage. *Van Buren's* holding "inherently recognizes that any questions regarding a person's authorized access and the scope of that authorization, as well as the specific information he or she accessed and the location of that information, are fact-intensive inquiries," which are "ill-suited for resolution on a Rule 12(b)(6) motion." *Leitner*, 2021 WL 2669547, at *4.

### B. Plaintiffs Suffered Loss.

Defendants' assertion that "Plaintiffs do not allege facts showing they have suffered the specific type and amount of loss required by the CFAA" (Mem. at 6) is equally inaccurate. The complaint alleges—and contains factual allegations to support—damages of more than $5,000 under 18 U.S.C. § 1030. (AC ¶ 158.) CFAA authorizes recovery for "any reasonable cost," including "cost[s] of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11). Among other things, the complaint alleges economic damages that Defendants ignore, including the need for "evaluation [of Plaintiffs' devices] by professionals," "remedial measures" and/or "replacement of their devices." (*Id.*) In addition, as Defendants concede, Plaintiffs plead losses due to unnecessary data usage and electricity costs resulting from adverse effects on devices' battery, memory and CPU. (*Id.* ¶¶ 158, 212.) And, unlike the cases Defendants cite (Mem. at 8), the complaint here alleges theft of biometrics and other data for

which there is a market, as recognized by statutes like BIPA that impose fines of $5,000 for each misappropriation. 740 ILCS 14/20. Thus, while loss is adequately pleaded, Defendants raise an issueinappropriate for resolution at the pleading stage. *Health First, Inc. v. Hynes,* 2014 WL 12648552, at *11 (M.D. Fla. Sept. 17, 2014) ("[T]he final [CFAA] element, a loss exceeding $5,000, is ultimately a question of fact for the factfinder.").

In any event, courts have held that "[u]nder the CFAA, a class of plaintiffs may aggregate damages 'so long as those damages arose from the same act by a defendant," which is the case here where Plaintiffs used the same software application provided by Defendants. *So v. HP, Inc.*, 2023 WL 4596778, at *11 (N.D. Cal. July 17, 2023). Defendants do not even attempt to argue the class as a whole has failed to allege $5,000 in damages.

**C. The Threat to Public Health and Safety Is Clear.**

Alternatively, Plaintiffs adequately allege CapCut poses a "threat to public health or safety" both by misappropriating sensitive user data (including biometrics) and by exposing user data to access by the CCP, Chinese government, and other third parties. 18 U.S.C. § 1030(c)(4). Defendants ignore the former and assert the latter is "anti-China fearmongering."[13] (Mem. at 9.) However, as documented in the complaint, the public safety concerns are significant.

The FBI, intelligence community and other experts have all warned about the threat posed by such apps. (AC ¶¶ 80-87.) ByteDance whistleblowers confirm the threat, stating user data is available to the CCP and others in China and ByteDance is engaged in "blatantly illegal conduct." (*Id.* ¶¶ 75-78.) Much of this same evidence is in the record supporting legislation

[13] Defendants repeat the "messaging" strategy disclosed in TikTok documents to "'Downplay the parent company ByteDance, downplay the China association, downplay AI.'" (AC ¶ 90.) While they cite a case striking down Montana's TikTok ban, another court recently upheld a more limited ban, noting "legitimate data security concerns." *Coalition for Ind. Tech. Res. v. Abbott*, 2023 WL 8582597, at *8 n.6 (W.D. Tex. Dec. 11, 2023).

requiring divestiture of CapCut,[14] which is designed to address the "significant threat to the national security of the United States." H.R. 8038, 118th Cong. (2023-2024), Ex. 1.

Indeed, Defendants themselves have acknowledged the threat to public health and safety posed by "Defendants' collection of personal data from 'ordinary Americans.'" (Mem. at 9.) Not only have high-level ByteDance employees acknowledged the threat, but TikTok recognized as much when it agreed to spend more than $1.5 billion to wall off U.S. user data from China (Project Texas). TikTok's website tells its users that this "unprecedented" $1.5 billion effort was necessary "to ensure the safety, privacy, and security of our community," to ensure "data is secure and the platform is free from outside influence," and to insulate TikTok from "any outside pressure to grant unauthorized access to user data or systems."[15] In contrast, "CapCut—unlike TikTok itself—is directly run by ByteDance executives in China."[16] (AC ¶¶ 30-33, 87-88.)

The decisions Defendants cite from other jurisdictions are misplaced, but also do not involve allegations like those here concerning the theft of sensitive biometric data. As courts have observed, theft of such data inherently poses a threat to public health and safety, and is why statutes such as Illinois BIPA were enacted: "the ***safety or security concerns*** BIPA addresses are the potential ***harms inflicted on members of the public***, such as ***identity theft and economic injuries***, that flow from the unfettered collection and use of biometric information." *Fleury v. Union Pac. RR. Co.*, 528 F. Supp. 3d 885, 892 (N.D. Ill. 2021) (emphasis added). Indeed, BIPA contains an express legislative finding that: "The ***public welfare, security, and safety*** will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g) (emphasis added).

[14] H.R. 118-417 (Mar. 11, 2024), https://www.congress.gov/118/crpt/hrpt417/CRPT-118hrpt417.pdf.
[15] TikTok website, Ex. 5.
[16] TikTok Executives Fretted About China Ties of CapCut Editing-App, Information (2024), Ex. 3.

Moreover, the reasoning in the decisions Defendants cite on this point is flawed. For example, while *Griffith v. TikTok, Inc.* required that a named plaintiff show that "collection of ***his or her data***" "threatens public health or safety" be a "federal employees and contractor" subject to blackmail or corporate espionage before it would find a sufficient threat, the CFAA statute is clear that harm occurs whenever there is a threat to "***public*** health or safety," 18 U.S.C. §1030(c)(4)(A)(i)(IV)—not harm to a particular individual in isolation—and the threat to users' biometric (and other) data here in fact represents a significant threat to public health or safety (as further confirmed by the recent bipartisan legislation). 2023 WL 9019035, at *4 (C.D. Cal. Dec. 13, 2023).[17] *Griffith* did not involve collection of such biometric information and was decided before passage of the recent legislation.

## III. Plaintiffs Adequately Allege a CDAFA Claim.

Defendants make a similarly flawed argument that the CDAFA claim fails because "Plaintiffs have not suffered the type of harm required by the statute." (Mem. at 9.) The cases Defendants cite acknowledge that "loss" under CDAFA can include "'costs related to fixing a computer, lost revenue, or other consequential damages.'" (*Id.* at 10.) They also include "any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal Pen. C. § 502(e)(1). The complaint alleges such harms.

*First,* Defendants ignore complaint allegations that professional evaluation of Plaintiffs' devices, repair and/or replacement are required. (AC ¶ 158.) *Second*, while Defendants assert "Plaintiffs offer no factual allegations demonstrating that any draining of their devices was due

[17] Likewise, *Colo. Republican Comm. v. Doe* imposed requirements not found in the statute, such as that the data at issue relate to "medical treatment, public utilities, or emergency response services." 2016 WL 3922156 (D. Colo. July 21, 2016) (Mem. at 9).

to Defendants' collection of data," they later concede the complaint in fact alleges battery and device drain were "'***due to*** Defendants' clandestine and unlawful activities.'" (Mem. at 10, quoting AC ¶ 122.) *Third,* as with the CFAA, Defendants challenge the loss occasioned by misappropriation of data as a qualifying loss, but this is a unique case in which Defendants misappropriated biometric information for which there is an active market, and the cases Defendants cite acknowledge that "loss of revenue" or other "consequential damages" are qualifying "losses" under CDAFA. *Finally*, Plaintiffs allege they are entitled to sums to "verify" whether their computers or data were damaged as authorized under CDAFA. (AC ¶ 222; Cal Pen. C. § 502(e)(1).) These allegations are sufficient. As Defendants' cases recognize, CDAFA "does not contain a specific monetary threshold for loss related to violations of the statute"; any damage or loss is sufficient. *Cottle*, 536 F. Supp. 3d at 487.

## IV. Plaintiffs Adequately Allege a VPPA Claim.

VPPA protects the privacy of user requests of video materials and services. Defendants assert that Plaintiffs' VPPA claim fails because (1) CapCut is not a "video tape service provider"; (2) there was no "disclosure" to unexempted third parties, and (3) no personally identifiable information was disclosed. (Mem. at 10-13.) Each assertion is wrong, and courts have repeatedly rejected attempts to dismiss similar VPPA claims.

### A. CapCut Is a "Video Tape Service Provider."

Defendants' suggestion that VPPA is limited to rentals of old-style video cassette tapes is refuted by the statute's plain language. The drafters accounted for ongoing changes in technology by covering disclosures relating to "prerecorded video cassette tapes ***or similar audio visual materials.***" 18 U.S.C. § 2710(a)(4) (emphasis added). Accordingly, courts have repeatedly held the VPPA applies to various online audio-visual content. *E.g., In re Hulu Privacy Litig.*, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) ("Congress was concerned

with the confidentiality of private information about viewing preferences regardless of the business model or media format involved."); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017) ("Congress's use of the phrase 'similar audiovisual materials' indicates that the definition is medium-neutral"); *Aldana v. Gamestop, Inc.*, 2024 WL 708589, at *4 (S.D.N.Y. Feb. 21, 2024) (refusing to dismiss VPPA claim involving video games); *Fandom*, 2023 WL 4670285, at *3 ("'similar audio materials'" construed "broadly").

Contrary to Defendants' suggestion, CapCut does in fact "offer[] a library of 'pre-recorded' videos." (Mem. at 11.) As alleged in the complaint and described on the CapCut website, "'CapCut offers users a library of copyright-free media assets, including stock videos that they can review, select and use in their video editing projects.'" (AC ¶¶ 62-63, 163.)

In addition, CapCut provides users with edited video content. While Defendants are correct that "[u]sers provide their videos to CapCut" (Mem. at 11), when they use CapCut it provides a unique edited video that users did not previously possess. And, in any event, VPPA applies to "video materials ***and services.***" 18 U.S.C. § 2710(a)(3) (emphasis added).[18]

**B. The Complaint Alleges Disclosure to Third Parties.**

The complaint likewise adequately alleges disclosure to unexempt third parties, including the CCP, Chinese government, and others. (AC ¶¶ 74-77, 162.) As noted, the complaint alleges, and ByteDance's own executives confirm, that ***all U.S. user data*** is accessible to the CCP and Chinese government (including named Plaintiffs' data); in addition, the complaint alleges disclosure to other third parties regardless of whether they are in China. (AC ¶¶ 7, 74-77, 172.)

Disclosure to third parties within the ByteDance group further establishes this element. While Defendants argue that transfers of information from one entity to another within the

[18] *In re Nickelodeon Consumer Privacy Litigation* did not involve a video editor or app that provided audio-visual materials, but rather the Google search engine. 827 F.3d 262, 280-81 (3d Cir. 2016).

ByteDance group cannot satisfy VPPA because Plaintiffs allege the companies act as a "single enterprise", the cases Defendants cite do not support this argument.[19] In addition, Plaintiffs are allowed to plead theories in the alternative—even if inconsistent (and here they are not). In any event, Defendants can make no such argument while simultaneously asserting they are separate entities and refusing to accept service for China-based entities on this ground. (Mem. at 2 n.1.)

**C. PII Was Disclosed.**

Finally, the complaint repeatedly alleges that personally identifying information such as account information, name, address, email address, user ID, MAC address, etc., along with Plaintiffs' video viewing histories, was disclosed to third parties. (AC ¶¶ 103-04, 165-66.) Again, Defendants simply ignore the allegations in the complaint or attempt to dispute the truth of the allegations, which must be assumed on a motion to dismiss. *See Vizio*, 238 F. Supp. 3d at 1224-25 (PII includes "name and physical address" and "digital identities" such as "consumers' MAC addresses," account IDs and other device information); *GameStop*, 2024 WL 708589, at *8 (PII included email address); *Saunders v. Hearst Television, Inc.*, 2024 WL 126186, at *3 (D. Mass. Jan. 11, 2024) (user IDs, email addresses, and geolocation data are PII).

Defendants further assert that "CapCut is not used to view others' videos, but to edit one's own" and thus "there is no video viewing history to share." (Mem. at 13.) This assertion is contrary to facts alleged in the complaint, which as Defendants acknowledge, states CapCut users may view (1) stock videos from CapCut's library, (2) edited videos provided by CapCut, (3) videos shared with other users, (4) video templates containing video sequences, and (5) "similar audio-visual material" such as stock audio and photos. (AC ¶¶ 62, 73, 163-64, 166.)

[19] *Rodriquez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045 (9th Cir. 2015) involved transfer in support of "order fulfillment," which the court held fell within a VPPA exemption. Here, in contrast, Plaintiffs allege transfers for Defendants' own purposes, and that this exemption does not apply: "The disclosure of users' personally identifiable information to third parties not involved in the transactions as alleged herein was not necessary in order for Defendants to deliver services to Plaintiffs." (AC ¶ 167.)

## V. Plaintiffs Adequately Allege ECPA and CIPA Claims.

Plaintiffs assert (1) there was no "interception" of communication "contents" under the ECPA (Wiretap Act) or CIPA § 631 and (2) there was no "recording" of "confidential" communications under CIPA § 632. Similar arguments have been rejected in other privacy litigation against these same Defendants and in a case involving another China-based video editor. *JI v. Naver Corp.*, 2023 WL 6466211, at *10 (N.D. Cal. Oct. 3, 2023); *FullStory*, 2024 WL 188101, at **8-9 (denying motion to dismiss CIPA claim); *Griffith*, 2023 WL 7107262, at **7-8 (C.D, Cal. Oct. 6, 2023) (same).

### A. Plaintiffs Adequately Plead "Interception" of Communication "Contents".

The ECPA imposes civil penalties against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a), or "uses, or endeavors to use" the "contents" of such intercepted communications, *id.* § 2511(1)(d). "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). "Acquisition" occurs "when the contents of a wire communication are captured or redirected in any way." *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009); *Campbell*, 77 F. Supp. 3d at 840.

The complaint alleges such an interception occurred here because it alleges that the contents of Plaintiffs' communications, such as messages, emails and videos, were redirected to third parties, including the CCP, who were not authorized to have them. (AC ¶¶ 75-78, 120-21.) *See Naver*, 2023 WL 6466211, at *10 (plaintiffs adequately alleged ECPA claim where they alleged "Defendants intercepted actual videos (content)"); *Brown v. Google LLC,* 2023 WL 5029899, at **15-16 & n.11 (C.D. Cal. Aug. 7, 2023) (denying summary judgment).

**Defendants Were Not a "Party".** While Defendants argue there was no "interception" because Plaintiffs were aware they were transmitting messages using CapCut (Mem. at 14), courts have repeatedly rejected such arguments, holding electronic platforms and websites liable where they take actions that redirect communications to, or allow third parties to intercept, communications that occur on their platforms. *See, e.g., Facebook Tracking*, 956 F.3d at 606 (plaintiffs "sufficiently alleged that Facebook's tracking and collection practices violated the Wiretap Act and CIPA"); *Campbell*, 77 F. Supp. 3d at 840; *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 519-21 (C.D. Cal. 2021) (upholding § 631 claims where Nike embedded software on its webpages that allowed third party to capture user data); *Kauffman*, 2024 WL 171363, at *9 (allegation that defendant and third party used "spyware" to collect user data).[20]

Just as AT&T is liable if it allows third parties to listen in on phone conversations, platforms like Facebook or CapCut are liable if they provide third parties access to electronic communications. *Naver,* 2023 WL 6466211, at *9-10. In fact, courts have held that such platforms can be held liable where there is no independent third party involved at all, but where the platform merely examines user communications in a manner that is not disclosed. In *Campbell*, for example, the court held that Facebook "intercepted" user messages when it performed an additional scan of the content of those messages because "interception occurs" when communications are "'redirected in any way.'" 77 F. Supp. 3d at 840.[21]

*Esparza v. Kohl's* (Mem. at 14) is not to the contrary. That case involved chat communications between consumers and defendant Kohl's customer service representatives—not communications between consumers utilizing a messaging platform, and even then the court

[20] The ECPA also prohibits a consent defense where, as here, "the communication is intercepted for the purpose of committing any criminal or tortious act" in violation of law. 18 U.S.C. § 2511(2)(d).

[21] If Defendants were a "party", they would still be liable because § 631 imposes liability on anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a).

concluded that "Plaintiff plausibly pleads that Defendant has violated CIPA Clause Two in allowing [a third party] to 'listen in' on chats between Website users and Kohl's customer service representatives." 2024 WL 1152732, at *6 (S.D. Cal. Mar. 18, 2024).[22]

Defendants' assertion that the named Plaintiffs do not allege that "*they* actually sent any messages or videos to someone other than Defendants through the app" (Mem. at 15) is likewise incorrect. Defendants themselves quote language from the complaint discussing "messages transmitted by ***Plaintiffs and the Class*** using the CapCut platform." (AC ¶ 188, 182.)[23] Moreover, even Defendants' cases "reject[] Defendants' suggestion that Plaintiffs must identify specific communications" in the complaint. *In re Google Assistant*, 457 F. Supp. 3d at 816-17.

**Interception in "Transit".** The very complaint language Defendants cite refutes their contention that Plaintiffs failed to allege interception of communications in "transit." As Defendants acknowledge, the complaint alleges interception "during transmission" (AC ¶ 184) and that interception occurred "while these communications were and are in transit" (*id.* ¶ 270). (Mem. at 16.) While Defendants characterize these allegations as "conclusory" (*id.*), they fail to acknowledge other factual allegations that further support them, such as testimony by their employees that third parties "monitored" communications in real time. (AC ¶¶ 75-78, 190.)

The court in *Campbell*, rejected a similar challenge where plaintiffs had alleged only that "'Facebook's interception occurred in transit, in transmission, and/or during transfer of users' private messages.'" 77 F. Supp. 3d at 841. The court observed that "the complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case" and the issue is "better addressed as part of a motion for summary judgment." *Id.*

---

[22] Another case Defendants cite rejected the "one-party consent exemption," noting "the burden of proof to show the exemption applies is on [defendant]" and it involved "evidence-bound determinations" that were "inappropriate to reach" on a motion to dismiss. *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *5 (N.D. Cal. Sept. 7, 2023).

[23] Contrary to Defendants' suggestion (Mem. at 14), users can send communications to non-users.

### B. Plaintiffs Adequately Allege "Recording" of "Confidential" Communications.

Defendants largely repeat the same arguments in challenging the CIPA § 632 claim. As they acknowledge, a CIPA § 632 claim exists where Defendants "eavesdrop upon ***or*** record" a confidential communication: both occurred here. (Mem. at 17, quoting Cal. Pen. Code § 632(a).)

*First,* contrary to Defendants' suggestion, the complaint alleges "eavesdropping" which Defendants acknowledge involves a "third party secretly listening to a conversation between two parties." (*Id.*; AC ¶ 270.) While Defendants repeat their assertion they were a "party" to communications, they were merely a platform hosting communications, and they violated CIPA by allowing third parties to eavesdrop on CapCut users. *Second*, Plaintiffs allege secret "recording" of communications, including by the CCP and other third parties who had complete access to them. (AC ¶¶ 75-78, 270.) In sum, Defendants' arguments are meritless, and also premature. *FullStory*, 2024 WL 188101, at *9 (denying TikTok's motion to dismiss as premature because information collected would be "shown through discovery").

## VI. Plaintiffs Adequately Allege an SCA Claim.

The SCA forbids unlawfully accessing a stored communication, imposing liability on any person or entity who: (1) intentionally accesses without authorization a facility through which an electronic communication service (ECS) is provided; or (2) intentionally exceeds an authorization to access that facility. 18 U.S.C. § 2701(a). In addition, an ECS provider "shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

Contrary to Defendants' suggestion, the complaint alleges disclosure of Plaintiffs' stored communications to third parties, including the Chinese government, the CCP and other third parties, violating ***both*** §§ 2701 and 2702. (AC ¶¶ 192-218.) Far from being "purely speculative" (Mem. at 18), the complaint contains numerous factual allegations supporting these claims.

Among other things, a former ByteDance engineer has stated under oath that the CCP and other third parties in China have access to all U.S. ByteDance user data. (*Id.* ¶¶ 75-78, 209-13.) *See Leitner*, 2021 WL 2669547, at *3 (rejecting claim SCA count pleaded insufficient facts as raising "fact-intensive inquiries which are better suited for resolution at a later stage of this litigation").

## VII. Plaintiffs Adequately Allege Privacy Claims.

Defendants argue that there is no constitutional or common-law privacy claim because (1) Plaintiffs had no reasonable expectation of privacy and/or consented to "all of the data collection alleged", and (2) the intrusion was not "highly offensive" and/or information was not collected from Plaintiffs. (Mem. at 18.) As with Defendants' other arguments, such contentions lack merit and are routinely rejected as inappropriate at the pleading stage. *Facebook Tracking*, 956 F.3d at 606 ("The ultimate question of whether … tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Carnival Corp.*, 2024 WL 221437, at *7 ("[C]ourts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Brown*, 2023 WL 5029899, at **20-21 (denying summary judgment).

### A. Plaintiffs Adequately Plead A Reasonable Expectation of Privacy.

Courts have repeatedly held that users have a reasonable expectation of privacy in the highly sensitive biometric data, video viewing history, internet activity, messaging and emails, and device information at issue here. *See, e.g., In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1130 (N.D. Ill 2022) (plaintiffs "had a reasonable expectation of privacy to their highly sensitive biometrics"); *Naver*, 2023 WL 6466211, at *9 (reasonable expectation of privacy in biometrics video editor collected); *Facebook Tracking*, 856 F.3d at 596 (reasonable expectation of privacy in "plaintiff's internet activity"); *Vizio*, 238 F. Supp. 3d at 1225 (reasonable expectation of privacy in "video viewing histories"); *In re Google RTB Consumer*

*Priv. Litig.*, 2022 WL 2165489, at *8 (N.D. Cal. June 13, 2022) (reasonable expectation of privacy in "web browsing histories, device information, and consumer interest data").

Moreover, the violation of that reasonable expectation is particularly egregious here given the sweeping nature of Defendants' data collection. As the *Facebook Tracking* court underscored, "the amount of information," the "nature of the collection" and the "sensitivity of the information" are all "important" in determining whether Plaintiffs had a reasonable expectation of privacy. 956 F.3d at 693; *Calhoun*, 526 F. Supp. 3d at 630.

Ignoring this law, Defendants first argue that Plaintiffs had no reasonable expectation of privacy because all data collection was disclosed in the privacy policy (Mem. at 19), but as discussed above, that is not accurate. Accordingly, Defendants resort to arguing that "common sense" should have caused Plaintiffs to know that "the collection and use of data is part of how nearly all apps and websites work." (*Id.*) However, "common sense" would not tell Plaintiffs that Defendants would share their data with the CCP or other third parties; nor does it explain the inner workings of Defendants' proprietary software. Indeed, the complaint paragraph Defendants cite specifically alleges users did not know about CapCut's data collection practices (AC ¶ 100). And the articles Defendants cite (Mem. at 19) merely reference CapCut's privacy policy, which again fails to disclose the collection of data alleged here.

Indeed, Defendants' argument would mean that ***no*** plaintiff could ***ever*** bring a privacy claim because users allegedly "should" know that all apps collect their data. That is not the law, and courts have repeatedly rejected such arguments, including in litigation against these same Defendants. *Griffith*, 2023 WL 7107262, at *6. Plaintiffs' reasonable expectation of privacy is violated where, as here, "a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Facebook Tracking*, 956 F.3d at 601-02.

**B. Plaintiffs Adequately Plead A "Highly Offensive" Intrusion.**

Defendants' contention that their intrusion on Plaintiffs' privacy rights was not "highly offensive" fails for similar reasons. As a threshold matter, the complaint refutes Defendants' assertion that the named Plaintiffs have alleged no collection of their data, stating that "Defendants possess user/device identifiers, biometric identifiers and information, private videos, and private video images sufficient to create a file of private and personally identifiable data and content for ***each CapCut user***." (AC ¶ 108.) While such allegations appear throughout the complaint, an entire section describes how the "named plaintiffs have been injured by Defendants' unlawful conduct," stating, among other things that "Defendants took plaintiffs' private and personally identifiable data and content from plaintiffs' devices" and "made some or all such stolen data and content accessible to individuals in China." (*Id.* ¶ 120.) In any event, courts have rejected Defendants' argument that Plaintiffs "need to identify specific, sensitive information" that was collected. *Facebook Tracking*, 956 F.3d at 603.

Defendants' alternative argument that, while they may have collected data, collecting certain categories of data was not "highly offensive" is equally meritless. *First,* Defendants do not dispute that, as the cited cases make clear, collecting highly sensitive data like the biometrics, video viewing history, and internet activity at issue here constitutes a "highly offensive" intrusion on Plaintiffs' privacy. Indeed, statutes like BIPA, VPPA, the ECPA and CIPA were enacted precisely for this reason. *Second*, Defendants' attempt to single out certain categories of data in isolation ignores the recent decision in *Facebook Tracking* holding that "the amount of information," the "nature of the collection" and the "sensitivity of the information" must be considered as a whole. *Id.* at 693. *Finally*, Defendants ignore contrary authority holding that

collection of the data they do address alone would constitute a highly intrusive invasion of privacy. *E.g.*, *Google RTB*, 2022 WL 2165489, at *8 (device information).[24]

Indeed, the problems with considering such data in isolation are apparent. For example, as recognized in VPPA, identifying information such as sign-up information, user IDs, location, and device information can be coupled with video viewing history to create a particularly significant privacy violation. Likewise, CapCut does not collect mere "videos and images" alone, but biometric identifiers derived from such media. And, as Defendants acknowledge (Mem. at 20 n.6), many such videos and images were ***not*** public because CapCut collects ***all*** photos and videos on user devices. Nontheless, even those videos and images that were public could be the subject of a privacy violation. *Cf. Clearview AI*, 585 F. Supp. 3d at 1130 (rejecting contention plaintiffs "had no reasonable expectation of privacy over photographs they uploaded to public websites").[25] In any event, the massive data harvesting scheme alleged here was so intrusive that it has resulted in legislation designed to stop the practices.

## VIII. Plaintiffs Adequately Allege A UCL Claim.

Defendants argue Plaintiffs fail to state a UCL claim because they do not show "some form of economic injury." (Mem. at 22.) As the cases they cite make clear, however, "there are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Even an "identifiable trifle" of economic

[24] Defendants also mischaracterize cases they cite. For example, *Rivera v. Google, Inc.*, did not hold that "collection of videos and images is not a privacy violation *per se*" (Mem. at 20); rather, the case involved face scans, which simply depicted the publicly-available image of individuals' faces. 366 F. Supp. 3d 998 (Ill. 2018). Here, Plaintiffs allege all videos and photos stored on Plaintiffs' devices were taken, including those not publicly available. Likewise, *United States v. Corbitt* is a one-page unpublished decision on suppression of evidence in a criminal case that does not describe what information was at issue. 588 F. App'x 594 (9th Cir. 2014).

[25] Any disclosures regarding location data are inadequate, and earlier versions of the policies did not contain them. Regardless, users had no reason to expect a video editor would collect the fine-grained location data CapCut collects or track their precise movements, and Defendants offer no legitimate reason CapCut does this. (AC ¶¶ 105-06.)

injury is sufficient. *Id.* at 324. Plaintiffs adequately allege economic injury here—in multiple ways (and not just under the "four theories" Defendants assert in their motion).

As another court ruled in rejecting similar arguments in a case alleging that a video editor improperly collected users' personal data (including biometric data): "Plaintiffs have plausibly alleged (among other things) that Defendants' collection and use of their data deprived them of the benefit of their bargain and diminished the value of their personal data. Because California law recognizes this economic injury as sufficient to pursue UCL and FAL claims, defendants' motions to dismiss these claims are denied." *Naver*, 2023 WL 6466211, at *9; *Meta Pixel*, 2024 WL 1251350, at *24 ("Privacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL. Indeed, there are several ways to conceptualize these kinds of injuries as injuries to money or property."). The same is true here.

*First*, "the Ninth Circuit and a number of district courts . . . have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing" under the California UCL. *Calhoun*, 526 F. Supp. 3d at 636. In *Facebook Tracking*, for example, the Ninth Circuit held that misappropriation of personal data constitutes economic injury under the UCL, even where plaintiffs did not "demonstrate that they either planned to sell their data, or that their data was made less valuable through Facebook's use." 956 F.3d at 599-600; *see Naver*, 2023 WL 6466211, at *9; *Brown*, 2023 WL 5029899, at *21.[26]

*Second*, Plaintiffs have adequately pleaded that their data has diminished market value. The complaint goes beyond the allegations deemed sufficient in *Facebook Tracking* and pleads that there is a robust market for biometric and other data surreptitiously collected by Defendants and that, as a result, Plaintiffs' data has diminished market value. (AC ¶¶ 122, 254, 261.) *See,*

[26] Defendants cite an unpublished Ninth Circuit case that does not support their argument and is superseded by *Facebook Tracking*. *In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014).

*e.g., Naver*, 2023 WL 6466211, at *9; *Meta Pixel*, 2024 WL 1251350, at *25; *Brown*, 2023 WL 5029899, at *21. The allegations here are thus different from those in *Griffith*, where plaintiff did not "allege specific facts showing that she could have sold the limited data collected." 2023 WL 9019035, at *11 ("a plaintiff's diminished ability to sell his or her browsing data constitutes economic injury under the UCL, at least when a market exists for the data").

*Third,* "[i]f a user shares information with the expectation that it will be protected but the recipient does not actually protect it, then the user has surrendered in that transaction more than she otherwise would have. This constitutes an injury to money or property under *Kwikset*." *Meta Pixel*, 2024 WL 1251350, at *24. Such injury is present here.

*Fourth*, Defendants ignore millions of dollars in direct economic injuries alleged in the complaint, including payments made by Plaintiffs who entered into subscriptions for additional services provided by CapCut. (AC ¶¶ 7, 66.) Those Plaintiffs suffered direct out of pocket losses because they would not have paid for the services if they had known their privacy would be violated and/or the value of the services they paid for (such as additional cloud storage for their data) was diminished by Defendants' privacy violations. *See, e.g., Vizio*, 238 F. Supp. 3d at 1219 ("price premium theory is cognizable under California's UCL, CLRA, and FAL").

*Fifth*, the complaint allegations of "device drain and electricity costs" do not suffer from a "lack of specificity" (Mem. at 23). While Defendants assert that the complaint "made no allegations demonstrating that the device drain or electricity costs stem from the alleged collection of data, rather than the expected functioning of the CapCut app" (*id.*), the complaint in fact alleges that Plaintiffs "have incurred additional ***data usage*** and ***electricity costs*** that they would not have incurred ***but for Defendants' covert and unlawful actions***" (AC ¶¶ 114, 122 (emphasis added)). Moreover, the lone case Defendants cite, *Opperman v. Path, Inc.*, is

inapposite. 87 F. Supp. 3d 1018 (N.D. Cal. 2014). In that case, unlike this one, there was "no indication" that "battery resources were depleted." *Id.* at 1055-56.

*Finally*, Defendants' assertion that Plaintiffs "cannot show that Defendants' conduct was 'unlawful, unfair, or fraudulent'" (Mem. at 23) is refuted by the complaint, which is filled with detailed factual allegations. Among other things, Defendants collected a range of confidential information, including highly sensitive biometric data, without authorization (AC ¶¶ 249-51), and ByteDance's own engineer said its conduct was "illegal." (*Id.* ¶¶ 75-78.) None of this was disclosed. Such allegations are sufficient under the "unlawful" prong, the "fraudulent" prong (the only prong subject to Rule 9(b)), and "the 'intentionally broad' 'unfair' prong." *Meta Pixel*, 2024 WL 1251350, at *25; *Naver*, 2023 WL 6466211, at *9 (plaintiffs adequately pleaded UCL and FAL claims regarding China-based video editor).

Finally, Defendants' violations of other laws serve as a further basis for a claim under the UCL's "unlawful" prong, which "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "Virtually any state, federal or local law can serve as the predicate for an action under section 17200." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012). This includes other causes of action in the complaint as well as allegations that Defendants failed to make adequate disclosures and obtain parental consent as required by the Children's Online Privacy Protection Act (AC ¶¶ 133-42, 252). *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023) (UCL claims for COPPA violations).

## IX. Plaintiffs Adequately Allege an FAL Claim.

In addressing the FAL, Defendants largely repeat their objections to the UCL claim, but further argue that Plaintiffs fail to plead reliance. However, the case they cite states "'[r]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was "an immediate

cause" of the plaintiff's injury-producing conduct.'" *Antonyan v. Ford Motor Co.*, 2022 WL 1299964, at *4 (C.D. Cal. Mar. 30, 2022). Here, the complaint alleges that Plaintiffs "have been harmed and have suffered economic injury ***as a result of"*** (AC ¶¶ 261-62) Defendants' omissions and misrepresentations, thus adequately pleading the reliance/causation element.[27]

## X. Plaintiffs Adequately Allege Claims for Larceny And Conversion.

Defendants argue that Plaintiffs' larceny and conversion claims fail because "Plaintiffs have not alleged a property interest in any of the data that they plead was collected from them." (Mem. at 25.) But the complaint states that Plaintiffs "have a property interest in their personal information and private data." (AC ¶ 282; *id.* ¶¶ 249, 261, 283, 287, 290.) Moreover, as noted above and as Defendants' own cases recognize, "California courts . . . have acknowledged that users have a property interest in their personal information." *Griffith*, 2023 WL 7107262, at *10. Accordingly, the *Griffith* court rejected TikTok's similar motion to dismiss larceny and conversion claims. *Id.* at *9-10; *Calhoun*, 526 F. Supp. 3d at 635.

Defendants' assertion that Plaintiffs solely allege theft of public videos is also wrong. The complaint alleges theft of a range of data, including biometric identifiers and information, geolocation data, electronic communications, personally identifying data, device identifiers, photos, audio, voiceprints, and scans of face geometry. (*E.g.*, AC ¶¶ 120-21, 188.)[28] Moreover, the complaint does not allege that all Plaintiffs' videos were posted publicly (Mem. at 25)—

[27] While the complaint is primarily based on omissions, Defendants have made affirmative misrepresentations. For example, the CapCut website states: "'Bring privacy and security into your life with CapCut's free cloud storage. Simply make your account, and rest assured that your data will remain safe whenever you return.'" (AC ¶ 65.) The CapCut website contains many such misstatements.

[28] Defendants' assertion there is no property right in data such as device or personal identifiers is wrong. Defendants rely primarily on an outdated decision, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012), which has been superseded by decisions such as *Calhoun*, recognizing a broad property interest in user data. 526 F. Supp. 3d at 635 (plaintiffs "adequately alleged that they were deprived of a property interest" for larceny claim, noting the "growing trend across courts … to recognize the lost property value of personal information." (collecting cases)). Likewise, *United States v. Abouammo* is a criminal case that nonetheless recognized that "Twitter's confidential user account information is 'property' under California law." 2022 WL 17584238, at *11 (N.D. Cal. Dec. 12, 2022).

many were ***not*** public (*id.* at 20 n.6). And, while Defendants assert there can be no larceny or conversion because "Plaintiffs willingly put their videos onto CapCut's servers" (*id.* at 26), storing private data on CapCut servers does not give Defendants license to steal the data, or to transfer the data to unauthorized third parties.

## XI. Plaintiffs Adequately Allege a Claim for Restitution/Unjust Enrichment.

The complaint likewise adequately alleges unjust enrichment. "The Ninth Circuit has explained a common law unjust enrichment claim may survive either 'as an independent cause of action or as a quasi-contract claim for restitution.'" *Clearview AI*, 585 F. Supp. 3d at 1131 (quoting *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016)). Plaintiffs "have sufficiently alleged defendants were unjustly enriched by the use of their biometric information (and other personal data) without their consent.'" *Id.*

Contrary to Defendants' suggestion, Plaintiffs "allege that legal remedies are inadequate, and no more is required at this stage." *Meta Pixel*, 2024 WL 1251350, at *9. (*See* AC ¶¶ 256, 278.) In particular, equitable relief is necessary to recover "unjustly earned profits" earned from Plaintiffs' data and fees. *Facebook Tracking*, 956 F.3d at 600.

Moreover, Plaintiffs affirmatively plead there is no enforceable contract (AC ¶¶ 10, 130-31); nonetheless, courts routinely allow unjust enrichment claims even where there is a binding contract. *See id.*; *Meta Pixel*, 2024 WL 1251350, at *9 (argument "premature" because it "has not established that the parties had a contract"); *Vizio*, 238 F. Supp. 3d at 1234.[29]

[29] *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) does not prohibit equitable restitution from coexisting with legal relief at the pleading stage. *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 896-97 (N.D. Cal. 2022). Indeed, one of Defendants cases rejected the same argument, noting "plaintiffs can plead this claim in the alternative at this juncture" despite bringing a "contract claim," and that *Sonner* does not bar the claim because "plaintiffs do allege their remedies at law are inadequate." *Meta Platforms*, 2023 WL 5837443, at *13.

## XII. Plaintiffs Adequately Allege Claims Under Illinois BIPA.

BIPA's plain language, case law, and Defendants' own admissions demonstrate that Defendants collect "biometric identifiers" and "biometric information" and are liable under each of the independent provisions of BIPA cited in the complaint.

### A. Plaintiffs Adequately Allege Collection and Possession of their Biometric Identifiers and Information.

BIPA prohibits the possession or collection of both "biometric identifiers" and "biometric information" without adequate protections and disclosures specified in the statute. "Biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.[30] CapCut collects "scans of … face geometry" and "voiceprints," which are both "biometric identifiers" under the statute's plain language. (AC ¶¶ 303-05, 315.)

CapCut also collects "biometric information," which BIPA defines as "any information, regardless of how it is captured, converted, stored, or shared based on an individual's biometric identifier used to identify an individual" that is actually "used to identify an individual." 740 ILCS 14/10. The complaint alleges CapCut satisfies this definition as well because it collects biometric information that alone (or in combination with other information CapCut collects) are used, and can be used, to identify users, including Plaintiffs here. (AC ¶¶ 303-05.)

**Scans of Face Geometry In Video.** Courts applying BIPA's plain language have repeatedly held that computer software (like CapCut) that takes a scan of face geometry or voiceprints in videos collects users' "biometric identifiers". *See, e.g., Deyerler v. HireVue, Inc.*, 2024 WL 774833 (N.D. Ill. Feb. 26, 2024) (denying motion to dismiss BIPA claims because software analyzing video interviews collected "biometric identifiers"); *Wilk v. Brainshark, Inc.*,

[30] Neither the term "scan" nor the term "geometry" require "actual or express measurements of spatial quantities like distance, depth, or angles." *In re Facebook Biometric Information Privacy Litig.*, 2018 WL 2197546, at *3 (N.D. Cal. May 14, 2018).

631 F. Supp. 3d 522 (N.D. Ill. 2022) (denying motion to dismiss BIPA claims because software that scanned facial features in sales professionals' videos collected "biometric identifiers").

In *HireVue*, for example, the court held that software that analyzed video interviews of potential employees using artificial intelligence collected "biometric identifiers" based on BIPA's plain language. While the defendant argued that the "facial scans" taken by the software to assess interviewees' emotions were not "biometric identifiers," the court concluded that "[t]his argument is undermined by the plain language of the BIPA, … which defines 'biometric identifiers' to include, among other things, 'face geometry.'" 2022 WL 774833, at *4 (quoting 740 ILCS 14/10). Accordingly, the court held the "complaint plausibly alleges that HireVue violated § 15(a) by capturing and collecting the plaintiffs' biometric data." *Id.* at *6.

In *Brainshark*, the court similarly concluded that software that "scans videos for facial features" to assess sales professionals' emotions and other performance indicators collected "biometric identifiers" based on BIPA's plain language. 631 F. Supp. 3d at 530. The court held that "a facial feature scan qualifies as a 'biometric identifier'" because "BIPA explicitly defines 'biometric identifier' to include a 'scan of hand and face geometry.'" *Id.* As the court noted, "multiple other cases have found that what [defendant] allegedly collected and captured here by scanning videos qualifies as collecting and capturing biometric identifiers." *Id.*

**Video Editors.** Courts likewise have held that video and photo editors (like CapCut) collect "biometric identifiers" and/or "biometric information" based on BIPA's plain language. In *Colombo v. YouTube, LLC*, for example, the court denied defendant's motion to dismiss claims involving YouTube's video editor, holding that BIPA's plain language made clear that the app collected biometric identifiers. 2023 WL 4240226 (N.D. Cal. 2023). The court observed that BIPA defines "'biometric identifier' as 'a retina or iris scan, fingerprint, voiceprint, or scan

of hand or face geometry.'" *Id.* at *3. Because a video editor utilizes scans of face geometry,[31] the court concluded it collected "biometric identifiers" as defined in the statute.[32]

**Speech Recognition.** Courts have likewise ruled that software that converts speech to text (like CapCut) collects "voiceprints" and thus "biometric identifiers" as defined in BIPA. For example, the court in *Delgado v. Meta Platforms, Inc.* held that plaintiff sufficiently alleged that Meta's Messenger app "collected her voiceprint" because the app translated audio of her voice into text messages. 2024 WL 818344, at *5 (N.D. Cal. Feb. 27, 2024). Citing one of the cases on which Defendants rely here, the court concluded that "'Meta has collected a voiceprint from Plaintiff and other [users]'" because its "'technology mechanically analyzes customers' voices in a measurable way.'" *Id.* at *7, quoting *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 517 (N.D. Ill. 2022).[33] The same is true here where Defendants agree CapCut "'translates voices to text,'" "'analyzes the user's voice,'" and "'effectively distinguishes different dialects, languages and accents, with incomparable precision.'" (AC ¶¶ 52, 57.)[34]

---

[31] Like the YouTube video editor, CapCut takes scans of face geometry and thus collects "biometric identifiers." Indeed, it can create YouTube-compatible videos and thumbnails. (AC ¶¶ 55-56.)

[32] In *Naver*, the court granted plaintiffs leave to amend their claim that defendants' video editor collected "biometric information" to add an allegation that the biometric data collected could identify plaintiffs in combination with other identifying information collected such as names and addresses. 2023 WL 6466211, at *12. However, the court did not require such a showing for "*biometric identifiers*": "the Court does not hold here that a plaintiff making an allegation under § 15(b) just about biometric identifiers (such as facial geometry scans) necessarily must meet the 'capable of determining' standard" articulated in *Daichendt*. *Id.* at *12 n.10.

[33] The language regarding "voiceprinting" Defendants quote from *McGovern* was a definition alleged in the complaint, not adopted by the court, and the Attorney General opinion they cite addressed FOIA requests, but in any event stated a "'voiceprint' is an analytical process by which ***a voice is measured or*** matched to a speaker." (Mem. at 31 (emphasis added).)

[34] Contrary to Defendants' assertion (Mem. at 32), there are reasons to conclude the Illinois Assembly intended audio (and video) recordings to fall within BIPA's scope, at least under certain circumstances. BIPA expressly lists the items excluded from the definition of "biometric identifiers" and, while it excludes raw "photographs," it does not exclude raw audio (or video) recordings. 740 ILCS 14/10. Thus, video "can constitute 'biometric identifiers'" under BIPA because "video does not fall under this exception." *Brainshark*, 631 F. Supp. 3d at 530. The same is arguably true of audio. The Assembly could have excluded audio and video recordings from the definition, but did not, consistent with its intent to provide broad biometric protections. Indeed, the FTC has stated that "Biometric information includes, but is not limited to, depictions, images, descriptions, or recordings of an individual's facial features, iris or retina, finger or handprints, voice, genetics, or characteristic movements or gestures (e.g., gait or typing pattern)." Policy Statement of the Federal Trade Commission on Biometric Information and Section 5 of the FTC Act, https://www.ftc.gov/system/files/ftc_gov/pdf/p225402biometricpolicystatement.pdf, Ex. 6.

**Complaint Allegations.** While BIPA's plain language alone makes clear that CapCut collects biometric identifiers and information, the complaint here goes far beyond minimal pleading requirements, citing an extensive factual record further supporting this conclusion.

*First,* Defendants themselves acknowledge that the TikTok app and its video editor collect "biometric identifiers" and "biometric information," including "faceprints" and "voiceprints". The TikTok Privacy Policy states that the app may "***collect biometric identifiers and biometric information*** as defined under U.S. laws, such as ***faceprints and voiceprints***, from your User Content." (AC ¶ 91 (emphasis added).) While Defendants assert TikTok "offers different features and functionality," the order approving the *TikTok* privacy settlement stated that it offers "video editing features" and "facial filters"—like CapCut. 617 F. Supp. 3d at 949.

*Second*, the complaint quotes multiple analyses of the CapCut app by independent reviewers who have found that it utilizes "advanced facial recognition algorithms" to "analyze[] facial features," uses advanced AI to "painstakingly determine and record face features," and similarly "analyzes the user's voice." (AC ¶¶ 55-57.) While Defendants argue that "facial recognition" is a "buzzword" and CapCut merely "detects" faces in videos (Mem. at 29), the complaint refutes these assertions, Defendants themselves acknowledge that the app "'automatically recognizes your movie's faces'" (AC ¶ 63), and there are numerous cases concluding that such "facial recognition" technology falls within the scope of BIPA. *See, e.g., Karling v. Samsara Inc.*, 610 F. Supp. 3d 1094, 1097 (N.D. Ill. 2022) (denying motion to dismiss BIPA claims regarding "facial recognition software" that monitored truck drivers for "fatigue and distraction"); *In re Facebook Biometric Information Privacy Litig.*, 185 F. Supp. 3d 1155, 1158 (N.D. Cal. 2016) (denying motion to dismiss software that used "'state-of-the-art facial recognition technology' to extract biometric identifiers" from photos).

*Finally*, the complaint alleges that CapCut's code and Defendants' patents demonstrate that CapCut collects biometric identifiers. While the detailed code implementing CapCut is solely in Defendants' possession, the complaint alleges that what information is publicly available shows that "biometrics-related violations are established by the functionality and code of the cloud-based CapCut app." (AC ¶¶ 315, 317.) Similarly, the complaint discusses numerous patents evidencing the facial and voice recognition technology Defendants have developed. (*Id.* ¶¶ 324-26.) While Defendants argue patents are not evidence that biometric identifiers are actually being collected (Mem. at 31), courts have considered patents for precisely that purpose, including in cases Defendants cite, concluding that "'it is reasonable to infer'" that such patents were implemented. *Delgado*, 2024 WL 818344, at *7; *see also Carpenter*, 580 F. Supp. 3d at 517 (patent was "appropriate to consider").[35]

**Defendants' Interpretation.** In response, Defendants seek to add language to the BIPA statute, arguing that "biometric identifiers" "must be capable of identifying someone." (Mem. at 27.) As the decisions cited above have observed, the statutory definition of "biometric identifiers" contains no such requirement—and, in fact, the statute specifically contains a separate category of covered information ("biometric information") that does contain such a requirement. *See Colombo*, 2023 WL 4240226, at *3. Defendants' interpretation would render the separate "biometric identifier" category superfluous and would unduly narrow the scope of statutory protections, contrary to the legislature's intent. *River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 645 (7th Cir. 2011) ("Interpretations that result in provisions being superfluous are highly disfavored.").

[35] Contrary to Defendants' suggestion (Def. Mem. 31 n.14), the complaint alleges CapCut collected biometric identifiers and information from residents in Illinois. (*E.g.*, AC ¶¶ 39-41, 303-05.)

However, even if there were such a requirement embodied in the definition of "biometric identifiers," the Illinois Assembly has already made a legislative determination that "scans of hand or face geometry" and "voiceprints" satisfy it. The statute does not say "some" "scans of face geometry" or "some" "voiceprints" are included in the definition of "biometric identifiers" or that "scans of face geometry" or "voiceprints" "may" be "biometric identifiers" under certain circumstances, but not others. Rather, the statute says that "biometric identifiers ***means***," among other things, "scans of hand or face geometry" and "voiceprints." 740 ILCS 14/10 (emphasis added). As one of Defendants' cases acknowledges, that legislative determination is not only apparent from the statute, but correct, because "scans of face geometry" and "voiceprints" can in fact be used to identify individuals: "***Each specific item on the list***, not surprisingly, fits within the meaning of the term 'biometric identifier,' that is, a biology-based set of measurements ('biometric') that ***can be used to identify a person ('identifier')***." *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (emphasis added). Where, as here, "an act defines its own terms, those terms must be construed according to the definitions given to them in the statute." *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 870-71 (N.D. Ill. 2022) ("The faceprints extracted by Onfido plausibly constitute scans of face geometry and, therefore biometric identifiers"); *Hernandez v. Omnitracs, LLC*, 2024 WL 1376352, *7 (N.D. Ill. Mar. 31, 2024) (noting "BIPA's *explicit* definition that 'biometric identifier' includes 'a scan of … face geometry").

Nonetheless, the allegations here satisfy even Defendants' narrow interpretation of BIPA because Plaintiffs specifically allege that the face scans and voiceprints Defendants collect "can be used to identify CapCut users" alone—or in combination with other personally identifying information collected by the app. (AC ¶¶ 100, 317.) Indeed, Defendants acknowledge that the complaint specifically alleges that "CapCut's technology 'can be used to identify'" users (Mem.

at 28, quoting AC ¶ 100) and separately acknowledge that video editors like the TikTok video editor "collect biometric identifiers and biometric information." (AC ¶ 91.)

The cases Defendants cite—which involve so-called "virtual try-on tools" (*Castelaz* and *Clarke*) or technology used to ensure photographs meet passport requirements (*Daichendt*)—only further confirm that Plaintiffs have adequately pleaded their BIPA claims.[36] In *Daichendt v. CVS Pharmacy, Inc.*, for example, the court initially dismissed BIPA claims on the ground that "Plaintiffs do not allege that they provided defendant with any information, such as their names or physical or email addresses, that could connect the voluntary scans of face geometry with their identities." 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022). However, after plaintiffs amended the complaint to add such information, the court ruled the allegations were sufficient: "Plaintiffs have stated a claim under § 15(b), where they allege that defendant scanned their face geometry to evaluate whether their face, as photographed, meets the government's passport requirements, and where their scan is associated with their personal contact information in defendant's photo system." *Daichendt v. CVS Pharmacy, Inc.*, 2023 WL 3559669, at *2 (N.D. Ill. May 4, 2023). This additional information "made defendant capable of identifying them when associated with scans of their face geometry ('biometric identifiers')" and thus stated a BIPA claim. *Daichendt*, 2022 WL 17404488, at *1.

Here, such allegations are already contained in the complaint, and thus Plaintiffs satisfy even Defendants' narrow definition. (AC ¶¶ 100, 317.) Indeed, the court in *Castelaz v. Estee Lauder Cos., Inc.* specifically found the *Colombo* video editor case "distinguishable" because,

[36] There is disagreement on the standard even in the context of such try-on tools. *Clarke v. Aveda Corp.*, 2023 WL 9119927, at *2 (N.D. Ill. Dec. 1, 2023) (recognizing split of authority); *Melzer v. Johnson & Johnson Inc.*, 2023 WL 3098633, at *3 (D.N.J. Apr. 26, 2023) ("A commonsense interpretation, as other courts have found, compels a finding that the facial scans captured and collected by Skin360 fall within BIPA's definition of a 'biometric identifier,' which explicitly includes a scan of facial geometry… BIPA does not require a 'biometric identifier' to be used to identify an individual."); *Powell v. Shiseido Americas Corp.*, 2022 WL 19914948, at *6 (C.D. Ill. Aug. 22, 2022).

unlike the plaintiffs in *Castelaz*, "the plaintiff in *Colombo* alleged that he was a YouTube user who uploaded multiple videos to his YouTube account," and thus was identifiable. 2024 WL 136872, at *7 n.6 (N.D. Ill. Jan. 10, 2024).

### B. Plaintiffs Adequately Allege the Other Elements Defendants Dispute.

Plaintiffs have also adequately pleaded the other elements Defendants challenge. BIPA §§15(a)-15(e) provide multiple, independent grounds for a claim under the statute, all of which are alleged in the complaint. Defendants argue that claims under §§ 15(c), 15(d) and 15(e) are not adequately pleaded. The complaint and governing law demonstrate otherwise.

**15(c).** BIPA § 15(c) provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 10/15(c). Plaintiffs adequately plead this element in at least three ways.

*Profit.* The complaint details a variety of ways in which Defendants have profited from Plaintiffs' collected data (including biometrics), including through development of artificial intelligence technologies, targeted advertising by CapCut and other entities like TikTok, and development of patents. (AC ¶¶ 5, 100, 109-10, 303-05.) As in *Naver*, such allegations alone are sufficient to state a claim. 2023 WL 6466211, at *8 (denying motion to dismiss § 15(c) claim where plaintiffs "adequately alleged that they are economically injured by Defendants unlawfully profiting from, among other data, their biometric information and identifiers").

*Trade.* The complaint alleges ByteDance transfers CapCut user data to TikTok, which in exchange, advertises CapCut on the Tiktok app. (AC ¶¶ 68-70.)[37] As Defendants' own case

[37] Defendants' assertion such exchanges are "irrelevant" or foreclosed by single enterprise allegations (Mem. at 33 n.17) is not supported by any authority and is wrong because plaintiffs are allowed to plead in the alternative, and the allegations here are not even inconsistent with Defendants acting in concert.

recognizes, "Section 15(c) prohibits the dissemination of biometric data for some sort of gain, whether pecuniary or not." *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021); *Melzer*, 2023 WL 3098633, at *5 (plaintiff "plausibly alleges a Section 15(c) claim" where defendant "commercially disseminates her and the class members biometric identifiers and biometric information to [defendant's] affiliates and other third parties for its own benefit").

*Otherwise Profit.* Finally, Defendants "otherwise profited" from Plaintiffs' biometric identifiers by incorporating them as a "necessary element to [a] business model"—both CapCut's business model, which collects biometrics as part of its operations, and business models used in other aspects of ByteDance's various operations. *See Flores v. Motorola Sols., Inc.*, 2021 WL 232627, at *3 (N.D. Ill. Jan. 8, 2021).

**15(d).** Section 15(d) states that a company may not "disclose, redisclose, or otherwise disseminate" biometric identifiers or information. 740 ILCS 10/15(d). At the pleading stage all that is needed is to allege that the defendant "disseminat[es] biometrics to third parties": "[w]hether or not the allegation is true, it must be accepted as such at this [pleading] stage." *HireVue*, 2024 WL 774833, at *7; *Karling*, 610 F. Supp. 3d at 1104-05; *Johnson v. NCR Corp.*, 2023 WL 1779774, at *5 (N.D. Ill. Feb. 6, 2023) ("[A]llegations sufficiently suggest that NCR used third-party vendors and thus disseminated Plaintiffs' biometric data to them, which is all that they must do to proceed with discovery.").

The complaint here documents that Plaintiffs' data is disseminated in multiple ways. *First*, while Defendants assert that the allegation that user data is accessible by the Chinese

government, CCP or other third parties is "implausible" or "speculative" (Mem. at 33), it is amply documented in the complaint.[38] (AC ¶¶ 6, 72.)

*Second*, Defendants do not even appear to dispute they trade user data with entities within the ByteDance group, which further violates § 15(d). *E.g., Naughton v. Amazon.com, Inc.*, 2022 WL19324, at *4 (N.D. Ill. Jan. 3, 2022) (plaintiff pleaded Amazon's "plausible dissemination" of biometrics "to other Amazon entities"); *Melzer*, 2023 WL 3098633, at *5 ("numerous courts have found that allegations concerning a defendant's use of third-party technology as well as biometric data sharing to affiliates and third-party providers can create a plausible inference of dissemination or disclosure"); *Cothron*, 467 F. Supp. 3d at 618 (§ 15(d) claim plausibly pleaded).

*Third*, the complaint alleges that Plaintiffs' data is used in the development of patents and artificial intelligence technologies and has been hosted on separate servers, necessitating further dissemination to third parties. (AC ¶¶ 7, 110, 121, 308, 324.)[39] Such allegations that defendant "'disseminated [the plaintiffs'] biometric data to other firms that hosted the information in their data centers' are sufficient to state a claim under § 15(d)." *HireVue*, 2024 WL 774833, at *7, quoting *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 785 (N.D. Ill. 2020).

**15(e).** Plaintiffs failed to "store, transmit and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within [Defendants'] industry." 740 ILCS 14/15(e). Contrary to Defendants' argument, this claim is not based on alleged violations of 15(a), 15(b) or 15(d). (Mem. at 34.) Rather, it is based on Defendants' failure to adequately protect users' biometric data from disclosure or misuse. As in *Naver*,

---

[38] Plaintiffs' assertion that an exception for disclosure "required by State or federal law or municipal ordinance" applies (Mem. at 34 n.18) is wrong. No law required disclosure to non-government entities like the CCP and other third parties. Moreover, the exception references "State or federal law or municipal ordinance"—not ***foreign*** law.

[39] Defendants' exhibits confirm third party involvement, including a cloud storage "service provider" (Doc. 31-5, at 4) and "third party service providers who help us to deliver the Platform" (*id.* at 3).

Defendants violated industry standards by exposing their data to collection by the CCP, the Chinese government and other China-based entities. 2023 WL 6466211, at *13 (denying motion to dismiss); *Figueroa*, 454 F. Supp. 3d at 785 (same).

### C. Defendants' Narrow View of BIPA Is Inconsistent with Legislative Intent.

Finally, Defendants' various attempts to rewrite BIPA and limit its protections are inconsistent with the legislative intent to "provide[] ***robust*** protections for the biometric information of Illinois residents." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1242 (7th Cir. 2021) (emphasis added); *Delgado*, at *3 ("By its express terms, BIPA manifests Illinois' substantial policy of protecting its citizens' right to privacy…").

Moreover, while Plaintiffs maintain that Defendants' interpretations of BIPA are at odds with the statute's plain language, as with many of the other issues raised in Defendants' motion, they also implicate the sorts of "quintessential dispute[s] of fact for the jury to decide" that are not appropriate for resolution on a motion summary judgment, much less a Rule 12(b)(6) motion. *See In re Facebook Biometric* Information *Privacy Litig.*, 2018 WL 2197546, at *3 (N.D. Cal. May 14, 2018) (denying summary judgment on BIPA claims).

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety, or in the alternative the Court should grant leave to amend.

Dated: April 30, 2024

Respectfully submitted,

By: */s/ Jeannie Evans*

Jeannie Evans (Bar No. 6296339)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4962
Facsimile: (708) 628-4952
jeannie@hbsslaw.com

Steve W. Berman (Bar No. 3126833)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Douglas G. Smith
ALPHEUS LLC
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
Telephone: (312) 451-6708
dsmith@aureliuslawgroup.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on April 30, 2024. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: April 30, 2024

*/s/ Jeannie Evans*
Jeannie Evans