**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EVELIA RODRIGUEZ; ERIKKA WILSON; A.N., A MINOR; AIDEN GUNDLACH; ZACHARY BUCKUS; RAYMON MARINES; AND J.V., A MINOR on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BYTEDANCE INC.; BEIJING DOUYIN INFORMATION SERVICE CO. LTD. F/K/A BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; BYTEDANCE LTD.; BYTEDANCE PTE. LTD.; BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; AND TIKTOK INC. F/K/A MUSICAL.LY INC.,

Defendants.

Case No. 1:23-cv-04953

Judge Sharon Johnson Coleman

**Hearing Requested**

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....1

II. THE CAPCUT PRIVACY POLICY PRECLUDES PLAINTIFFS' CLAIMS ....1

III. THE CFAA CLAIM FAILS ....3

A. Any Alleged Access Was Authorized.... 3

B. Plaintiffs Identify No CFAA Loss .... 4

C. Plaintiffs Identify No Threat to Public Health or Safety .... 5

IV. THE CDAFA CLAIM MUST BE DISMISSED ....5

V. THE VPPA CLAIM MUST BE DISMISSED ....6

A. CapCut Is Not a "Video Tape Service Provider".... 6

B. Plaintiffs Fail to Identify Any Actionable Disclosure .... 7

C. Plaintiffs Identify No Disclosed "Personally Identifiable Information".... 8

VI. THE ECPA AND CIPA CLAIMS MUST BE DISMISSED ....9

A. Plaintiffs Do Not Allege An "Interception" Under ECPA or CIPA Section 631 .... 9

B. Plaintiffs Do Not Identify Any "Recording" of "Confidential" Communications ... 10

VII. THE SCA CLAIM MUST BE DISMISSED....11

VIII. THE CONSTITUTIONAL AND COMMON-LAW PRIVACY CLAIMS FAIL ....12

A. Plaintiffs Consented to the "Common Sense" Collection of Data.... 12

B. Plaintiffs Do Not Identify a Basis For Any Reasonable Expectation of Privacy .... 13

IX. THE UCL CLAIM MUST BE DISMISSED....15

X. THE FAL CLAIM MUST BE DISMISSED ....16

XI. THE PROPERTY CLAIMS MUST BE DISMISSED....16

XII. THE EQUITABLE CLAIMS MUST BE DISMISSED....17

XIII. THE BIPA CLAIMS MUST BE DISMISSED ....17

**TABLE OF CONTENTS**
(continued)

**Page**

A. "Biometric Identifiers" Must Be Capable of Identification ..................................... 17

B. Plaintiffs Do Not Plausibly Allege the Collection of Biometric Identifiers ............. 19

C. Plaintiffs' Section 15(c), (d), and (e) Claims Separately Fail ................................... 22

XIV. CONCLUSION ........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldana v. GameStop, Inc.*,
2024 WL 708589 (S.D.N.Y. Feb. 21, 2024)....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................1, 4

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024)....................17

*Bonte v. U.S. Bank, N.A.*,
624 F.3d 461 (7th Cir. 2010)....................6, 11

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019)....................4

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023)....................15

*Burton v. HMS Host*,
2024 WL 1254363 (N.D. Ill. Mar. 25, 2024)....................8, 10, 16

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. Mar. 17, 2021)....................15, 17

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....................9

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) (Norgle, J.)....................18

*Castelaz v. Estée Lauder Cos., Inc.*,
2024 WL 136872 (N.D. Ill. Jan. 10, 2024) (Jenkins, J.)....................18, 20, 21

*Clarke v. Aveda Corp.*,
--- F. Supp. 3d ----, 2023 WL 9119927 (N.D. Ill. 2023) (Rowland, J.)....................18, 21

*Colo. Republican Comm. v. Doe*,
2016 WL 3922156 (D. Colo. July 21, 2016)....................5

*Colombo v. YouTube, LLC*,
679 F. Supp. 3d 940 (N.D. Cal. 2023)....................18

# TABLE OF AUTHORITIES

Page(s)

*Corbett v. Cnty. of Lake*,
2017 IL 121536, 104 N.E.3d 389 ....................18

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................3

*Daichendt v. CVS Pharmacy, Inc.*,
2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) (Gettleman, J.), *modified on other grounds on reconsideration*, 2023 WL 3579082 (N.D. Ill. Feb. 3, 2023) ....................18, 21

*Daichendt v. CVS Pharmacy, Inc.*,
2023 WL 3559669 (N.D. Ill. May 4, 2023) ....................22

*Delgado v. Meta Platforms, Inc.*,
2024 WL 818344 (N.D. Cal. Feb. 27, 2024) ....................21, 22

*Deyerler v. HireVue, Inc.*,
2024 WL 774833 (N.D. Ill. Feb. 26, 2024) ....................20, 22

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) ....................12

*Epstein v. Epstein*,
843 F.3d 1147 (7th Cir. 2016) ....................10

*Garza v. Alamo Intermediate II Holdings, LLC*,
2024 WL 1171737 (N.D. Cal. Mar. 19, 2024) ....................7

*Griffith v. TikTok Inc.*,
2023 WL 7107262 (C.D. Cal. Oct. 6, 2023) ....................17

*Halperin v. Int'l Web Servs., LLC*,
70 F. Supp. 3d 893 (N.D. Ill. 2014) ....................4

*Hammerling v. Google LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ....................1

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................12

*In re Anthem, Inc. Data Breach Litig.*,
2016 WL 3029783 (N.D. Cal. May 27, 2016) ....................15

*In re Clearview AI, Inc., Consumer Privacy Litig.*,
585 F. Supp. 3d 1111 (N.D. Ill. 2022) (Coleman, J.) ....................14

**TABLE OF AUTHORITIES**

Page(s)

*In re BPS Direct, LLC*,
2023 WL 8458245 (E.D. Pa. Dec. 5, 2023) ........ 12

*In re Facebook Biometric Information Privacy Litigation*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ........ 20

*In re Facebook Biometric Info. Priv. Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ........ 20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 10, 14, 15

*In re Facebook Privacy Litig.*,
572 F. App'x 494 (9th Cir. 2014) ........ 15

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 12

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........ 1

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 14

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ........ 15

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ........ 15, 16

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 8

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ........ 15

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ........ 14

*Ji v. Naver Corp.*,
2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) ........ 4, 13, 14, 15, 22

*Jones v. Google*,
73 F.4th 636 (9th Cir. 2023) ........ 16

**TABLE OF AUTHORITIES**

Page(s)

*Karling v. Samsara Inc.*,
610 F. Supp. 3d 1094 (N.D. Ill. 2022) ....20

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ....10

*Leitner v. Morsovillo*,
2021 WL 2669547 (W.D. Mo. June 29, 2021) ....12

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....10

*New Box Sols., LLC v. Davis*,
2018 WL 4562764 (C.D. Cal. Sept. 18, 2018) ....5

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ....16

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ....14

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023) ....6

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) (Chang, J.) ....18, 19

*Robinson v. Lake Ventures LLC*,
2023 WL 5720873 (N.D. Ill. Sept. 5, 2023) (Jenkins, J.) ....18

*Saeedy v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ....12

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....10

*Saunders v. Hearst Television*,
2024 WL 126186 (D. Mass. Jan. 11, 2024) ....8

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) ....1

*Sloan v. Anker Innovations Ltd.*,
2024 WL 935426 (N.D. Ill. Jan. 9, 2024) ....9

**TABLE OF AUTHORITIES**

Page(s)

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 Fed. App'x 8 (9th Cir. 2018) ..................1, 2

*Snapkeys, Ltd. v. Google LLC*,
539 F. Supp. 3d 1040 (N.D. Cal. 2021) ....................17

*Sosa v. Onfido, Inc.*,
600 F. Supp. 3d 859 (N.D. Ill. 2022) ....................20

*Sterk v. Redbox Automated Retail, LLC*,
770 F.3d 618 (7th Cir. 2014) ....................7

*Taylor v. 48forty Sols., LLC*,
2024 WL 1530383 (N.D. Ill. Apr. 9, 2024) (Kocoras, J.)....................18

*Thomason v. Nachtrieb*,
888 F.2d 1202 (7th Cir. 1989) ....................8, 10, 16

*Tierney v. Vahle*,
304 F.3d 734 (7th Cir. 2002) ....................3

*Tomek v. Apple Inc.*,
636 F. App'x 712 (9th Cir. 2016) ....................15

*U.S. v. Mitra*,
405 F.3d 492 (7th Cir. 2005) ....................5

*Van Buren v. United States*,
141 S. Ct. 1648 (2021)....................3

*Vance v. Microsoft Corp.*,
534 F. Supp. 3d 1301 (W.D. Wash. 2021)....................22

*Watson v. Legacy Healthcare Fin. Servs., LLC*,
2021 IL App (1st) 210279, 196 N.E.3d 571 ....................19

*Wilk v. Brainshark, Inc.*,
631 F. Supp. 3d 522 (N.D. Ill. 2022) ....................20

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013) ....................3

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)....................9

# TABLE OF AUTHORITIES

Page(s)

*Zapata Fonseca v. Goya Foods Inc.*,
2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ....................17

**Statutes**

740 ILCS 14 *et seq* ....................17, 18, 19

18 U.S.C. § 1030 *et seq* ....................5

18 U.S.C. § 2701 *et seq* ....................11, 12

18 U.S.C. § 2702 *et seq* ....................11, 12

18 U.S.C. § 2710 *et seq* ....................6, 7

Cal. Penal Code § 631 *et seq* ....................9, 11

Cal. Penal Code § 632 *et seq* ....................10, 11

**Other Authorities**

95th Ill. Gen. Assem., House Proceedings, May 30, 2008 ....................19

Black's Law Dictionary (11th ed. 2019) ....................18

Federal Rules of Civil Procedure Rule 9(b) ....................16

Federal Rules of Civil Procedure Rule 11 ....................8

National Science and Technology Council, Biometric "Foundation Documents"
(2009), a*vailable at* https://apps.dtic.mil/sti/pdfs/ADA505048.pdf (last visited
May 28, 2024) ....................18, 21

## I. INTRODUCTION

As detailed in Defendants' motion to dismiss (the "Motion"), Plaintiffs assert nearly every privacy claim imaginable, but support those claims with nothing more than conclusory statements and speculation. Plaintiffs' Opposition compounds this problem by claiming that every factual deficiency in the Amended Complaint is merely a "fact issue" to be decided at a later stage after discovery. Not so: "a plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiffs' argument contradicts the well-established pleading standards of *Iqbal*, as well as the many cases in which claims just like Plaintiffs' have been dismissed for the very same factual deficiencies.

## II. THE CAPCUT PRIVACY POLICY PRECLUDES PLAINTIFFS' CLAIMS

Plaintiffs concede that consent to the alleged data collection would preclude many claims. *See* Opp. at 5 n.6 (citing case law on CIPA, ECPA, SCA, intrusion, larceny, and UCL). As the authority cited in the Motion confirms, this applies to all claims, Mot. at 4 n.2, and to all plaintiffs. *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *14 n.11 (N.D. Cal. Mar. 18, 2014) ("no case law suggesting that minors cannot provide consent to interceptions of their communications").

Plaintiffs incorrectly assert that consent is always a factual issue that must be saved for summary judgment. Relevant authority plainly rebuts that notion, with courts frequently granting motions to dismiss on the basis of consent. *See, e.g.*, *Silha v. ACT, Inc.*, 807 F.3d 169, 175 (7th Cir. 2015) (motion to dismiss properly granted where plaintiffs consented to the alleged disclosure of their personal information); *Hammerling v. Google LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (dismissal appropriate because Google's privacy policy "expressly disclosed" alleged collection); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953–56 (N.D. Cal. 2017), *aff'd*, 745 Fed. App'x 8, 8–9 (9th Cir. 2018) (affirming dismissal based on consent to privacy policy).

Plaintiffs seem to argue that the CapCut Privacy Policy was insufficient to obtain consent because it did not include the exact language Plaintiffs use in their allegations. Opp. at 7–8. Such an argument ignores the reality that a privacy policy must be readable by lay persons. A privacy policy that attempted to reflect every possible phrasing of what and how data is collected and how and with whom it is used and disclosed would be incomprehensible to the average consumer. Thus, courts do not require privacy policies to include every permutation and combination of words to provide effective notice. *See, e.g.*, *Smith*, 262 F. Supp. 3d at 953–56 (dismissing claims where policy disclosed that Facebook "collect[s] information" on partner websites).

Plaintiffs' attempts to explain away the Privacy Policy are also defeated as a matter of law by the policy's plain language, as reflected in the following chart:

| **What the Opposition says is missing (Opp. at 8)** | **What the Privacy Policy discloses (ECF No. 31–5) (emphasis added)** |
|---|---|
| "specific items such as Mac address, SSID, BSSID, previously configured networks, IMEI information, IMSI information, MEID, ICCID, and SIM serial number" | "**Unique device identifiers** . . . network type and connections, mobile or device model, android ID, device manufacturer . . ." |
| "fine-grained location information and updates" | "Location. We collect **information about your approximate location**, including location information based on your SIM card and/or IP address." |
| "access to data by individuals in China," "third parties . . . such as . . . entities assisting ByteDance with patents and artificial intelligence technologies" | "any member of our group, which means our subsidiaries, our ultimate holding company and its subsidiaries, or companies that we control, are controlled by or under common control, and our **service providers and strategic business partners**, in each case in or **outside your country**"<br><br>"The information about you that we collect from you may be transferred to, and stored at, a destination inside or **outside of your country**[.]" |

Finally, Plaintiffs argue that the Privacy Policy is misleading because it states that CapCut is provided by a Singapore entity with user data stored in the U.S. and Singapore, while omitting

mention of affiliates in China. *See* Opp. at 8. But Plaintiffs cite no authority, nor could they, that requires disclosure of each country where affiliates of a service provider operate.[1]

## III. THE CFAA CLAIM FAILS

### A. *Any Alleged Access Was Authorized*

Defendants' Motion explained that the Amended Complaint fails to show any unauthorized access to Plaintiffs' devices, as required by the CFAA. Mot. at 6–8. Indeed, the facts alleged in the Amended Complaint confirm that access *was authorized* because Plaintiffs (1) voluntarily downloaded the CapCut app, (2) signed up for accounts and submitted their information to CapCut, and (3) created videos on the app. *See* ACAC ¶¶ 10–22; *see also* Mot. at 7; Opp. at 10–11.

Plaintiffs' Opposition has no rebuttal to this defect, as the only factual allegation in the Amended Complaint they can find to try to support this claim is the innocuous allegation that the app has "the capacity" to "access files on user devices and store them." ACAC ¶ 105 (quoted by Opp. at 12). Nothing in that allegation shows the access was "unauthorized." Plaintiffs' case is about what allegedly *might* happen to Plaintiffs' data *after* it is accessed by Defendants, not the access itself. *See* Opp. at 1–3. Such a case does not state a claim because the CFAA imposes liability only for *unauthorized access*, not for the subsequent *sharing or use* of data obtained therefrom. *Van Buren v. United States*, 141 S. Ct. 1648, 1653, 1660 (2021) (agreeing that "the 'exceeds authorized access' clause applies only to those who obtain information to which their computer access does not extend, not to those who misuse access that they otherwise have").

---

[1] Plaintiffs also rely on *Tierney v. Vahle* to argue that the Privacy Policy is not properly before the Court, but the court there *did* consider the relevant document, holding it could have done so "even if the document had merely been referred to in the complaint," as long as it was authentic and central to plaintiff's claim. 304 F.3d 734, 738 (7th Cir. 2002). They also rely on *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021), a case decided under a different standard in a different circuit; but the Seventh Circuit takes "a relatively expansive view of the documents that a district court properly may consider in disposing of a motion to dismiss." *Williamson v. Curran*, 714 F.3d 432, 443 (7th Cir. 2013).

Consistent with their approach throughout the Opposition, Plaintiffs merely deem this a "factual dispute" and move on. Opp. at 12. Yet the Supreme Court has said that Plaintiffs cannot move on without "well-pleaded facts" that "show" they are "entitled to relief"—not just "the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

**B. *Plaintiffs Identify No CFAA Loss***

Defendants' Motion explained that Plaintiffs must have suffered a specific type of "loss" to have standing under the CFAA. Mot. at 8. Plaintiffs' complaint attempts to assert two types of "losses" to support their CFAA claim: diminution in the monetary value of their data and battery drain on their devices attributable to the battery power it took for the CapCut app to run operations. *See* ACAC ¶ 158. Neither of these purported "losses" is actionable under the CFAA. First, Plaintiffs' Opposition does not even argue that the alleged diminution in their data's value qualifies as a CFAA loss. *See id*.; Opp. at 12–13. They instead refer obliquely to an alleged "market" for biometric data, Opp. at 13, but they have not alleged that they participated in that market and would have sold their biometric data but for the actions of Defendants. *See* Mot. at 8.

Second, alleged battery drain by unspecified and unquantified activity on Plaintiffs' devices is a legally inactionable, conjectural harm.[2] Mot. at 8, 10; *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *8–9 (N.D. Cal. Aug. 30, 2019) (dismissing CFAA claim based on device drain where plaintiffs did "not allege the dollar value of any alleged damages"). Plaintiffs' cited authority also rejects this theory. *Ji v. Naver Corp.*, 2023 WL 6466211, at *11 (N.D. Cal. Oct. 3, 2023) (dismissing CFAA claim for lack of loss where "[p]laintiffs fail to plead any facts regarding how

[2] Whether a class may aggregate damages to reach the $5,000 CFAA minimum is irrelevant in light of these failures. In any event, Plaintiffs concede that damages can only be aggregated if they "arose from the same act by a defendant." Opp. at 13. Plaintiffs' alleged damages, even if true, would not arise from a single act but rather from each individual act of alleged "access" on each Plaintiff's device. *See Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 899–900 (N.D. Ill. 2014) (each incidence of "access" "would be a different culpable act," so plaintiff "cannot aggregate his claim with those of absent class members").

to monetarily value battery drain"). Plaintiffs' argument that their devices must be examined "by professionals" to determine the app's effect fails to show an actual, rather than a conjectural loss. Opp. at 12. Because they fail to allege a "complet[ed] . . . investigation or any facts regarding [their] restorative efforts, the Court cannot plausibly infer" the requisite loss. *New Box Sols., LLC v. Davis*, 2018 WL 4562764, at *11 (C.D. Cal. Sept. 18, 2018).

### C. *Plaintiffs Identify No Threat to Public Health or Safety*

Plaintiffs do not identify a single case holding that collection of personal data by an app constitutes "a threat to public health or safety" required for CFAA standing. 18 U.S.C. § 1030(c)(4)(A)(i)(IV). There is no such threat absent a catastrophe that *physically* imperils members of the public. *See U.S. v. Mitra*, 405 F.3d 492, 494 (7th Cir. 2005) (defendant violated CFAA and caused "'a threat to public health or safety' by knocking out police, fire, and emergency communications"); *Colo. Republican Comm. v. Doe*, 2016 WL 3922156, at *2 (D. Colo. July 21, 2016) (discussing examples of qualifying threats). In addition, Plaintiffs do not dispute that it must be the defendant's *access* to the computer that causes the threat, not a potential subsequent *misuse* of data. *See* Mot. at 9 (citing *Colo. Republican Comm.*, 2016 WL 3922156, at *2). Their argument that Defendants' cited authority did not involve biometric data obtained from photos and videos is insufficient. Opp. at 12–13. Billions of photos and videos are posted to the Internet every year and accessible to anyone with an internet connection—enabling anyone to extract biometric data from those images. No plausible argument can be made that the alleged disclosure of additional images uploaded to CapCut poses a significant increase in risk to public *health* and *safety*.

## IV. THE CDAFA CLAIM MUST BE DISMISSED

As with the CFAA claim, the CDAFA claim fails for lack of an actionable computer-related "loss." Mot. at 16. Plaintiffs identify four allegations that they argue provide a qualifying "loss" in support of their CDAFA claim. *See* Opp. at 15–16. But none suffice. The first allegation, that

Plaintiffs' devices may require professional evaluation, fails for the same reason it does not save the CFAA claim (i.e., it represents a conjectural as opposed to an actual loss). *See supra* Section III.B. The second allegation, that their devices suffered some battery drain, is implausible. Plaintiffs do not address Defendants' point that the device battery would be used anyway with the expected functioning of the app (e.g., uploading and editing videos on the CapCut platform). *See* Mot. at 10. Because "[f]ailure to respond to an argument . . . results in waiver," they waive any argument to the contrary. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Nor do Plaintiffs allege any facts showing the existence of battery drain specifically attributable to unauthorized operations of the app. The third allegation, that there is an "active market" for biometric data, Opp. at 16, is irrelevant because it is not a "cost[] related to fixing a computer, lost revenue, or other consequential damage[] *incurred due to an interruption of computer services*." Mot. at 10 (citing *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (emphasis added)). Similarly, contrary to Plaintiffs' argument, consequential damages and loss of revenue do not count unless incurred due to interruption of computer services. *Id.* Plaintiffs' final allegation of "loss" (that they are "entitled to sums to 'verify'" whether damage occurred, Opp. at 16) fails because it is duplicative of the professional evaluation allegation that also fails, as discussed above.

## V. THE VPPA CLAIM MUST BE DISMISSED

### A. *CapCut Is Not a "Video Tape Service Provider"*

Plaintiffs' own complaint makes it clear that CapCut is not a video tape service provider, but rather a "video editing application" that "allows users to create, edit and customize videos." ACAC ¶ 1. The Opposition improperly attempts to stretch the definition of a "video tape service provider" under the VPPA beyond the plain meaning of the text. But the statute applies to only those "engaged in the business . . . of rental, sale, or delivery" of videos. 18 U.S.C. § 2710(a)(4). Courts reject attempts to stretch this definition to other video-related services that do not rent, sell,

or deliver videos. *See, e.g.*, *Garza v. Alamo Intermediate II Holdings, LLC*, 2024 WL 1171737, at *1 (N.D. Cal. Mar. 19, 2024) (dismissing VPPA claim "because a movie theater operator . . . is not a 'video tape service provider' . . . . [as it] does not rent or sell movies to moviegoers"). Certainly if a movie theater operator is not "engaged in the business . . . of rental, sale, or delivery" of videos, a video editing software provider like CapCut is not either.

CapCut's provision of "media assets" that users can use to create their own content, *see* Opp. at 17, does not change the fact that CapCut is only an editing tool. *See* ACAC ¶ 1. And Plaintiffs' argument that CapCut provides "edited video content" is nonsensical: Plaintiffs admit that it is the *users*, not CapCut, who create and provide that edited video content to themselves. *See id.* So too is Plaintiffs' reference to "video materials and services," as that language does not appear in the definition of a "video tape service provider" (it relates to the definition of "personally identifiable information"). *See* 18 U.S.C. §§ 2710(a)(3), (4).

### B. *Plaintiffs Fail to Identify Any Actionable Disclosure*

Plaintiffs pleaded themselves out of a VPPA claim by alleging that Defendants are a "single enterprise," as any data sharing within a single enterprise is not a "disclosure" under the VPPA. Mot. at 11–12. Despite their argument that they are allowed to plead theories in the alternative, Opp. at 18, they have not actually done so. Regardless, single enterprise or not, disclosures between corporate affiliates and vendors to provide the video service do not trigger VPPA liability. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 625 (7th Cir. 2014) (Redbox's outsourcing of customer service operation and disclosure of customer information to third party in support of that operation fell into ordinary course of business exception).

Plaintiffs cannot, as they attempt to do, salvage their VPPA claim by pointing to third-party disclosures that have nothing to do with disclosure of video-watching data (ACAC ¶ 7), do not relate to CapCut (*id.* ¶¶ 74–77), or merely recite the elements of a VPPA claim (*id.* ¶¶ 162, 172).

Nor can Plaintiffs use their opposition brief to rewrite the Amended Complaint's allegation that "***some or all***" user data is disclosed (*id.* ¶ 120), to now say "all U.S. user data" (Opp. at 17). "It is a basic principle that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989); *see also Burton v. HMS Host*, 2024 WL 1254363, at *1 n.1 (N.D. Ill. Mar. 25, 2024) (same). Nor could they amend their complaint to make such an allegation consistent with their Rule 11 obligations, as there is no basis to allege that "all U.S. user data" belonging to Plaintiffs has been disclosed.

### C. *Plaintiffs Identify No Disclosed "Personally Identifiable Information"*

Plaintiffs argue that any data that can be used to identify a user (e.g., name, physical or email address, device and account ID, location data) is "personally identifiable information" ("PII") under the statute. Opp. at 18. Not so: the VPPA defines PII more narrowly than other privacy statutes and limits PII to only information that both identifies a person *and connects that person with their personal video viewing history*. *See* Mot. at 13. Plaintiffs' own cases agree. *See In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1225 (C.D. Cal. 2017) ("highly specific viewing behavior data"); *Aldana v. GameStop, Inc.*, 2024 WL 708589, at *7 (S.D.N.Y. Feb. 21, 2024) (videos watched and consumer's identity); *Saunders v. Hearst Television*, 2024 WL 126186, at *3 (D. Mass. Jan. 11, 2024) ("video IDs and/or video titles" disclosed).

The allegations on which Plaintiffs base their PII argument do not show that Defendants disclosed both plaintiffs' actual identities and personal video-viewing history to anyone. They merely affirm that CapCut is a platform through which users can themselves create and edit video content. *See* Opp. at 18 (referencing stock videos and templates *users can edit* and videos *edited and shared by users*). Consequently, the VPPA claim fails for this additional reason.

## VI. THE ECPA AND CIPA CLAIMS MUST BE DISMISSED

### A. *Plaintiffs Do Not Allege An "Interception" Under ECPA or CIPA Section 631*

As explained in the Motion, a party to a communication cannot "intercept" their own communication. Mot. at 14–16. What makes a "party" a "party" is that their "presence is known to other participants." *Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019). If communication "necessarily requires [d]efendants' participation," they are a party. *Sloan v. Anker Innovations Ltd.*, 2024 WL 935426, at *4 (N.D. Ill. Jan. 9, 2024). Plaintiffs do not dispute that Defendants, as alleged operators of CapCut, were parties to Plaintiffs' communications with the CapCut platform. *See* Opp. at 20. Thus, those communications are not at issue.

Plaintiffs instead argue that "electronic platforms and websites [are] liable where they take actions that redirect communications to, or allow third parties to intercept, communications that occur on their platforms." Opp. at 20. But as the cases cited by Plaintiffs show, the circumstances required to give rise to such liability are not present here. Unlike *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014), which does not even address ECPA's party exception, this is not a case where Plaintiffs sent personal messages to other users on the CapCut platform. While there is a feature that allows limited user-to-user communications (ACAC ¶ 197), Plaintiffs do not allege to have personally used that feature to communicate with other users (*id.* ¶¶ 10–22). The only allegation they point to is a generic, conclusory allegation that refers to "messages transmitted by Plaintiffs and the Class using the CapCut platform" that fails to identify the intended recipient of those messages. Opp. at 21. This conclusory phrase is insufficient.

Nor is this case like those Plaintiffs cite in which a user's communications with a website were intercepted while in transit because of third-party tracking software used by the defendants. Unlike those cases, Plaintiffs here do not allege any such software on the CapCut website or in the app that causes communications with CapCut to be contemporaneously intercepted by an unknown

third party.[3] "Several circuits have held that the Wiretap Act covers only contemporaneous interceptions—understood as the act of acquiring an electronic communication in transit—rather than the acquisition of stored electronic communications, which is addressed by the Stored Communications Act." *Epstein v. Epstein*, 843 F.3d 1147, 1149 (7th Cir. 2016). Plaintiffs' *argument* that the Chinese government "can access and monitor U.S. user data in real time" (Opp. at 4) is not what their complaint says. The Amended Complaint alleges the Chinese government might be able to "access" data that is "*stored* in the United States," not intercept user communications in *transit*. ACAC ¶ 76 (emphasis added). Plaintiffs' attempt to rewrite their pleading via opposition must be rejected. *Thomason*, 888 F.2d at 1205; *Burton*, 2024 WL 1254363, at *1 n.1. Again, Plaintiffs allege no device used by Defendants by which the Chinese government is intercepting their communications in real time. This failure mandates dismissal. *See, e.g.*, *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) (dismissing wiretap claim that failed to allege facts showing data was intercepted in transit).

### B. *Plaintiffs Do Not Identify Any "Recording" of "Confidential" Communications*

The Motion explained that, as required for liability under Section 632, "Plaintiffs do not allege any facts showing a secret 'recording' of their communications . . . . Nor do they identify any confidential communications that they personally sent." Mot. at 17; Cal. Penal Code § 632(a) (limiting liability to eavesdropping on or recording "confidential" communications). Plaintiffs' Opposition likewise fails to identify any "confidential" communication. *See* Opp. at 22. Plaintiffs

[3] *See* Opp. at 20 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 608 (9th Cir. 2020) (Facebook allegedly "track[ed] users' browsing histories when they visit[ed] third-party websites," and its "simultaneous, unknown duplication" of the communications did not make it a party); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 509 (C.D. Cal. 2021) (defendant third party's software "embeds snippets of code that watch and record[] in real time"); *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *1 (S.D. Cal. Jan. 12, 2024) (defendant third party's software "immediately loads" on users' phones and "beg[ins] sending and receiving electronic communications")).

thus concede dismissal on this basis. *See Bonte*, 624 F.3d at 466 (failure to respond constitutes waiver). Nor do Plaintiffs identify any facts that plausibly show "recording" of their communications. *See* Mot. at 17. Their only response is to point to allegations about the Chinese government having the ability to access *TikTok* user data (not *CapCut* user data) "stored in the United States." *See* Opp. at 22 (citing ACAC ¶¶ 75–78, 270). But allegations about accessing *stored* data do not show that Defendants used a "recording device to *eavesdrop upon or record*" a confidential communication with Plaintiffs without their knowledge, and only the latter implicates Section 632. Cal. Penal Code § 632(a) (emphasis added).[4]

## VII. THE SCA CLAIM MUST BE DISMISSED

Plaintiffs' SCA claim fails for the same reason the ECPA claim fails: Plaintiffs do not allege facts showing they communicated with other users on the CapCut platform and that those communications were disclosed by Defendants. It also fails for other reasons. Section 2701 targets those who "intentionally access[] without authorization a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a). The statute exempts "conduct authorized . . . by the . . . entity providing a wire or electronic communications service." 18 U.S.C. § 2701(c)(1). And that is exactly what Plaintiffs allege Defendants do: "Defendants provide an electronic communication service within the meaning of the SCA." ACAC ¶ 199.

While Section 2702 prohibits a service provider from "divulg[ing]" stored communications without authorization from the user, Plaintiffs' Opposition fails to identify any such disclosure. They instead point to a few allegations in their Amended Complaint about another app that make no mention of *CapCut* user communications being divulged to a third party. And their source for

[4] Section 632 does not impose secondary liability, so any theory that Defendants allowed a third party to access data (they did not) necessarily fails. *Compare* Cal. Penal Code § 631 (one who "aids, agrees with, employs, or conspires with" anyone to violate the statute is liable) *with id.* § 632 (no such language).

this information is a "former ByteDance engineer" who was terminated in November 2018, *years before* the launch of CapCut in the United States. *See* ACAC ¶ 76 & n.64. That allegation does not plausibly give rise to a claim that years later Defendants divulged Plaintiffs' CapCut communications to any third party. Plaintiffs' only authority does not save their claim, as its holding is limited to whether access was "authorized" under Section 2701 and does not mention Section 2702. *See Leitner v. Morsovillo*, 2021 WL 2669547, at *2–3 (W.D. Mo. June 29, 2021).

## VIII. THE CONSTITUTIONAL AND COMMON-LAW PRIVACY CLAIMS FAIL

Plaintiffs incorrectly argue that dismissal of constitutional and common-law privacy claims are "routinely rejected as inappropriate at the pleading stage." *See* Opp. at 23. This is clear from the numerous motion to dismiss opinions Defendants cite in the Motion. *See* Mot. at 19–22. Ignoring these precedents almost entirely,[5] Plaintiffs point the Court to cases that arise in completely different contexts and attempt to rewrite their own allegations to match those inapplicable cases.

### A. *Plaintiffs Consented to the "Common Sense" Collection of Data*

The Motion explained that there is no reasonable expectation of privacy where the data collection is "common sense." *See* Mot. at 19. Plaintiffs argue that this "would mean that ***no*** plaintiff could ***ever*** bring a privacy claim because users allegedly 'should' know that all apps collect their data." Opp. at 24 (emphasis in original). Of course that is not the case, and Defendants do not suggest otherwise. But where an app's collection of data is common sense—such as a video editing app collecting the videos created with the app or the data necessary to create the videos—there is no reasonable expectation of privacy.

[5] Specifically, Plaintiffs fail to address any of the following: *Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020); *In re BPS Direct, LLC*, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023); *Saeedy v. Microsoft Corp.*, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034 (N.D. Cal. 2022).

### B. *Plaintiffs Do Not Identify a Basis For Any Reasonable Expectation of Privacy*

Plaintiffs apparently concede they did not have an expectation of privacy in (1) the videos ***they*** uploaded to or created using CapCut, or (2) user information they provided to CapCut (name, email address, age, etc.). Plaintiffs instead argue that "all videos and photos stored on Plaintiffs' devices were taken, including those not publicly available." Opp. at 26 n.24. But this argument ignores that the operating systems on Plaintiffs' devices would have required them to provide express consent for any app to access the images and videos on their devices. *See* Mot. at 7–8. Moreover, only one Plaintiff alleges CapCut accessed all her photos and videos on her device, and she does not allege she did not give her express permission for this. ACAC ¶ 11. Further, not all videos or photos give rise to a reasonable expectation of privacy, and Plaintiffs allege nothing about the content of any specific video to suggest they contained private sensitive content.

The Opposition also argues that Plaintiffs have a reasonable expectation of privacy in *other* data, but they fail to adequately allege any such data was collected from them: video viewing history, messaging and emails, internet activity, and biometric data.[6] The Amended Complaint's passing references to video viewing history are not supported by any facts and do not make sense: CapCut is not a video viewing platform but rather an editing app where users make their own videos. *See* ACAC ¶ 1; *see also supra* Section V.A. No named Plaintiff alleges that they sent any messages or emails using CapCut (ACAC ¶¶ 10–22), and thus their allegation that Defendants intercepted "messages transmitted by Plaintiffs and the Class" (*id.* ¶ 188), is implausible.

The "**internet activity**" cases Plaintiffs cite do not apply here. Those cases analyze the collection of data about plaintiffs' browsing and search history across the internet (i.e., on third-

[6] Plaintiffs also argue there is a reasonable expectation of privacy in "device information." Opp. at 23. The case on which Plaintiffs rely most heavily in their Opposition, *Naver*, rejected plaintiff's argument that the collection of "user and device identifiers" gave rise to a privacy harm. 2023 WL 6466211, at *4.

party sites). *See Facebook Tracking*, 956 F.3d at 603 ("Plaintiffs allege that Facebook obtained a comprehensive browsing history of an individual"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) ("web browsing histories" and "consumer interest data"). By contrast, Plaintiffs allege only the collection of data ***by CapCut on the CapCut platform***. *See, e.g.*, ACAC ¶ 6 (alleging "Defendants, through the CapCut app," collected biometric data). There is not a single allegation that Defendants collected data about what Plaintiffs did on any third-party website, so their "internet activity" argument is irrelevant. *See id.* ¶¶ 10–22.

With respect to **biometrics**, Plaintiffs do not allege the collection of biometric ***identifiers***, *see* Mot. at 26–34; *infra* Section XIII, and they cite no case holding that users have a reasonable expectation of privacy in ***non-identifying*** face, body, or voice data. *Clearview AI* discusses the collection of biometric data capable of identifying individuals, so it does not support Plaintiffs' claims. *See In re Clearview AI, Inc., Consumer Privacy Litig.*, 585 F. Supp. 3d 1111, 1118, 1126 (N.D. Ill. 2022) (Coleman, J.) (plaintiffs "specifically allege[d]" defendants scraped three billion photos "to harvest the individuals' unique biometric identifiers" for a database that can be used to "match" such data to an individual). Plaintiffs' other case, *Naver*, rests on flawed reasoning. In ruling on the first motion to dismiss in that case, the court relied on *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1273 (9th Cir. 2019) for the proposition that individuals have privacy interests in their biometric information derived from images posted voluntarily on a website. *See Ji v. Naver Corp.*, 2022 WL 4624898, at *8 (N.D. Cal. Sept. 30, 2022). But *Patel* itself analyzed Facebook's "Tag Suggestions" feature which used biometric information to "match" people in pictures with Facebook's database of user faces—in other words, to identify them. *Patel*, 932 F.3d at 1268.

Plaintiffs also do not allege a highly offensive intrusion. The Opposition relies on the enactment of BIPA, VPPA, ECPA and CIPA as evidence of such an intrusion. *See* Opp. at 25. In

making this argument, Plaintiffs effectively concede that their constitutional and common-law privacy claims cannot survive dismissal if their statutory privacy claims are dismissed, as they should be. *See supra* Sections V, VI; *infra* Section XIII.

## IX. THE UCL CLAIM MUST BE DISMISSED

Plaintiffs rely on *Facebook Tracking* to argue that their allegations about loss of personal information and diminished market value are sufficient to create UCL standing. *See* Opp. at 27–28. But there was not even a UCL claim in *Facebook Tracking*; that case only discusses Article III standing. *See* 956 F.3d at 599–600 (discussing trespass to chattels, fraud, larceny, and CDAFA). UCL standing is "more restrictive": it requires a loss of money or property, not merely an injury in fact. *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016). Plaintiffs' reliance on *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. Mar. 17, 2021) for these arguments is misplaced because *Calhoun* is an outlier and none of the cases it cites support the notion that lost data value suffices under the UCL.[7] *See In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) (lost value supported contract, fraud claims ***but not*** UCL standing); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) (Article III standing, not UCL); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) (specific examples of hackers selling plaintiffs' PII); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *31 (N.D. Cal. May 27, 2016) (plaintiffs paid premiums under contract requiring compliance with specific privacy laws).

[7] *Naver*, *Meta Pixel* and *Brown* do not mandate a different result. *Naver* holds, without citing a single case, that deprivation of the benefit of the bargain and diminished data value suffice. 2023 WL 6466211, at *9. Plaintiffs have not alleged that they were denied the benefit of the bargain. *Meta Pixel* explicitly rejects the notion that "diminished" value suffices without an allegation that plaintiffs "attempted or intended to participate in the market for their data." *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *24 (N.D. Cal. Mar. 25, 2024). In *Brown*, plaintiffs showed a market for the browsing data at issue and that the collection "inhibited [their] ability to participate in that market." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023). Plaintiffs have not alleged any such facts. *See* Mot. at 23.

Plaintiffs' "third" and "fourth" arguments for standing belatedly assert a benefit-of-the-bargain theory. *See* Opp. at 28. As their own case shows, non-paying users cannot proceed under such a theory. *See Meta Pixel*, 2024 WL 1251350, at *24 (benefit of the bargain applies "if the user originally paid for the business's service as part of the transaction"). Nor can the paying users, because they do not allege that they would not have paid if they knew about the alleged collection. *Compare* Opp. at 28 *with* ACAC ¶¶ 7, 66 (alleging only that some users paid fees for "additional features and effects"); *see also Thomason*, 888 F.2d at 1205; *Burton*, 2024 WL 1254363 at *1 n.1 (pleading cannot be rewritten via opposition). Plaintiffs do not address Defendants' argument that their battery/device drain theory is vague and implausible. *See* Mot. at 23. Instead, they simply cite their conclusory allegations and pronounce *Opperman* "inapposite." Opp. at 28–29.

Plaintiffs do not argue that they have met the Rule 9(b) standard, so they cannot state a claim under the UCL's fraudulent prong. *Compare* Mot. at 24 *with* Opp. at 29. The unfair and unlawful claims fail with the rest of Plaintiffs' claims.[8] *See* Mot. at 22–24.

## X. THE FAL CLAIM MUST BE DISMISSED

Because Plaintiffs do not have UCL standing, they do not have FAL standing. *See* Mot. at 24. Plaintiffs do not address, and thus concede, Defendants' arguments that they fail to meet Rule 9(b)'s heightened standard and do not identify any specific misstatements or fraudulent omissions alleged in their pleading. *Compare* Mot. at 24–25 *with* Opp. at 29–30.

## XI. THE PROPERTY CLAIMS MUST BE DISMISSED

Because Plaintiffs' Opposition does not identify any right to exclusive possession of their CapCut data, they cannot state a claim for larceny or conversion. *See* Mot. at 25–26. Plaintiffs cite

[8] Plaintiffs also reference alleged COPPA violations, but they do not come close to the allegations in *Jones v. Google*, 73 F.4th 636 (9th Cir. 2023). There, plaintiffs were all "minor children" and the parties "agree[d] that all of the claims allege conduct that would violate COPPA's requirement[s]." *Id.* at 640.

two cases about tracking activity on third-party websites. *See Griffith v. TikTok Inc.*, 2023 WL 7107262, at *1 (C.D. Cal. Oct. 6, 2023); *Calhoun*, 526 F. Supp. 3d at 613. Neither court found a right to exclude the operators of an online service from data arising from someone's use of that service. The types of data Plaintiffs refer to in opposition are all data they and the putative class *voluntarily* provided to CapCut by using the app to edit their videos. *See* ACAC ¶¶ 10, 13, 15, 17, 18, 19, 20, 52–57. Having willingly provided this data to CapCut, Plaintiffs cannot reasonably assert they had a right to exclude CapCut from it (or that Defendants "st[ole]" it, *see* Opp. at 31). *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 969 (9th Cir. 2024) (no exclusive possession where plaintiffs generated and sent information to users); *Snapkeys, Ltd. v. Google LLC*, 539 F. Supp. 3d 1040, 1055–56 (N.D. Cal. 2021) (no conversion claim because plaintiff "gave" property to defendant).

## XII. THE EQUITABLE CLAIMS MUST BE DISMISSED

Plaintiffs try to save their equitable claims (restitution and unjust enrichment) by asserting they "allege that legal remedies are inadequate." Opp. at 31 (citing ACAC ¶¶ 256, 278). Both of those allegations are raised in pleading *other* claims (CIPA and UCL). Plaintiffs' Opposition thus confirms that their unjust enrichment claim is duplicative of those claims and must be dismissed. *See Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (dismissing unjust enrichment and other equitable relief under UCL and FAL because they "rel[y] upon the same factual predicates" as legal causes of action).

## XIII. THE BIPA CLAIMS MUST BE DISMISSED

### A. *"Biometric Identifiers" Must Be Capable of Identification*

While conceding that "biometric information" is information "based on an individual's biometric identifier used to identify an individual," 740 ILCS 14/10, Plaintiffs dispute that a "biometric identifier" has an identification component. Opp. at 36–37. However, the great weight

of authority in this District has held that a "biometric identifier" means exactly that: "a set of measurements of a specified physical component used to identify a person." *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) (Norgle, J.) (cleaned up).[9] Plaintiffs rely principally on *Colombo v. YouTube, LLC*, 679 F. Supp. 3d 940 (N.D. Cal. 2023). But *Colombo*'s interpretation of BIPA contradicts the plain meaning of both "biometric" and "identifier." Mot. at 27 n.10. Accordingly, at least one court in this District has discussed and expressly rejected the holding in *Colombo*. *See Castelaz*, 2024 WL 136872, at *7 n.6.

The text, structure, and purpose of BIPA all confirm that "biometric identifier" refers to uniquely *identifying* data: "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. That is why they are called "biometric identifiers." A "voiceprint," for example, is a "distinctive pattern . . . that measures human vocal sounds *for the purpose of identifying an individual speaker*." *Carpenter*, 580 F. Supp. 3d at 515 (emphasis added) (quoting Black's Law Dictionary (11th ed. 2019)). The statutory meaning of "scan . . . of face geometry" is "known by the company it keeps." *Corbett v. Cnty. of Lake*, 2017 IL 121536, ¶ 31, 104 N.E.3d 389, 397. Each of the other "biometric identifiers" is a well-known type of biometric characteristic used for identification. *See* National Science and Technology Council, Biometric "Foundation Documents" (2009) at 100–120, a*vailable at* https://apps.dtic.mil/sti/pdfs/ADA505048.pdf (last visited May 28, 2024) ("NSTC Biometric Foundation Documents").

---

[9] *See also Taylor v. 48forty Sols., LLC*, 2024 WL 1530383, at *5 (N.D. Ill. Apr. 9, 2024) (Kocoras, J.); *Clarke v. Aveda Corp.*, --- F. Supp. 3d ----, 2023 WL 9119927, at *2 (N.D. Ill. 2023) (Rowland, J.); *Robinson v. Lake Ventures LLC*, 2023 WL 5720873, at *7 (N.D. Ill. Sept. 5, 2023) (Jenkins, J.); *Castelaz v. Estée Lauder Cos., Inc.*, 2024 WL 136872, at *7 (N.D. Ill. Jan. 10, 2024) (Jenkins, J.); *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *2 (N.D. Ill. Dec. 2, 2022) (Gettleman, J.), *modified on other grounds on reconsideration*, 2023 WL 3579082 (N.D. Ill. Feb. 3, 2023); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (Chang, J.).

Further confirming that a biometric identifier must be capable of uniquely identifying an individual, BIPA's legislative findings state that "biometrics" are "biologically unique to the individual" and thus put individuals "at heightened risk of identity theft" if "compromised." 740 ILCS 14/5. Indeed, the statute was enacted to protect people who had provided businesses with "biometric data *for use as identifiers*." *Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 IL App (1st) 210279, ¶¶ 63–64, 196 N.E.3d 571, 581–82 (emphasis added) (quoting 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, and noting that "a reviewing court pays particular attention to the remarks of a bill's sponsor and to the remarks immediately prior to passage").

Plaintiffs argue that "biometric identifier" does not refer to identifying data because that construction would render superfluous "a separate category of covered information ('biometric information') that does contain such a requirement." Opp. at 36. Not at all. BIPA separately regulates "biometric information" to prevent entities from evading the statute by converting biometric identifiers into other forms of data "based on an individual's biometric identifier" that are "used to identify an individual." 740 ILCS 14/10; *see Rivera*, 238 F. Supp. 3d at 1095. The legislature spelled out the identification requirement in the definition of "biometric information" because, unlike "biometric identifier," identification is not obvious from the term itself. Further, because biometric information is "based on an individual's biometric identifier," the only way that such information can "identify an individual" is if the underlying data—the biometric identifier—is also capable of identification. Defendants' construction of BIPA is not unduly "narrow," as Plaintiffs claim—it is the only interpretation that makes sense.

### B. *Plaintiffs Do Not Plausibly Allege the Collection of Biometric Identifiers*

BIPA's identification requirement is fatal to Plaintiffs' claims. While Plaintiffs repeat the conclusion that CapCut collects "scans of face geometry" and "voiceprints," those words are meaningless without "specific factual allegations" demonstrating that the data is or readily could

be used by Defendants to identify them. *Castelaz*, 2024 WL 136872, at *7. Plaintiffs' own discussion of their allegations confirms that they have failed to meet this requirement.

Plaintiffs first point to the *TikTok* Privacy Policy, which states that *TikTok* "may collect biometric identifiers and biometric information as identified under U.S. laws, such as faceprints and voiceprints, from your User Content." Opp. at 35 (quoting ACAC ¶ 91). Plaintiffs argue TikTok's disclosures are relevant to CapCut because TikTok also offers "video editing features." *Id.* But Plaintiffs admit that CapCut is a separate app launched years after TikTok, ACAC ¶¶ 46, 51, and they do not and cannot allege that all "video editing features" are the same.[10]

Next, Plaintiffs refer to their allegations describing the use of software by CapCut to locate faces in video footage and track their movement. Opp. at 35 (citing ACAC ¶¶ 55–57, 63). But these features merely perform face *detection*, not identification of an individual. *See* Mot. at 29–30. Plaintiffs' cases do not hold that BIPA regulates these non-identifying technologies.[11]

Plaintiffs then discuss their allegations about "CapCut's code" and Defendants' patent applications, none of which are specific to CapCut or even mention it. Opp. at 36 (citing ACAC

[10] For much the same reason, Plaintiffs' reliance on other cases from this District that allowed BIPA claims involving video editing tools and features to proceed—simply because those cases involved video technologies—is misplaced. Two of Plaintiffs' cases focus on BIPA's "photographs" exception, which Defendants have not raised. *See Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 873 (N.D. Ill. 2022); *Wilk v. Brainshark, Inc*., 631 F. Supp. 3d 522, 530 (N.D. Ill. 2022). In another, plaintiffs affirmatively alleged that defendant had used its technology to "identify" class members. *Deyerler v. HireVue, Inc.*, 2024 WL 774833, at *4 (N.D. Ill. Feb. 26, 2024). Other than vaguely asserting that the technology in the *HireVue* case "analyzed video," Opp. at 33, Plaintiffs do not explain how the technology was at all similar to CapCut.

[11] To the contrary, in *In re Facebook Biometric Information Privacy Litigation*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016), the district court denied a motion to dismiss based on a feature that allegedly "recognize[d] and identifie[d]" faces in photos and "tag[ged]" the photos with users' names using "facial recognition technology." *Id.* at 1158. However, the court later *denied* class certification to users whose photos had only been subjected to face *detection* technology, because "[u]nique physical characteristics are not involved in . . . detection[], which is about locating all faces rather than a specific face." *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 542 (N.D. Cal. 2018). Plaintiffs' reliance on *Karling v. Samsara Inc.*, 610 F. Supp. 3d 1094, 1097 (N.D. Ill. 2022) is also misplaced. Opp. at 35. That case also involved actual facial recognition, not mere detection: "[the technology] automatically performed facial recognition" by "comparing [biometric identifiers] to the stored data." *Karling*, 610 F. Supp. 3d at 1098.

¶¶ 315, 317, 324–26). Plaintiffs admit that the code "is solely in Defendants' possession," *id.*, so they have never seen the code and have no basis to allege what it shows. Plaintiffs also do not allege what information about the code is "publicly available," *id.*, or explain how that information, if any, supports their claims. With regard to the patent applications, Plaintiffs do not dispute that the patents do not refer to CapCut by name or otherwise. The Court should not credit Plaintiffs' pure speculation that the patents discuss technology actually implemented on CapCut in the United States, particularly when Plaintiffs allege that Defendants operate numerous other apps and services across the world. *See* ACAC ¶¶ 44, 46. Plaintiffs also do not dispute that the patents discuss non-identifying technologies that do not implicate BIPA. *See* Mot. at 30.

Finally, as to their "voiceprint" allegations, Plaintiffs admit that CapCut's software merely "converts speech to text." Opp at 34. Automated speech recognition—what every smart phone uses to dictate voice memos and text messages—is not a biometric technology. *See, e.g.*, NSTC Biometric Foundation Documents at 128 ("Speaker, or voice, recognition . . . is a different technology than 'speech recognition', which recognizes words as they are articulated, which is not a biometric."). No court has held otherwise. In *Delgado v. Meta Platforms, Inc.*, the court held that a voiceprint is "data unique to an individual that could be used to identify someone," but there, plaintiff alleged that defendant's technology "us[ed] the voice of a particular speaker" such that it "can be used to recognize that user by voice." 2024 WL 818344, at *6 (N.D. Cal. Feb. 27, 2024). Plaintiffs have made no such allegations here, nor could they.

Plaintiffs thus fail to clear the pleading hurdle for BIPA claims set forth in *Clarke*, *Castelaz*, and *Daichendt*. Mot. at 27–29. Plaintiffs cannot distinguish their case by alleging that CapCut collects *other* personally-identifying information from users such as device identifiers and email addresses. Opp. at 37 (citing ACAC ¶¶ 100, 317). Plaintiffs do not allege that these other data have

been "associated with" their faces or voices in a way that could allow Defendants to identify them. *Cf. Daichendt v. CVS Pharmacy, Inc.*, 2023 WL 3559669, at *2 (N.D. Ill. May 4, 2023) (allowing repleaded BIPA claims to proceed after plaintiffs added allegations that "their scan is associated with their personal contact information in defendant's photo system").

### C. *Plaintiffs' Section 15(c), (d), and (e) Claims Separately Fail*

***Section 15(c).*** "Otherwise profit from" in Section 15(c) cannot mean "any use of biometric data that brings a benefit" to the defendant because that would effectively ban biometric technology, contrary to the legislature's intent. *Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1306–09 (W.D. Wash. 2021). Plaintiffs ignore *Vance*'s sound reasoning and the holdings in several other cases cited in their own brief that dismissed Section 15(c) claims based on similar allegations. *See HireVue*, 2024 WL 774833, at *7; *Delgado*, 2024 WL 818344, at *8.[12]

***Section 15(d) and 15(e).*** These claims should be dismissed for the reasons stated in the Motion (Mot. at 33–34) and because Plaintiffs admit that these claims only apply to companies who obtain "biometric identifiers" (Opp. at 40–41). As explained above, the Amended Complaint fails to identify any biometric identifiers obtained by Defendants. *See supra* Section XIII.B.

## XIV. CONCLUSION

For the foregoing reasons, and those explained in Defendants' Motion to Dismiss, the Amended Complaint should be dismissed with prejudice.

[12] *Ji v. Naver Corp.*, 2023 WL 6466211, does not support the 15(c) claim. There, the court evaluated whether the plaintiffs had Article III standing, not whether they had sufficiently alleged the elements of a Section 15(c) violation. *Id.* at *8.

Dated: May 28, 2024

By: */s/ Anthony J Weibell*

Anthony J Weibell
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

J. Gregory Deis
Melissa A. Anyetei
Lucia Nale
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
gdeis@mayerbrown.com
manyetei@mayerbrown.com
lnale@mayerbrown.com
mprovance@mayerbrown.com

*Counsel for Defendants ByteDance Inc., TikTok Inc., ByteDance Pte. Ltd., and ByteDance Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on this date, which will send notification of such filing to the e-mail addresses registered.

Dated: May 28, 2024

*/s/ Anthony J Weibell*