**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVELIA RODRIGUEZ; ERIKKA WILSON; A.N., A MINOR; AIDEN GUNDLACH; ZACHARY BUCKUS; RAYMON MARINES; AND J.V. A MINOR on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE, INC.; BEIJING DOUYIN INFORMATION SERVICE CO. LTD. F/K/A BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; BYTEDANCE LTD.; BYTEDANCE PTE. LTD.; BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; AND TIKTOK, INC. F/K/A MUSICAL.LY, INC.,<br><br>Defendants. | Case No. 1:23-CV-04953<br><br>Judge Sharon Johnson Coleman |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR LEAVE TO SUBMIT SUPPLEMENTAL AUTHORITY**

Plaintiffs do not object to Defendants' request to submit supplemental authority. Nonetheless, Plaintiffs file this response to address Defendants' characterizations of the two cases they submit and to provide additional supplemental authority to complete the record.

*First*, Defendants' suggestion that *Zellmer* and *Martell* correctly interpret BIPA, much less represent a "majority" position (ECF No. 43, at 2), is incorrect. As discussed in Plaintiffs' Opposition to the motion to dismiss, while some courts have adopted a narrow interpretation of BIPA that would require that all biometric data covered by the statute be "capable of identifying" individuals, other courts have rejected this interpretation as inconsistent with BIPA's plain language, the legislative intent, and the weight of authority. (Pl. Opp., ECF No. 36, at 36-39.)

As noted in Plaintiffs' Opposition, BIPA identifies two categories of protected information—"biometric identifiers" and "biometric information." "Biometric information" is expressly defined as information "used to ***identify*** an individual." 740 ILCS 14/10 (emphasis added). In contrast, "biometric identifier" is defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* Both categories of information are independently protected by BIPA. As courts have observed, requiring that all biometric data covered by BIPA be capable of identifying an individual would render the separate category of "biometric identifiers" superfluous, contrary to settled principles of statutory construction. *See River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 645 (7th Cir. 2011) ("Interpretations that result in provisions being superfluous are highly disfavored.") (Pl. Opp., ECF No. 36, at 36-37). It would also unduly narrow BIPA's scope, contrary to the statutory intent to "provide[] robust protections for the biometric information of Illinois residents." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1242 (7th Cir. 2021) (emphasis added).

These conclusions are further reiterated in recent decisions that Defendants fail to submit to the Court. In *Brown v. AS Beauty Group* LLC, for example, the court recently rejected

Defendants' narrow interpretation of BIPA. 2024 WL 2319715 (N.D. Ill. May 22, 2024) (Ex. 1).[1] While the court in *Brown* acknowledged that courts "have gone both ways," it rejected defendants' contention that "Plaintiff's claim should be dismissed because she failed to allege that the biometric identifier Defendant collected (i.e., facial geometry) was capable of identifying particular individuals." *Id.* at *4. After examining the text and caselaw, the court concluded that it could "not find support in the statute or policy rationale for this 'narrower reading of BIPA's broad language.'" *Id.*, quoting *Konow v. Brink's Inc.*, 2024 WL 942553, at *4 (N.D. Ill. Mar. 5, 2024). As the court observed in examining the statutory text, "[t]here is no requirement to plead that the specific biometric identifiers in each case were especially capable of being used to identify an individual. … [T]he only relevant question is whether Plaintiff adequately pled that Defendant collected, captured, or otherwise obtained Plaintiff's face geometry through the Virtual Try-on feature." *Id.* (quoting 740 ILCS 14/10).

An examination of the reasoning in Defendants' supplemental cases further demonstrates that Defendants' narrow interpretation of BIPA is flawed. In *Zellmer*, for example, the court issued a ruling on summary judgment based primarily on a decision by the Southern District of Illinois, *Hazlitt v. Apple*, 500 F. Supp. 3d 738 (S.D. Ill. 2020), that was vacated by the Seventh Circuit, *In re Apple Inc.*, 2021 WL 2451296 (7th Cir. Jan. 22, 2021). *See Zellmer v. Meta Platforms, Inc.*, 2024 WL 30136947, at *6 (9th Cir. June 17, 2024). The *Hazlitt* decision, in turn, merely made a comment that the enumerated items in BIPA, such as scans of face geometry, "could be used to identify a person" in rejecting the defendant's contention that biometric identifiers must "*actually* identify a person." *Hazlitt*, 500 F. Supp. 3d at 749. Likewise, *Martell v. X Corp.,* relied on dictionary definitions of the term "identifier" to graft a

[1] The same court issued a second, substantially similar decision on this issue in *Davis v. EI.F. Cosmetics, Inc.* 2024 WL 2722663 (N.D. Ill. May 28, 2024), another case involving a virtual try-on tool.

requirement onto the statute that all covered biometric data be capable of identifying individuals. 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024). However, the court ignored that BIPA specifically defines "biometric identifier" and does not include such a requirement in the definition of that term. As the cases cited in Plaintiffs' Opposition note, where (as here) "an act defines its own terms, those terms must be construed according to the definitions given to them in the statute." *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 870-71 (N.D. Ill. 2022).

*Second,* even those courts adopting Defendants' narrow interpretation of BIPA—including the two supplemental cases—recognize that "scans of face geometry" and "voiceprints" such as those collected by CapCut, are "biometric identifiers". As discussed in Plaintiffs' Opposition, BIPA states that "biometric identifiers" "means", among other things, "scan[s] of . . . face geometry" and "voiceprints." 740 ILCS 14/10. Accordingly, even courts that have adopted the narrow interpretation of BIPA recognize that scans of face geometry and "voiceprints" are "biometric identifiers" because they are expressly defined as such by BIPA's plain language. (Pl. Opp., ECF No. 36, at 37-38.)

In *Zellmer*, for example, the Ninth Circuit specifically stated that scans of face geometry and voiceprints are capable of identifying individuals and thus under Plaintiffs' narrow test are "biometric identifiers" under BIPA. 2024 WL 3016947, at *5. As the court stated, this conclusion is dictated by the statutory text: "Each of the listed items—retina or iris scans, fingerprints, ***voiceprints***, or scans of ***hand or face geometry***—are ***unique to a person***. ***Each can thus be used to identify a person*** in the proper context… The unifying theme behind each term here is that ***each identifies a person***." *Id.* (emphasis added).

In coming to this determination, the court relied on *Rivera v. Google, Inc.*, which recognized that "[e]ach specific item on the list, not surprisingly, fits within the meaning of the term 'biometric identifier,' that is, a biology-based set of measurements ('biometric') that ***can be***

***used to identify*** a person ('identifier')." 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (emphasis added); *Zellmer*, 2024 WL 3016946, at *6 n.2. Thus, even courts that have adopted Defendants' unduly narrow interpretation of BIPA recognize that scans of face geometry and voiceprints like those captured by CapCut are "biometric identifiers" under BIPA's plain language.

The analysis in *Martell* is similar. *Martell* involved allegations that a Microsoft product called PhotoDNA violated BIPA by creating a "digital signature" for a photograph called a "hash." 2024 WL 3011353, at *1. The court dismissed the claim on the ground that, "Plaintiff did not allege facts indicating that the hash is a scan of face geometry." *Id.* at *3. The court held that "[t]he fatal flaw in Plaintiff's Complaint is that he failed to allege that any type of facial scan occurs during the hash creation process." *Id.* at *4. Nonetheless, the court allowed plaintiff leave to amend the complaint to cure the alleged deficiencies by including such allegations. *Id.* at *5. Here, in contrast, the complaint does allege that CapCut collects "scans of face geometry." (AC, ECF No. 22, at ¶¶ 57, 120, 303-04, 308, 310, 314-315, 320-321.) Thus, Defendants' own cases make clear that their motion to dismiss should be denied.[2]

*Third*, Defendants' supplemental cases further support denial of their motion to dismiss because Plaintiffs' complaint specifically alleges that the biometric data CapCut collects is "capable of identifying" users and thus satisfies even the narrow interpretation of BIPA Defendants urge the Court to adopt here. (*See* Pl. Opp., ECF No. 36, at 37-39.) Indeed, Defendants concede in their motion to dismiss that Plaintiffs specifically allege that "CapCut's technology 'can be used to identify' users," quoting from the relevant portions of the complaint. (Def. MTD, ECF No. 31, at 28, quoting AC ¶ 100.) In fact, the complaint goes beyond such allegations to specifically allege that the biometric data CapCut collects is actually ***"used*** to

[2] Defendants' motion ignores that the complaint further alleges CapCut collects "voiceprints"—which are also contained in BIPA's list of "biometric identifiers". (AC ¶¶ 303, 314, 315, 325, 52, 83, 91)

identify" users, and thus CapCut collects not only "biometric identifiers," but also "biometric information" as defined in BIPA, 740 ILCS 14/10. (AC ¶¶ 4, 91, 100, 103-113, 120-121, 303-304, 308, 314-316, 321-325, 328; Pl. Opp. ECF No. 36, at 32, 37-38.)

In support of these allegations, the complaint contains Defendants' own admissions that video editors like Tiktok "collect ***biometric identifiers and biometric information*** as defined under U.S. laws, such as ***faceprints and voiceprints***, from your User Content"—i.e., both categories of biometric data covered by BIPA. (AC ¶ 91 (emphasis added); Pl. Opp., ECF No. 36, at 35.) In addition, the complaint contains Defendants' admissions that CapCut utilizes "facial recognition" and "voice recognition" technology to take scans of users' face geometry and voiceprints (AC ¶¶ 55-57; Pl. Opp., ECF No. 36, at 35) as well as analysis of CapCut technical data and code (to the extent available), further demonstrating that the app collects biometric data capable of identifying users (AC ¶¶ 315, 317; Pl. Opp., ECF No. 36, at 35). These allegations are dispositive, given that at the motion to dismiss stage the allegations in the complaint must be taken as true. (Pl. Opp., ECF No. 36, at 5.) Defendants' arguments in their motion are therefore largely a red herring, because the complaint makes clear that Defendants violated BIPA regardless of the interpretation of the term "biometric identifier."

The complaint's allegations are consistent with multiple cases addressing scans of facial geometry collected from videos by video editors and other technology, which recognize that such scans entail the collection of biometric identifiers ***and*** biometric information under BIPA, regardless of one's interpretation of the statutory definition. (*See* Pl. Opp., ECF No. 36, at 32-34.)[3] Defendants address only one of these cases in their submission, claiming that *Colombo v.*

[3] *See, e.g., Deyerler v. HireVue, Inc*., 2024 WL 774833 (N.D. Ill. Feb. 26, 2024) (denying motion to dismiss BIPA claims because software analyzing video interviews collected "biometric identifiers"); *Wilk v. Brainshark, Inc.,* 631 F. Supp. 3d 522 (N.D. Ill. 2022) (denying motion to dismiss BIPA claims because software that scanned facial features in videos collected "biometric identifiers")*; Colombo v.*

*YouTube, LLC's* holding that YouTube's video editor collected biometric identifiers is "no longer good law," as a result of the Ninth Circuit's decision in *Zellmer* (ECF No. 43, at 3). However, *Zellmer* does not mention *Colombo* at all, and Defendants ignore that one of the very cases Defendants cited in their motion to dismiss indicated that the ***outcome*** in *Colombo* would be no different under Defendants' narrow interpretation of BIPA. As the court in *Castelaz v. Estee Lauder Cos., Inc.* found in distinguishing *Colombo,* the data collected by the video editor in *Colombo* could be used to identify users and therefore constituted "biometric identifiers" under BIPA because, among other things, "the plaintiff in *Colombo* alleged that he was a YouTube user who uploaded multiple videos to his YouTube account." 2024 WL 136872, at *7 n.6 (N.D. Ill. Jan. 10, 2024) (Pl. Opp., ECF No. 36, at 38-39). Thus, even where courts have adopted Defendants' narrow interpretation of BIPA, they have nonetheless concluded that such video editing technologies collect biometric identifiers because they capture a wide range of identifying information that together or in isolation is capable of identifying users, including scans of their face geometry. As in these cases, the CapCut complaint alleges that the app collects multiple categories of personally identifying information. (*E.g.,* AC ¶¶ 100-105, 317).

These decisions are broadly consistent with the understanding within the industry. Many companies offering video editors expressly acknowledge that they collect biometric identifiers and biometric information and at least attempt to make required disclosures and take other actions in compliance with statutes like BIPA. For example, much like the TikTok privacy policy, the privacy policy for Adobe's video and photo editor states that it collects:

---

*YouTube, LLC*, 2023 WL 4240226 (N.D. Cal. 2023) (denying motion to dismiss because video editor collected biometric identifiers); *JI v. Naver Corp.*, 2023 WL 6466211, at *8 (N.D. Cal. Oct. 3, 2023) (plaintiffs could amend complaint to "adequately allege[] that they are economically injured by Defendants unlawfully profiting from, among other data, their biometric information and identifiers").

> Biometric identifiers or information as defined under US laws (e.g., faceprints and voiceprints from your user Content, as defined in the Adobe General Terms of Use) and precise geolocation. …[4]

Similarly, the privacy policy for the Captions video editor states:

> To enable certain features, such as our augmented reality features and voice to text, we may generate biometric information from your face or voice.[5]

Accordingly, there is a general recognition that video and photo editors collect biometric identifiers and biometric information such as scans of face geometry and voiceprints.

* * *

In sum, Defendants' supplemental authority further demonstrates that their motion to dismiss should be denied even under Defendants' narrow interpretation of BIPA. Plaintiffs specifically plead that CapCut captures biometric data that is "capable of identifying" users. Nonetheless, the Court should reject Defendants' unduly narrow definition of BIPA because it is contrary to the statute's plain language and the manifest legislative intent behind BIPA to provide broad protection for users' biometric data.

[4] Adobe Privacy Policy (June 18, 2024), https://www.adobe.com/privacy/policy.html, Ex. 2. Defendants maintain that such publicly-available documents on the Internet are subject to judicial notice. (Def. MTD, ECF No. 31, at 3-4.)

[5] Captions Privacy Policy (July 18, 2023), https://www.captions.ai/legal/privacy#:~:text=Information%20We%20Automatically%20Collect&text=Biometric%20Information%3A%20To%20enable%20certain,from%20your%20face%20or%20voice, Ex. 3. Such facts showing video editors collect biometric identifiers and biometric information distinguish this case from *Zellmer* where the court granted summary judgment after concluding "there is no material dispute of fact" about whether Facebook's "face signature" technology collected "biometric identifiers." 2024 WL 3016947, at *6.

Dated: June 24, 2024

Respectfully submitted,

By: */s/ Jeannie Evans*

Jeannie Evans (Bar No. 6296339)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4962
Facsimile: (708) 628-4952
jeannie@hbsslaw.com

Steve W. Berman (Bar No. 3126833)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Douglas G. Smith
ALPHEUS LLC
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
Telephone: (312) 451-6708
dsmith@aureliuslawgroup.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on June 24, 2024. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

Dated: June 24, 2024

*/s/ Jeannie Evans*
Jeannie Evans