**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVELIA RODRIGUEZ; ERIKKA WILSON; A.N., A MINOR; AIDEN GUNDLACH; ZACHARY BUCKUS; RAYMON MARINES; J.V. A MINOR; DOMINICK POLIZZI; AND ROBERT KOPLOS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE INC.; BEIJING DOUYIN INFORMATION SERVICE CO. LTD. F/K/A BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; BYTEDANCE LTD.; BYTEDANCE PTE. LTD.; BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; AND TIKTOK INC. F/K/A MUSICAL.LY, INC.,<br><br>Defendants. | Case No. 1:23-CV-04953<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT BY DEFENDANTS BYTEDANCE INC., BYTEDANCE LTD., BYTEDANCE PTE. LTD., AND TIKTOK INC.**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

STATEMENT OF FACTS AND ALLEGATIONS ..... 1

A. Defendants and CapCut ..... 1

B. Procedural History and Second Amended Complaint ..... 2

ARGUMENT ..... 3

I. LEGAL STANDARD UNDER RULE 12(B)(6) ..... 3

II. THE CFAA CLAIM SHOULD BE DISMISSED AGAIN ..... 4

A. Plaintiffs' Amendments Do Not Allege CFAA "Loss" ..... 4

B. Plaintiffs' Amendments Do Not Allege a Threat to Public Health or Safety ..... 8

III. THE CDAFA CLAIM SHOULD BE DISMISSED AGAIN ..... 10

IV. THE ECPA AND CIPA CLAIMS SHOULD BE DISMISSED AGAIN ..... 11

A. Plaintiffs Again Fail to Plausibly Allege an "Interception" of Any "Contents" of "Communications," Dooming the ECPA and CIPA 631 Claims ..... 11

B. Plaintiffs Again Fail to Plausibly Allege Any "Eavesdropping Upon" or "Recording" of "Confidential Communications," Dooming the CIPA 632 Claim ..... 15

V. THE SCA CLAIM SHOULD BE DISMISSED AGAIN ..... 16

VI. THE UCL CLAIM SHOULD BE DISMISSED AGAIN ..... 19

A. Plaintiffs Did Not Amend Their Diminution in Data Value and Invasion of Privacy Theories to Cure the Defects Identified by the Court ..... 20

B. Plaintiffs' Battery/Device Drain and Data/Electricity Cost Theories Remain Speculative and Rely on Supposed "Testing" That Contradicts Their Theory ..... 20

C. Plaintiffs' Identity Theft Theory Fails as Conjectural and Hypothetical ..... 21

D. Plaintiffs' Subscription Fee Theory Fails Because Plaintiffs Do Not Plausibly Allege They Relied on Any Alleged Misrepresentations or Omissions ..... 21

VII. THE FAL CLAIM SHOULD BE DISMISSED AGAIN .................................. 23

VIII. THE RESTITUTION AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED AGAIN.......................................................................................... 26

IX. THE BIPA SECTION 15(e) CLAIM SHOULD BE DISMISSED AGAIN....... 26

A. Plaintiffs' Repackaging of Other BIPA Claims Fails to State a Claim .... 26

B. Plaintiffs Do Not Plausibly Allege That Defendants Violated Any Widely Accepted "Standards of Care" For the Protection of Biometric Data ...... 28

C. Plaintiffs' Remaining Allegations Based on a Hodgepodge of Other Standards and Privacy Laws Fail to State a Plausible Section 15(e) Claim......................................................................................... 29

CONCLUSION.......................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) .......... 25

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) .......... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 7, 8

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) .......... 21, 22

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) .......... 26

*Colo. Republican Comm. v. Doe*,
2016 WL 3922156 (D. Colo. July 21, 2016) .......... 9, 10

*Corn v. Target Corp.*,
2023 WL 3389027 (N.D. Ill. May 11, 2023) .......... 18, 28

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 5, 6, 7, 8

*Cullis v. Tesla Inc.*,
2024 WL 4581655 (E.D. Cal. Oct. 25, 2024) .......... 26

*Dana v. Hershey Co.*,
180 F. Supp. 3d 652 (N.D. Cal. 2016) .......... 24, 26

*Delgado v. Meta Platforms, Inc.*,
718 F. Supp. 3d 1146 (N.D. Cal. 2024) .......... 30

*Fannon v. Guidant Corp.*,
583 F.3d 995 (7th Cir. 2009) .......... 3

*Fox v. Dakkota Integrated Sys., LLC*,
980 F.3d 1146 (7th Cir. 2020) .......... 27

*Freeman v. Fairman*,
916 F. Supp. 786 (N.D. Ill. 1996) ....................23

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................13, 23

*In re Google, Inc. Privacy Policy Litig.*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ....................17, 19

*Griffith v. TikTok Inc.*,
2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ....................9, 10, 28

*Halperin v. Int'l Web Servs., LLC*,
70 F. Supp. 3d 893 (N.D. Ill. 2014) ....................6, 8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................22, 25, 26

*Haynish v. Bank of Am., N.A.*,
284 F. Supp. 3d 1037 (N.D. Cal. 2018) ....................21

*Hodsdon v. Mars, Inc.*,
162 F. Supp. 3d 1016 (N.D. Cal. 2016) ....................24

*HomeLight, Inc. v. Shkipin*,
721 F. Supp. 3d 1019 (N.D. Cal. 2024) ....................22

*Jensen v. Cablevision Sys. Corp.*,
2017 WL 4325829 (E.D.N.Y. Sept. 27, 2017) ....................6, 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................14

*In re LinkedIn User Priv. Litig.*,
932 F. Supp. 2d 1089 (N.D. Cal. 2013) ....................23

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ....................20

*McClaine v. DX Enters., Inc.*,
2024 WL 3860971 (S.D. Ill. Aug. 19, 2024) ....................27, 29, 30

*Morilha v. Alphabet Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) ....................17, 19

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ....................27

*Nance v. NBCUniversal Media, LLC*,
2018 WL 1762440 (N.D. Ill. Apr. 12, 2018) ....................3, 25

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ....................11

*Orgone Capital III, LLC v. Daubenspeck*,
912 F.3d 1039 (7th Cir. 2019) ....................3

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023)....................11

*Run The World Inc. v. Jiang*,
2024 WL 3642185 (N.D. Cal. Aug. 2, 2024) ....................5

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)....................22

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017) ....................22

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ....................23

*Taha v. Int'l Bhd. of Teamsters, Loc. 781*,
947 F.3d 464 (7th Cir. 2020) ....................3, 11

*Taylor v. Salvation Army Nat'l Corp.*,
110 F.4th 1017 (7th Cir. 2024) ....................3

*Thomasson v. GC Servs. Ltd. P'ship*,
321 F. App'x 557 (9th Cir. 2008) ....................16

*TikTok Inc. v. Garland*,
122 F.4th 930 (D.C. Cir. 2024)....................18

*TikTok Inc. v. Garland*,
145 S. Ct. 57 (2025)....................19

*United States v. Mitra*,
405 F.3d 492 (7th Cir. 2005) ....................9

*Valentine v. Wideopen W. Fin., LLC*,
2013 WL 5423846 (N.D. Ill. Sept. 27, 2013) ....................15

*Van Buren v. United States*,
593 U.S. 374 (2021)....................4, 5

*Vaquero Energy, Inc. v. Herda*,
2015 WL 5173535 (E.D. Cal. Sept. 3, 2015)....................9

*Worix v. MedAssets, Inc.*,
857 F. Supp. 2d 699 (N.D. Ill. 2012)....................17, 19

*Zablocki v. Merchants Credit Guide Co.*,
968 F.3d 620 (7th Cir. 2020)....................7

*Zak v. Bose Corp.*,
2019 WL 1437909 (N.D. Ill. Mar. 31, 2019)....................11

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024)....................27

**Statutes**

740 ILCS 14/15 *et seq*....................27, 29

18 U.S.C. § 1030 *et seq*....................4, 9

18 U.S.C. § 2510(8)....................14

18 U.S.C. § 2511(1)(a)....................11

18 U.S.C. § 2702(a)(1), (2)....................17

Cal. Civ. Code § 1798.140(i)....................30

Cal. Penal Code § 631(a)....................12, 14

Cal. Penal Code § 632(a)....................16

## INTRODUCTION

In the Court's March 3, 2025, order dismissing nine of Plaintiffs' claims, the Court granted Plaintiffs leave to amend eight of those claims on the condition that "they can cure the deficiencies with these claims while still complying with their Rule 11 obligations." ECF No. 56 ("Dismissal Order") at 48. Undeterred, Plaintiffs have filed a Second Amended Complaint ("SAC") in which they attempt to replead every single dismissed claim other than the one the Court dismissed with prejudice. But they have failed to satisfy the condition on which the Court granted them leave to amend. For the reasons set forth below, the repleaded claims should be dismissed with prejudice.

## STATEMENT OF FACTS AND ALLEGATIONS

### A. Defendants and CapCut

CapCut is a video-editing tool with various filters, effects, and music that users can apply to their photographs and videos before sharing those photographs and videos on social media platforms. *See* SAC ¶¶ 1, 55. CapCut is published by Defendant ByteDance Pte. Ltd., with certain services in the U.S. provided by Defendant ByteDance Inc. *See id.* ¶¶ 31–32. Plaintiffs have sued two other entities that have appeared in the case but do not operate CapCut: TikTok Inc., which is the provider of the TikTok platform in the United States, and ByteDance Ltd., a Cayman Islands company that Plaintiffs incorrectly allege is headquartered in Beijing.[1] *See id.* ¶¶ 28, 33.

[1] Only the four Defendants that have been served (ByteDance Pte. Ltd., ByteDance Inc., TikTok Inc. and ByteDance Ltd.) are referred to herein as "Defendants." One foreign entity—which Plaintiffs incorrectly allege are two separate entities, *see* SAC ¶¶ 27, 30—has neither been served nor appeared. Plaintiffs filed a motion for alternative service on that entity. *See* ECF No. 61. The response to that motion is not yet due.

### B. Procedural History and Second Amended Complaint

Plaintiffs first filed this lawsuit in July 2023 as an apparent copycat of a 2019 case involving the TikTok app. *See* ECF No. 1. On February 1, 2024, after Defendants explained the case had no merit, Plaintiffs filed an amended complaint adding even more claims, for a total of 14: violations of the federal Computer Fraud and Abuse Act ("CFAA"), Video Privacy Protection Act ("VPPA"), Electronic Communications Privacy Act ("ECPA") and Stored Communications Act ("SCA"); violations of California's Comprehensive Data Access and Fraud Act ("CDAFA"), Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), California Invasion of Privacy Act ("CIPA") and constitutional right to privacy; intrusion upon seclusion, conversion, statutory larceny and restitution/unjust enrichment under California law; and various violations of Illinois' Biometric Information Privacy Act ("BIPA"). *See* ECF No. 22 ¶¶ 155–329.

On March 3, 2025, the Court dismissed eight of those claims without prejudice: violation of the CFAA, ECPA, SCA, CDAFA, UCL, FAL and CIPA and restitution/unjust enrichment. *See* Dismissal Order at 48. The Court also dismissed without prejudice Plaintiffs' BIPA claim to the extent it alleged violations of Sections 15(c), (d) and (e) of that statute. Finally, the Court dismissed Plaintiffs' VPPA claim with prejudice.

Plaintiffs filed their Second Amended Class Action Complaint on April 2, 2025, and a corrected version of that complaint on April 4, 2025.[2] The Second Amended Complaint reasserts all eight claims that were dismissed without prejudice. The BIPA cause of action also reasserts a violation of BIPA Section 15(e), but not (c) or (d). In addition to adding new factual allegations

[2] This Motion refers to the Corrected Second Amended Class Action Complaint (ECF No. 58) as the "Second Amended Complaint" or "SAC."

that are addressed where relevant below, the Second Amended Complaint adds two new named plaintiffs. *See* SAC ¶¶ 23–26.

## ARGUMENT

### I. LEGAL STANDARD UNDER RULE 12(B)(6)

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). For this reason, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. On a Rule 12(b)(6) motion, courts should "reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). Nor should the Court accept as true allegations contradicted by documents incorporated by reference subject to judicial notice. *See Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *see also* Dismissal Order at 22 n.5 (taking judicial notice of article incorporated into complaint by reference).

Finally, where plaintiffs have had a "number of opportunities to craft a complaint that complie[s] with the [relevant] standards" and again fail to state a claim under Rule 12(b)(6), courts are "entitled to" dismiss those claims with prejudice. *See Fannon v. Guidant Corp.*, 583 F.3d 995, 1002 (7th Cir. 2009). Courts also deny leave to amend where amendment would be futile, such as where plaintiffs have already made concessions they would have to "flatly contradict" to state a claim. *See Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1033 (7th Cir. 2024) (dismissal with prejudice appropriate if amendment would be futile); *Nance v. NBCUniversal Media, LLC*,

2018 WL 1762440, at *5 (N.D. Ill. Apr. 12, 2018) (plaintiff cannot "change[] his story" in later pleading if contradictory to earlier one).

## II. THE CFAA CLAIM SHOULD BE DISMISSED AGAIN

Plaintiffs' first CFAA claim failed because they did not plausibly allege they suffered the specific types of harm required by the statute. Dismissal Order at 12–14. They still do not.

### A. Plaintiffs' Amendments Do Not Allege CFAA "Loss"

Plaintiffs have no standing to bring a CFAA claim because they do not allege "loss to 1 or more persons during any 1-year period." 18 U.S.C. § 1030(c)(4)(A)(i)(I); *id.* § 1030(g). CFAA "loss" is financial loss "relate[d] to costs caused by harm to computer data, programs, systems, or information services." *Van Buren v. United States*, 593 U.S. 374, 391 (2021) (citing § 1030(e)(11)). This provision "focus[es] on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." *Id.* at 392. A plaintiff must have incurred costs greater than $5,000 in a given year. *See* § 1030(a)(4).

Plaintiffs seek to cure this defect by asserting four putative "losses" that are neither plausible nor qualify as a "loss" under the CFAA: (1) "diminution in value of [] personal information," SAC ¶¶ 266, 271; (2) "increased [] risk of further identity theft and fraud," *id.* ¶¶ 266, 272; (3) "out-of-pocket costs in the form of subscription fees for software that was defective," *id.* ¶¶ 266, 270; and (4) "frequent[] and systematic[]" device drain resulting in "unnecessary electricity costs," *id.* ¶¶ 266–67.

***First***, this Court has already explained that alleged diminution in value of data "is not cognizable under the CFAA." Dismissal Order at 12. Plaintiffs cannot proceed on this theory.

***Second***, Plaintiffs' new "risk of identity theft and fraud" theory fails. Losses caused by identity theft are not "harm to computer data, programs, systems, or information services." *See*

*Van Buren*, 593 U.S. at 391; *see also Run The World Inc. v. Jiang*, 2024 WL 3642185, at *4 (N.D. Cal. Aug. 2, 2024) (allegations that plaintiff's identity was "compromised" could not "establish economic damages" under the CFAA). This theory also fails as speculative: no Plaintiff alleges that they were the victim of identity theft or even explains how the putative collection could increase that risk. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 486–87 (N.D. Cal. 2021) (rejecting near-identical allegations).

*Third*, Plaintiffs' new "subscription fees" for "defective software" theory fails for at least two reasons. As a threshold issue, they do not allege how CapCut was "defective." The two Plaintiffs who allege they paid subscription fees purportedly did so "to obtain premium features."[3] *See* SAC ¶ 52. Neither alleges those premium features were unavailable to them or otherwise defective. *See id.* ¶¶ 18–19. To the contrary, they plead the ways in which they used CapCut for its intended purpose. *See id.* Nor are subscription fees "harm to computer data, programs, systems, or information services," so they do not qualify as CFAA loss. *See Van Buren*, 593 U.S. at 391; *see also* Dismissal Order at 13 (CFAA has "narrow conception of loss").

*Finally*, Plaintiffs try to save their battery and device drain theory with new allegations, but their attempt fails for the same reasons the Court previously dismissed their claim.

To state a CFAA claim, Plaintiffs must plausibly allege that any purported battery and device drain was caused by *alleged unauthorized access to data*, as opposed to the expected functioning of CapCut. *See Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1263 (9th Cir. 2019) ("The statute's 'loss' definition [] clearly limits its focus to harms caused by computer intrusions, not general injuries unrelated to the hacking itself."); *Cottle*, 536 F. Supp. 3d at 485 ("In order to bring a civil action under the CFAA, a person must 'suffer[ ] damage or loss by reason of a

[3] Having not paid any subscription fees, the other seven Plaintiffs cannot proceed on this theory.

violation' of the statute." (quoting 18 U.S.C. § 1030(g))). They must also plausibly allege that *they* sustained loss under the CFAA, not some hypothetical third party.

Moreover, Plaintiffs must "allege their battery drain was at least $5,000 during any one-year period" and "explain how to value battery drain[.]" *See* Dismissal Order at 13. *See Cottle*, 536 F. Supp. 3d at 485. Plaintiffs cannot aggregate the putative class' damages to meet this minimum unless "the damage arose from a single act." *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 899 (N.D. Ill. 2014). Absent allegations that "all class members downloaded [the app] at the same time or via a single download," there is no such "single act." *See id.* (dismissing claim); *see also Jensen v. Cablevision Sys. Corp.*, 2017 WL 4325829, at *13–15 (E.D.N.Y. Sept. 27, 2017) ("increased electricity costs" could not be aggregated among class members because defendant "individually accessed" each user's device).

Here, Plaintiffs rely on implausible allegations about purported testing of the battery usage of CapCut and anonymous internet posts to buttress their conclusion that their batteries were drained due to Defendants' alleged violative conduct, but these allegations do not support that inferential leap. They then rely on their unsupported conclusion about battery drain as the foundation for their assertion that they suffered the requisite $5,000 in loss. This defective chain of reasoning does not state a viable theory of loss.

Plaintiffs' primary support for their battery drain allegations is a screenshot of what appears to be an app showing the battery usage of six apps, including CapCut. *See* SAC ¶¶ 200, 414. This screenshot cannot lead to a reasonable inference that supposed unauthorized access by CapCut caused problematic battery drain. Plaintiffs' first problem is that while they allege the screenshot shows the battery usage of apps in the background, the image shows the opposite: it demonstrates the alleged battery usage of apps in the "foreground," *i.e., while the apps are in active use*. *See*

*id.* ¶¶ 200, 467. This controls over Plaintiffs' assertion that CapCut was draining their device batteries in the background. *See Zablocki v. Merchants Credit Guide Co*., 968 F.3d 620, 623 (7th Cir. 2020) (when a plaintiff relies on a document "and does not deny its accuracy, the facts communicated by that document control over allegations to the contrary"). That is not the only issue. None of the five other apps involve video-editing functions, like CapCut does, so it is no surprise that CapCut used the most battery among these apps. Video-editing is resource-intensive and requires much of a device's processing power and storage, thereby consuming more energy. "High battery usage" is thus to be expected and fails to support a plausible inference that the energy consumption is caused by "hacking" activity. This "obvious alternative explanation" renders Plaintiffs' allegations implausible. *See Twombly*, 550 U.S. at 557, 567. Plaintiffs also fail to allege that this testing occurred on their *own* devices or offer facts suggesting that they personally suffered any device drain beyond the bare conclusion that they "have experienced faster battery drain after downloading the CapCut app." *See* SAC ¶¶ 213, 467; *see also Cottle*, 536 F. Supp. 3d at 485 ("'[L]oss' refers to monetary harms sustained *by the plaintiff*." (emphasis added)).

Plaintiffs also point to the posts of two unknown individuals on the social media platform Threads. SAC ¶¶ 173–74. One post simply asks: "Wtf why is capcut draining the Battery at night?!" *Id.* ¶ 174. Another asks a "[q]uick question for the MacBook & CapCut users - does your battery die within 5 blinks too? Or am I doing something wrong." *Id.* ¶ 173. Even if anonymous social media posts could give rise to plausible allegations for purposes of a legal complaint, these posts say nothing about CapCut's alleged data collection. The second post even suggests another cause: "Maybe it's the external hard drive?" *Id.* This is but one of many obvious alternative explanations for why a user may experience increased battery drain, including the device's make and model, age and condition, other apps that are in use, etc. *See Twombly*, 550 U.S. at 557, 567

("obvious alternative explanation" defeats plausibility). And, of course, these are not allegations about battery drain on Plaintiffs' devices, but instead on these two anonymous users' devices. *See Cottle*, 536 F. Supp. 3d at 485 (CFAA loss must be sustained by plaintiff).

Plaintiffs then try to shoehorn purported electricity costs into their battery drain theory to establish the necessary amount of loss. Premised entirely on their single screenshot of flawed "testing," Plaintiffs estimate damages of approximately $8 million per year for 100 million users in electricity costs. SAC ¶ 268. But the screenshot alone cannot establish those damages for the reasons explained above. Plaintiffs' electricity cost theory also requires aggregating classwide damages, which is impermissible because Plaintiffs do not allege that "the damage arose from a single act" of unauthorized access. *Halperin*, 70 F. Supp. 3d at 899 (dismissing claim); *see also Jensen*, 2017 WL 4325829, at *13–15 (no aggregation of classwide "increased electricity costs" where defendant "individually accessed" each user's device). Plaintiffs do not allege, as they would have to, that Defendants somehow improperly accessed each CapCut user's files in one fell swoop (*e.g.*, that the putative class all downloaded CapCut at the same time or via a single download, and that download was how Defendants "hacked" their devices). *See Halperin*, 70 F. Supp. 3d at 899; *Jensen*, 2017 WL 4325829, at *13–15. This is obviously not the case, as each Plaintiff downloaded CapCut at a different time. *See* SAC ¶¶ 10–26.

Having failed to allege a theory that would allow them to aggregate damages classwide, Plaintiffs concede that the purported electricity cost per user is only 8 cents annually—far below the $5,000 requirement. *See id.* ¶ 268. Thus, Plaintiffs still do not allege CFAA loss.

### B. Plaintiffs' Amendments Do Not Allege a Threat to Public Health or Safety

Plaintiffs' alternate theory of CFAA harm—the alleged exposure of data to the Chinese government—also fails because Plaintiffs still do not sufficiently allege "a threat to public health

or safety." 18 U.S.C. § 1030(c)(4)(A)(i)(IV). This theory requires Plaintiffs to allege that Defendants' access to the data imperils the public's physical safety. *See, e.g.*, *United States v. Mitra*, 405 F.3d 492, 494 (7th Cir. 2005) ("t[aking] control" of "police, fire, ambulance, and other emergency communications"); *Colo. Republican Comm. v. Doe*, 2016 WL 3922156, at *2 (D. Colo. July 21, 2016) ("disabl[ing] computers or delet[ing] data essential to providing medical treatment, public utilities, or emergency response services"); *Vaquero Energy, Inc. v. Herda*, 2015 WL 5173535, at *8 (E.D. Cal. Sept. 3, 2015) (accessing "extensive and critical oil and gas production facilities in close connection to residential and commercial areas").

Plaintiffs now attempt to meet this standard by alleging that the Chinese government has access to CapCut data and pointing to recent legislation regarding the operation of apps owned by Defendants and their affiliates (the "2024 Legislation"). *See, e.g.*, SAC ¶¶ 160–77, 275–85. Statements about unspecified national security concerns say nothing about whether Defendants' access to CapCut data risks the types of life-threatening harm that courts have found sufficient to state a CFAA claim. *See, e.g.*, *Griffith v. TikTok Inc.*, 2023 WL 9019035, at *5 (C.D. Cal. Dec. 13, 2023) (rejecting the idea that user data access by China-based affiliates or the Chinese government suffices under this provision).

Plaintiffs apparently try to circumvent *Griffith*'s instruction that collection of data from "ordinary Americans" does not give rise to this type of harm by adding two new Plaintiffs with armed services affiliations who allegedly have unspecified unclassified data on their devices. *See* SAC ¶¶ 24, 26. It is implausible that the collection of personal data from these individuals—both of whom chose to download and use CapCut on the devices that allegedly hold that unclassified information—would imperil the general public's health or safety. Plaintiffs do not even allege that CapCut had access to that supposedly sensitive information. The *Griffith* court rejected a similar

attempt: there, allegations that a named plaintiff had access to transportation management infrastructure failed because such allegations did not "suggest that Defendants [] obtained access to those resources." *Griffith*, 2023 WL 9019035, at *4.

Finally, Plaintiffs claim that unauthorized access to biometric data is a threat "because it can be used to cause significant injuries to the public such as identity theft and economic injuries." SAC ¶¶ 284–85. These, too, are a far cry from the types of physical peril required.[4]

Plaintiffs' theory also fails for a second, independent reason: it is premised not on potential harm caused by Defendants' *access* but rather the possibility that third parties would *misuse* the data. *See* SAC ¶¶ 160–77, 275–85. The statutory requirement "is not satisfied by an allegation that the unauthorized access indirectly caused such a risk to emerge from another source." *Colo. Republican Comm.*, 2016 WL 3922156, at *1.

## III. THE CDAFA CLAIM SHOULD BE DISMISSED AGAIN

Plaintiffs' claim under the CDAFA—the state-law analogue to the CFAA—should be dismissed for the same reason as the CFAA claim: Plaintiffs do not plausibly allege statutory loss. Similar to the CFAA, "loss" under the CDAFA "encompass[es] costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023). Plaintiffs rely on the same four theories of loss as for their CFAA claim. *See* SAC ¶¶ 342–49. For the reasons explained above, these allegations do not establish the requisite loss. *See Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (CDAFA and CFAA claims rise or fall together, including as to whether there is cognizable loss). While the CDAFA does not impose the CFAA's

[4] Defendants do not concede that Plaintiffs have adequately alleged the collection of any biometric data, let alone that they will be able to prove such collection. *See* Section IX.A at n.15, *infra*.

$5,000 minimum for loss, Plaintiffs' "battery and device" drain theory fails as implausible. *See supra* Section II.A. Their conclusory reference to "the use of computing resources and slower performance of user devices," SAC ¶ 348, does not change that fact. *See Taha*, 947 F.3d at 469.

## IV. THE ECPA AND CIPA CLAIMS SHOULD BE DISMISSED AGAIN

The Court dismissed Plaintiffs' ECPA and CIPA Section 631 claims because they failed to allege an interception of any contents of communications. *See* Dismissal Order at 19–20. The Court separately dismissed Plaintiffs' CIPA Section 632 claim because they did not plausibly allege any recording of confidential communications. *Id.* at 20–21. Plaintiffs' new allegations do not remedy these deficiencies.

### A. Plaintiffs Again Fail to Plausibly Allege an "Interception" of Any "Contents" of "Communications," Dooming the ECPA and CIPA 631 Claims

Plaintiffs' ECPA and CIPA Section 631 claims require plausible allegations that (1) an unknown third party (2) intercepted (3) the "contents" of communications (*i.e.*, the "substance, purport, or meaning" of the communication) (4) while those communications were "in transit." *See Zak v. Bose Corp.*, 2019 WL 1437909, at *3 (N.D. Ill. Mar. 31, 2019) (parties to the communication cannot be liable for wiretapping); 18 U.S.C. §§ 2511(1)(a) (prohibiting the "interception" of a "communication"), 2510(8) (defining "communication"); Cal. Penal Code § 631(a) ("the contents or meaning of any . . . communication"); Dismissal Order at 19 (under either statute, interception must occur "in transit").

Plaintiffs' new allegations fall into three categories: (1) CapCut user communications are somehow intercepted by Defendants while being sent within the app, *see* SAC ¶¶ 299–300; (2) certain functions within CapCut can "send and receive" unidentified "information" from areas of users' devices outside the CapCut app "in real time," *see id.* ¶ 296; and (3) the Chinese government

may be able to access CapCut user data "in real time," *see id.* ¶¶ 300–03, 468. Even if true (they are not), none of these constitute wiretapping.

**Defendants Were A Known Party to Any Communications In the CapCut App.** The Court has already ruled that Defendants are a party to any communication in the CapCut app, holding that Plaintiffs can only state a wiretapping claim based on disclosure of the contents of their communications in real time to a third party. *See* Dismissal Order at 18 ("[P]laintiffs posit that defendants intercepted their data—thus exempting them from the party exception to liability—by 'redirect[ing]' the contents of their communications 'to third parties'"); *see also id.* (citing *Zak*, 2019 WL 1437909, at *3 ("[T]he relevant inquiry is whether the defendant is a participant in the conversation, as opposed to a non-participant that uses other means to gain access to—i.e., intercept—the communication."). None of Plaintiffs' new allegations change this conclusion. Instead, they confirm that Defendants are a party to any communications within CapCut. *See* SAC ¶¶ 299 ("*Using the CapCut app*, users can send and receive" email invitations and "other communications" (emphasis added)), 300 ("*The CapCut app* thus obtains the contents of users' electronic communications as they are sent in real time in transit." (emphasis added)).

Plaintiffs attempt to paper over their thin (and previously rejected) allegations by now asserting that within CapCut, users can send and receive email invitations, exchange other "communications" to edit videos, and share videos. SAC ¶ 299. Even if the Court had not already found that Defendants were a party to communications in the CapCut app, these allegations are missing a critical aspect: no Plaintiff alleges that they—as opposed to unnamed members of the putative class—sent or received email invitations or exchanged any communications with other users in the app. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) (dismissing ECPA claim because plaintiffs did not "plausibly allege[] that [their] own

conversations were intercepted"). This is precisely the type of allegation that the Court previously rejected as "purely conclusory." Dismissal Order at 19.

**Plaintiffs Do Not Allege That Defendants Intercepted the Contents of Communications Outside the CapCut App.** Plaintiffs try to escape the conclusion that Defendants are a party to communications in the CapCut app by alleging that Defendants also accessed data on their devices outside the CapCut app. *See* SAC ¶¶ 265, 296. While not the model of clarity, Plaintiffs seem to rely on an allegation that certain functions within the app can "send and receive information [or data] in real time such as the Service component, Broadcast Receivers, and data collection triggers." *Id.* ¶ 296. Nowhere do they specify what "information" these functions supposedly send or receive. *See id.* ¶ 265 (alleging only that they "allow the app to store data and collect information, including data and information [from areas on users' devices outside of the app]").[5] Not all data constitutes the contents of communications. *See* Dismissal Order at 22. Absent specifics, Plaintiffs do not plausibly allege the interception of the "contents" of any communications. *See* 18 U.S.C. § 2510(8); Cal. Penal Code § 631(a).

In any event, Plaintiffs' theory fails because they do not plausibly allege Defendants' collection of any data "in transit." Notwithstanding their conclusion that CapCut can receive this data "in real time," *see id.* ¶ 296, nowhere do Plaintiffs allege that Defendants accessed this data while Plaintiffs were sending it to someone else. To the contrary, they reiterate that CapCut allegedly accessed the data while in storage. *See id.* ¶ 265; *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (data collected from storage is not intercepted in transit).

[5] In connection with an entirely different claim, Plaintiffs allege that the CapCut app "obtained unauthorized access" to a litany of different types of data, from location and wifi data to video, photo, and audio files and user device clipboards. *See* SAC ¶¶ 249–64. But they do not even attempt to allege that Defendants intercepted those types of data while in transmission, as would be required to state a wiretapping claim. *See* Dismissal Order at 19.

They even suggest (however implausibly) that this collection occurred while they were asleep. *See id.* ¶ 200 (purportedly showing unauthorized access by CapCut overnight).

**Plaintiffs Do Not Plausibly Allege That Defendants Redirected the Contents of Their Communications to Third Parties While In Transit.** Plaintiffs next offer a litany of new generalizations about access to unspecified CapCut data by third parties like the Chinese government. *See, e.g.*, SAC ¶¶ 300–03 (entities in China such as ByteDance Ltd. and the Chinese government "have direct access to user data"); *id.* ¶ 468 ("more than 130 members of the CCP embedded in ByteDance [] therefore *have access* to CapCut user data in real-time" (emphasis added)); *id.* ("the CapCut app is 'run directly' by ByteDance executives in China who *have access* to user data" (emphasis added)).

These allegations merely repackage the same theories that the Court already rejected.[6] Allegations about access to data by ByteDance fail because Plaintiffs allege that "CapCut is run directly by ByteDance," making ByteDance a party to these communications. *See* Dismissal Order at 22. And aside from tacking on a conclusion that this access occurs in "real time," Plaintiffs still rely on general allegations about *access* to data instead of making it "clear whether any communications were intercepted while in transit as opposed to merely shared with third parties after the fact." *See id.* at 19. Third, these allegations fail to distinguish between "user communications" and other "user data," so they fail the wiretapping statutes' "contents" requirement. *See id.* at 22.

---

[6] In any event, these issues have been heavily analyzed by the Committee on Foreign Investment in the United States, Congress, the U.S. Circuit Court for the D.C. Circuit, and the U.S. Supreme Court. As government officials have acknowledged, there is no evidence that ByteDance or TikTok have shared U.S. user data with the Chinese government. Plaintiffs' allegations regarding alleged access to U.S. CapCut user data are premised on speculation, not fact. *See* Section V, *infra*.

**Without An Interception, There Can Be No "Disclosure" or "Use" of Intercepted Communications.** Plaintiffs' claims for violations of ECPA Sections 2511(1)(c) and (d) and the third prong of CIPA Section 631, which penalize the disclosure and use of intercepted information, fail because Plaintiffs have not adequately alleged that any communications were intercepted. *See Valentine v. Wideopen W. Fin., LLC*, 2013 WL 5423846, at *6 (N.D. Ill. Sept. 27, 2013) (without "interception," there can be no "disclosure" or "use" of intercepted information).

### B. Plaintiffs Again Fail to Plausibly Allege Any "Eavesdropping Upon" or "Recording" of "Confidential Communications," Dooming the CIPA 632 Claim

The Court previously dismissed Plaintiffs' CIPA Section 632 claim for failure to allege that "[D]efendants used (1) an electronic amplifying device or (2) a recording device to eavesdrop on [P]laintiffs' conversations." Dismissal Order at 21.

Plaintiffs now try to define the supposed "devices" at issue, referring obliquely to their "personal computing devices," Defendants' "computer codes and programs," "Defendants' servers," and "the plan Defendants carried out to effectuate the interception of the communications[.]" SAC ¶ 466. But the CapCut app is the only purported "device" Plaintiffs even attempt to allege was used to eavesdrop upon or record any communication in violation of the statute. *See id.* ¶ 467. Any references to other "devices" are thus irrelevant to this claim.

Plaintiffs' allegations about purported eavesdropping or recording by the CapCut app do not suffice. First, as a party to any communications in the CapCut app, Defendants cannot have "eavesdropped upon" those communications. *See* Section IV.A, *supra*; *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008) (eavesdropping requires "a third party secretly listening to a conversation between two other parties."). Second, Plaintiffs do not allege that there was anything confidential about *their own* communications in the app. *See* Cal. Penal

Code § 632(a) (penalizing only the recording of or eavesdropping on "confidential communications"). Instead, they toss in the unsupported conclusion that putative class members' "sensitive" or "private" data was collected. *See, e.g.*, SAC ¶¶ 463, 464, 467. "Plaintiffs' conclusory allegations of 'eavesdropping' and 'recording' thus lack sufficient detail" and should be dismissed with prejudice. *See* Dismissal Order at 21.

## V. THE SCA CLAIM SHOULD BE DISMISSED AGAIN

Plaintiffs' first attempt at pleading an SCA claim was doomed by speculativeness and lack of specificity.[7] As the Court recognized, Plaintiffs relied on public reporting that third parties had access to unspecified TikTok data—not CapCut data—and did not even allege that the data to which those third parties had access included the *contents* of communications. *See* Dismissal Order at 21–22. These allegations could not support an SCA claim. *See id.* at 23; 18 U.S.C. § 2702(a)(1), (2) (prohibiting only the disclosure of the "contents" of communications).

Upon amendment, Plaintiffs' theory remains the same: that the Chinese government supposedly had access to CapCut user data. *See* SAC ¶¶ 317–20. Despite the volume of their new allegations, *see id*. ¶¶ 79–84, 87–89, 95, 103–07, 125–26, 160–77, 303, 314, 317–20, Plaintiffs do little to address the Court's concerns.

**No Plausible Allegations That Defendants Disclosed U.S. CapCut Data.** As in their last pleading, Plaintiffs rely on speculation that third parties *may* have had access to unspecified data. *See* SAC ¶¶ 79–81, 103, 164, 320. Absent concrete allegations that Defendants actually disclosed their data to an unrelated individual or entity, Plaintiffs cannot state an SCA claim. *See Morilha v.*

[7] Plaintiffs originally pleaded a violation of § 2701 of the SCA, which the Court dismissed because Plaintiffs admitted Defendants "provide an 'electronic communication service.'" Dismissal Order at 23. Plaintiffs do not replead that violation. *See* SAC at 2.

*Alphabet Inc.*, 2024 WL 5205542, at *3 (N.D. Cal. Dec. 23, 2024) (allegations that defendant "*might* have granted others access to . . . [plaintiff's] information" insufficient to state § 2702 claim); *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013) (allegation that "[defendant] engages . . . third-party entities" to access plaintiffs' communications was too "theoretical" to state § 2702 claim); *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 703 (N.D. Ill. 2012) (insufficient to allege "that the defendant knowingly failed to protect the data").

Attempting to bolster their theory that the Chinese government accessed CapCut user data, Plaintiffs now rely on allegations about the 2024 Legislation. *See id.* ¶¶ 160–77, 317–20.[8] Plaintiffs allege that the legislation was based on "findings" that "ByteDance" has a close relationship with the Chinese government (*id.* ¶¶ 162–63, 175) and was legally required to "support" that government (*id.* ¶ 164).[9] Thus, they conclude, their CapCut data must have been shared with the Chinese government.

Regardless of the supposed accuracy of those "findings," Plaintiffs' allegations about them are too unspecific and speculative to support their claim for three separate reasons. First, despite the Court's warning that allegations about TikTok or other apps cannot support their SCA claim, Plaintiffs continue to conflate CapCut with other apps like TikTok. *See* Dismissal Order at 21–22

[8] Plaintiffs also include a handful of other allegations about Chinese law, the relationship between ByteDance and the Chinese government and supposed access to ByteDance data elsewhere in the SAC. *See, e.g.*, SAC ¶¶ 79–83. They suffer the same deficiencies as Plaintiffs' allegations about the 2024 Legislation.

[9] In fact, the legislation does not actually include any factual findings or even a statement of purpose. *See TikTok Inc. v. Garland*, 122 F.4th 930, 963 (D.C. Cir. 2024) (Congress did not "make legislative findings to explain its rationale for passing the Act").

(rejecting allegations that "relate[] to the disclosure of data from TikTok, not CapCut").[10] For instance, Plaintiffs misquote the chair of a congressional committee that to assert that "CapCut in particular is 'spying [on users] by design,'" SAC ¶ 165. That is not what the chair said. Instead, she generalized that "[a]pps like TikTok, Lemon8 and CapCut . . . have to" spy because "it is required by law in China."[11]

Second, Plaintiffs continue to rely on allegations that disclosures were made *to ByteDance* (*see, e.g.*, *id.* ¶¶ 125–26, 303), but the Court has also rejected that theory. *See* Dismissal Order at 22 (Plaintiffs "acknowledge that CapCut is run directly by ByteDance").

Finally, Plaintiffs tellingly fail to allege that anyone's data was actually disclosed to the Chinese government, let alone their own. That is no surprise, because government officials have acknowledged that there is no evidence that the Chinese government has attempted to access TikTok users' data (let alone CapCut users' data) under the laws Plaintiffs cite. *See In Camera, Ex Parte* Classified Declaration of Casey Blackburn, Assistant Director of National Intelligence, Joint Appendix Vol. II at JA 625, 628, *TikTok Inc. v. Garland*, 145 S. Ct. 57 (2025), (No. 24-656) (government "ha[s] no information that the PRC has" collected "sensitive data of U.S. persons [] with respect to the platform operated by TikTok in the United States"); *id.* at 640 ("[T]he Intelligence Community's concern is grounded in the actions ByteDance and TikTok have already taken overseas, and in the PRC's malign activities in the United States that, *while not reliant on*

---

[10] For the same reason, Plaintiffs' new allegations specifically about putative access to TikTok data fail. *See, e.g.*, SAC ¶¶ 84, 87–89, 95, 103–07.

[11] *See* SAC ¶ 165 n.148 (citing Opening Statement of Chair Cathy McMorris Rodgers (Mar. 7, 2024), https://www.congress.gov/118/meeting/house/116945/documents/HHRG-118-IF00-MState-M001159-20240307.pdf). The Court may consider this statement on a motion to dismiss as incorporated by reference into the Second Amended Complaint because Plaintiffs cite and hyperlink it in their pleading and refer to and quote it repeatedly, making it "central to the complaint." *See Corn v. Target Corp.*, 2023 WL 3389027, at *6 & n.3 (N.D. Ill. May 11, 2023).

*ByteDance and TikTok to date*, demonstrate its *capability and intent* to engage in [] theft of sensitive data") (emphasis added). TikTok has always maintained it would reject such a request if it were ever made.[12] Plaintiffs' dependence on conjecture, rather than facts, dooms their theory. *See Morilha*, 2024 WL 5205542 at *3; *In re Google, Inc. Privacy Policy Litig.*, 2013 WL 6248499 at *12; *Worix*, 857 F. Supp. 2d at 703.

**No Plausible Allegations That Defendants Disclosed the Contents of Communications.** Plaintiffs' only attempt to address the Court's concern that they did not allege the disclosure of the contents of their communications (as opposed to other types of user data) is to add a single paragraph asserting that CapCut offers "spaces" where users can communicate. *See* SAC ¶ 314. But they do not allege that they even used these spaces, let alone that third parties accessed that specific data. Even read in their best light, these allegations are too speculative to support an SCA claim. *See Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 682, 684, 687 (N.D. Cal. 2021) (dismissing SCA claim where plaintiffs "alleged that [defendant] intercepted class members' private communications, but not their own").

## VI. THE UCL CLAIM SHOULD BE DISMISSED AGAIN

The Court previously dismissed Plaintiffs' UCL claim for failure to establish statutory standing because they did not "establish that [they] 'lost money or property as a result of' defendants' data privacy practices." Dismissal Order at 29 (citing Cal. Bus. & Prof. Code § 17204); *id.* at 31 n.7 (no need to reach substance of UCL claim because Plaintiffs had not met threshold standing requirement). Specifically, the Court rejected Plaintiffs' four theories of

[12] *See, e.g.*, Testimony Before the U.S. House Committee on Energy and Commerce, Shou Chew, Chief Executive Officer, TikTok Inc., Mar. 23, 2023, available at https://docs.house.gov/meetings/IF/IF00/20230323/115519/HHRG-118-IF00-Wstate-ChewS-20230323.pdf.

injury: that (1) the value of their data diminished, (2) their devices have "been impaired and slowed," (3) they incurred data and electricity costs, and (4) they were harmed by the invasion of their privacy. Dismissal Order at 29–31. Plaintiffs attempt to resuscitate all four theories and add two new ones: (5) increased risk of data theft, and (6) payment of subscription fees that they would not have made had they known about CapCut's privacy practices. All six fail.

### A. Plaintiffs Did Not Amend Their Diminution in Data Value and Invasion of Privacy Theories to Cure the Defects Identified by the Court

Plaintiffs continue to rely on their first and fourth theories in support of their UCL claim without any change to their allegations. *See* SAC ¶¶ 183–96, 415–16. As before, Plaintiffs cannot rely on these two theories to state a claim. *See* Dismissal Order at 29–31.

### B. Plaintiffs' Battery/Device Drain and Data/Electricity Cost Theories Remain Speculative and Rely on Supposed "Testing" That Contradicts Their Theory

Plaintiffs' second and third theories—that their devices have been "impaired and slowed" and they "incurred data and electricity costs"—previously failed for lack of specificity. *See* Dismissal Order at 31. Plaintiffs now purport to offer specificity, pointing to the anonymous social media posts and flawed "testing" screenshot described in Section II.A, *supra*. As explained above, these allegations do not plausibly support an inference that any putative losses were caused by the alleged violative conduct (unauthorized access to data) as opposed to CapCut's normal functioning. *See* Dismissal Order at 29 (Plaintiffs must identify losses "as a result of defendants' data privacy practices" (citations omitted)); *see also Haynish v. Bank of Am., N.A.*, 284 F. Supp. 3d 1037, 1052 (N.D. Cal. 2018) (dismissing UCL claim because plaintiffs had "not adequately alleged that they would not have suffered any harm absent" defendants' alleged misconduct). And absent specifics about what happened on their own devices or any plausible theory about battery drain, Plaintiffs have not sufficiently identified any economic losses they suffered, another

threshold failure barring their UCL claim. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960–61 (9th Cir. 2009) (plaintiffs lacked standing under the UCL because they "have not shown the requisite injury to themselves" as opposed to, "[a]t most . . . other unidentified iPod users").

### C. Plaintiffs' Identity Theft Theory Fails as Conjectural and Hypothetical

Based on no new factual allegations, Plaintiffs newly conclude that their data is at risk of identity theft or fraud due to the Chinese government's alleged access. *See* SAC ¶¶ 204–05. This allegation is unsupported by any facts showing that this access could lead to an increase in identity theft, so it fails *Iqbal*'s basic pleading requirements. *See Iqbal*, 556 U.S. at 678 (requiring plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Because no Plaintiff alleges they were actually the victim of identity theft or fraud, this theory is also too speculative to support UCL standing. *See Birdsong*, 590 F.3d at 961 (plaintiffs failed to state a UCL claim because their "complaint reveals the conjectural and hypothetical nature of the alleged injury."); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) ("Plaintiffs' allegations [about] heightened risk of identity theft . . . do not suffice as injury under the UCL, FAL, and/or the CLRA.").

### D. Plaintiffs' Subscription Fee Theory Fails Because Plaintiffs Do Not Plausibly Allege They Relied on Any Alleged Misrepresentations or Omissions

Two Plaintiffs now allege that they paid for CapCut subscriptions but would not have done so if they knew about the app's data privacy practices. *See* SAC ¶¶ 201–02. To establish standing under this theory, Plaintiffs would have to plausibly allege that they relied on Defendants' omissions in choosing to subscribe to CapCut. *See* Dismissal Order at 29 (citing Cal. Bus. & Prof. Code § 17204); *id.* at 33 n.8 (cautioning Plaintiffs that they must allege reliance); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1083 (N.D. Cal. 2022) ("actual reliance is required to have

standing to sue"); *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017) (to show reliance "based on . . . a material omission, Plaintiffs must demonstrate that the . . . omission was an immediate cause of the injury-causing conduct"), *aff'd*, 731 F. App'x 719 (9th Cir. 2018). As with their other theories, Plaintiffs would have to allege a sufficient economic loss. *See HomeLight, Inc. v. Shkipin*, 721 F. Supp. 3d 1019, 1024 (N.D. Cal. 2024).

**No Economic Loss for Plaintiffs Who Did Not Pay Subscription Fees.** Only two of the nine Plaintiffs allege they paid for a subscription. *See* SAC ¶¶ 10–26. The other seven suffered no "los[s of] money or property" and thus have no UCL standing. *See* Dismissal Order at 29 (citing Cal. Bus. & Prof. Code § 17204).

**No Economic Loss Under "Benefit of the Bargain" Theory.** Plaintiffs assert that they suffered "benefit of the bargain damages" in the form of "out-of-pocket costs" such as subscription fees because "Defendants took more data than they agreed would be exchanged." *See* SAC ¶¶ 194, 196, 201. The Court already explained the problem with this theory: "[b]ecause plaintiffs have not adequately alleged that their data lost value, any theory that they were deprived [of] the 'benefit of their bargain' when they paid to access CapCut's additional features also falls short." Dismissal Order at 30 n.6. In other words, Plaintiffs cannot allege economic loss when their loss (subscription fees) is premised on Defendants collecting data they never intended to sell. *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014) (dismissing UCL claim because "Plaintiff has not alleged any facts showing that Defendants' business practice . . . changed her economic position at all"); *In re Google Assistant*, 457 F. Supp. 3d at 840 ("[C]laiming that a defendant may have gained money through its sharing or use of the plaintiffs' information is different from saying the plaintiffs lost money." (cleaned up)).

**No Reliance On Purported Omissions.** Finally, Plaintiffs cannot plausibly plead they relied on any omissions or misrepresentations with respect to their subscription fee payments. Plaintiffs allege that they "would not have downloaded the CapCut app and incurred" subscription fees "if they had known about CapCut's improper data practices." SAC ¶ 202. This general allegation is defeated by Plaintiffs' more specific allegations that they paid for additional cloud storage and "additional features and effects"—not for any reason relating to data security or privacy. *See id.* ¶¶ 7, 70; *see also Freeman v. Fairman*, 916 F. Supp. 786, 792 (N.D. Ill. 1996) (specific allegations control over contradictory general ones); *In re LinkedIn User Priv. Litig.*, 932 F. Supp. 2d 1089, 1091–93 (N.D. Cal. 2013) (plaintiffs who paid for premium accounts that "grant[ed] them increased networking tools and capabilities" did not have UCL standing despite allegation that premium membership granted them additional data security because all LinkedIn members' data was equally protected).

## VII. THE FAL CLAIM SHOULD BE DISMISSED AGAIN

Like the UCL claim, the Court dismissed Plaintiffs' FAL claim, premised on purported data-related misrepresentations and omissions, for the failure to allege (1) economic loss, (2) actual reliance and (3) that the purported omissions were fraudulent. *See* Dismissal Order at 31–33. Plaintiffs' repleaded FAL claim no longer rests on any purported misrepresentations and instead relies solely on purported omissions of information that Plaintiffs assert Defendants had a duty to disclose. *See* SAC ¶¶ 420–55. But that change does not remedy any defect the Court identified, and certainly not to the satisfaction of Rule 9(b)'s heightened pleading requirement.

**No Economic Loss.** Plaintiffs' FAL claim is "subject to the same economic loss requirement as claims brought under the UCL." Dismissal Order at 32. Because Plaintiffs still have

no standing to bring a claim under the UCL, *see* Section VI, *supra*, Plaintiffs remain unable to show that they suffered an economic loss sufficient for standing under the FAL.

**No Fraudulent Omission.** Plaintiffs still do not plausibly allege a fraudulent omission, *i.e.*, "an omission of a fact [Defendants were] obliged to disclose." *See* Dismissal Order at 33 (citing *Rodriguez v. Mondelēz Glob. LLC*, 703 F. Supp. 3d 1191, 1209 (S.D. Cal. 2023)).

To start with, "[t]he plain language of the [FAL]—which prohibits making, disseminating, or causing the dissemination of false or misleading statements—does not encompass omissions." *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 668 (N.D. Cal. 2016), *aff'd*, 730 F. App'x 460 (9th Cir. 2018). Thus, "many courts have held a plaintiff who asserts that a business omitted a material fact . . . has not stated a claim under the FAL." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018).

Even pretending that the FAL permitted claims based on pure omissions, Plaintiffs have not adequately alleged any duty to disclose and thus no fraudulent omission. Fraudulent omissions would only be actionable if they (1) "relate[] to an unreasonable safety hazard" or (2) deal with an issue that is "material" and "central to the product's function." *Hammerling*, 615 F. Supp. 3d at 1085; *see also* Dismissal Order at 33 n.9 (citing *Hammerling*).[13] Neither is met here. Plaintiffs do not (and cannot) claim that any purported omission relates to a "safety hazard." *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 568 (N.D. Cal. 2019) (requiring something as dangerous as an "engine fire"); *see also Hammerling*, 615 F. Supp. 3d at 1086 ("safety hazard" prong inapplicable to data

---

[13] Under this approach, if and only if the court finds a plaintiff's allegations meets one of these standards, the claim can survive if the plaintiff also plausibly alleges one of the four *LiMandri* factors: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts. *See Hammerling*, 615 F. Supp. 3d at 1085.

collection claim); *see also* Section II.B, *supra* (Plaintiffs do not allege any threat of harm to physical safety). Nor do alleged omissions pertaining to data collection relate to an issue that could "render [CapCut] 'incapable of use' for all users," as required to show an issue is "material" or "central to [a] product's function." *Hammerling*, 615 F. Supp. 3d at 1086 (no duty to disclose Google's alleged data collection practices). All Plaintiffs allege they used CapCut as it was intended to be used, rendering this theory unavailable to them.[14] *See* SAC ¶¶ 10–26.

Plaintiffs attempt to avoid this conclusion by asserting that Defendants' purported violation of two other statutes under which they do not sue—the Children's Online Privacy Protection Act and California Consumer Privacy Act—amounts to breaching a "duty to disclose." *Id.* ¶¶ 383–91. Alleging a violation of a statutory duty does not obviate their obligation to satisfy *Hammerling*. *See, e.g.*, *Cullis v. Tesla Inc.*, 2024 WL 4581655, at *4 n.4 (E.D. Cal. Oct. 25, 2024) (regardless of potential statutory violation, plaintiff bringing FAL claim must meet *Hammerling* test to establish fraudulent omission). A contrary result would create "a broad obligation to disclose," which "courts have generally rejected." *Dana*, 180 F. Supp. 3d at 665.

**No Reliance.** Again assuming that the FAL permits claims based on omissions, Plaintiffs do not plausibly plead that they relied on any omissions, as required to state a claim under the FAL. *See* Section VI.D, *supra* (explaining that Plaintiffs fail to establish reliance); Dismissal Order at 32–33 (dismissing FAL claim for failure to plead reliance).

[14] Having made this concession, Plaintiffs cannot contradict it in a later pleading. *See Nance*, 2018 WL 1762440, at *5. Thus, any amendment would be futile.

## VIII. THE RESTITUTION AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED AGAIN

This Court previously dismissed Plaintiffs' restitution and unjust enrichment claims because they failed to "plead an actionable wrong." Dismissal Order at 38–39. Plaintiffs' amended claims merely repackage their defective UCL and FAL claims. *Compare* SAC ¶¶ 493–521, *with id.* ¶¶ 377–78, 423–52; *see also id.* ¶¶ 493, 498 (relying on UCL claim). Where, as here, an unjust enrichment claim is "predicated on the same allegations" as another claim, it "will stand or fall with the related claim." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

## IX. THE BIPA SECTION 15(e) CLAIM SHOULD BE DISMISSED AGAIN

The Court previously dismissed Plaintiffs' BIPA Section 15(c), (d), and (e) claims but held that, at the pleading stage, the Section 15(b) claim was sufficiently alleged. Dismissal Order at 39–47.[15] Plaintiffs now forgo their Section 15(c) and (d) claims. Their attempt to replead the dismissed Section 15(e) claim does not fix its fatal deficiencies.

### A. Plaintiffs' Repackaging of Other BIPA Claims Fails to State a Claim

Plaintiffs' new Section 15(e) allegations once again improperly "repeat[] the allegations already used to support their claims under other BIPA provisions." Dismissal Order at 46; *see also McClaine v. DX Enters., Inc.*, 2024 WL 3860971, at *4 (S.D. Ill. Aug. 19, 2024) (granting motion to dismiss when plaintiff's 15(e) claim merely "recite[d] the Defendant's obligations under

[15] The Court held that Plaintiffs had plausibly alleged a collection of biometric identifiers subject to BIPA. Dismissal Order at 42 (concluding that "[P]laintiffs' allegations regarding voiceprints and face scans are enough under the circumstances"). Defendants reserve their right to demonstrate, on a more developed factual record and when the Court is not bound to accept Plaintiffs' allegations, that the CapCut features at issue do not collect biometric identifiers within the meaning of BIPA. Defendants also note that after principal briefing on their last motion to dismiss was completed, the Ninth Circuit issued a published decision, *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1123 (9th Cir. 2024), which joins the courts in this District holding that "BIPA applies only to biometric identifiers and information that can identify a person" and provides guidance on the application of that standard against a developed factual record.

BIPA"). Other BIPA provisions address obligations distinct from Section 15(e)'s requirement "that private entities protect biometric information from disclosure." *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019). Plaintiffs attempt to bootstrap other alleged violations to their Section 15(e) claim in three ways, all of which the Court should reject.

*First*, Plaintiffs allege that Defendants did not have a biometric data retention schedule, *see* SAC ¶ 564, retained data longer than necessary, *see id.*, and did not provide information about biometric data collection, *see id.* ¶ 565. Those allegations mirror Section 15(a)'s requirements and thus cannot be relied upon to state a claim under Section 15(e). *See* 740 ILCS 14/15(a); *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1155 (7th Cir. 2020) (Section 15(a) violation encompasses "unlawful retention of a person's biometric data").

*Second*, Plaintiffs allege that Defendants violated industry standards because they did not "obtain explicit informed consent before collecting biometric data." SAC ¶ 553. Those allegations parrot Plaintiffs' Section 15(b) claims, *id.* ¶¶ 532–33, and are unrelated to Section 15(e)'s data security requirements. By the same token, Plaintiffs cannot use Section 15(e) as a vehicle to impose on Defendants more onerous notice-and-consent requirements than BIPA demands. For instance, Plaintiffs claim that industry standards require Defendants to "provide a mechanism for consent withdrawal," *id*. ¶ 554, but Section 15(b) contains no such requirement.

*Third*, the Court rejected Plaintiffs' claims that Defendants expose users' biometric data to "individuals and entities in China," SAC ¶¶ 558–62, as "too speculative" to support a Section 15(d) claim. Dismissal Order at 21–23, 46. Plaintiffs did not attempt to replead their Section 15(d) claim, nor can they do so through the back door by repackaging it as a Section 15(e) violation.

Any "new" allegations Plaintiffs offer on this score do not remedy the deficiencies in the claim. Plaintiffs allege that *TikTok Inc.* has implemented measures to prevent unauthorized

Chinese access to *TikTok* user data, *see* SAC ¶¶ 559–61, then leap to the conclusion that *CapCut* needed to implement similar measures. But as this Court recognized, TikTok Inc.'s alleged security practices do not speak to CapCut's. *See* Dismissal Order at 21–22 (recognizing difference between the TikTok and CapCut apps). And the only factual allegations Plaintiffs offer to support those logical leaps rest on misleading claims that "executives at TikTok specifically expressed concern that [data protection] measures were not taken with respect to CapCut user data." SAC ¶ 560. The article they cite merely reports that "some TikTok managers questioned why CapCut was run out of China when TikTok was not," and does not even mention data security issues. *Id.* ¶¶ 125–26 & nn.117–21; Declaration of Anthony J Weibell, May 16, 2025, Ex. 1.[16]

Plaintiffs also rely on the 2024 Legislation to claim that Defendants violated a standard of care by exposing user data to Chinese entities. SAC ¶ 562. But they do not point to any privacy violations that relate to CapCut's handling of purported *biometric* data in the Congressional record or elsewhere. Nor do Plaintiffs allege that Defendants failed to "store, transmit, and protect from disclosure" those *biometric identifiers* and *biometric information* in a manner that is the "same or more protective than" other data they collected. 740 ILCS 14/15(e)(2). Plaintiffs' Section 15(e) claim is thus deficient for the same reasons as their dismissed Section 15(d) claim.

### B. Plaintiffs Do Not Plausibly Allege That Defendants Violated Any Widely Accepted "Standards of Care" For the Protection of Biometric Data

Stripped of repackaged allegations of other BIPA violations, Plaintiffs' Section 15(e) claim amounts to unsupported conclusions and conjecture. Out of Plaintiffs' eight purported "standards of care," only two relate to data security requirements. *See* SAC ¶¶ 556–57, 563. Without any supporting allegations, Plaintiffs claim that encryption of biometric data and regular security audits

[16] The Court may consider this document because it is incorporated by reference into the Second Amended Complaint. *See Corn*, 2023 WL 3389027 at *6 & n.3.

reflect a reasonable industry standard of care. *Id.* Plaintiffs do not allege any facts to suggest that those purported standards of care are widely adopted as a "reasonable standard of care within [Defendants'] industry." *See McClaine*, 2024 WL 3860971, at *4.

Regardless, Plaintiffs have not plausibly alleged that Defendants violate any of those standards. Plaintiffs speculate that Defendants must not encrypt users' biometric data or conduct security audits because Defendants dispute that they collect biometric data at all. SAC ¶¶ 557, 563. But those allegations fail to support the inference that Defendants do not follow those or other reasonable measures to protect all user data, including purportedly biometric data. Plaintiffs' reference to CapCut's Privacy Policy, which reasonably states that CapCut (like any technology company) cannot "*guarantee* the security of [user] information transmitted" through its services, does not bridge that gap.[17] *See Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1161 (N.D. Cal. 2024) (allegations that defendant "admits it may not be aware of or discover all" cyber-attacks insufficient to state 15(e) claim). Indeed, the next sentence of CapCut's Privacy Policy contradicts Plaintiffs' claims, stating that CapCut "maintain[s] appropriate technical, administrative, and physical security measures that are designed to protect [user] information from unauthorized access, theft, disclosure, modification, or loss."

### C. Plaintiffs' Remaining Allegations Based on a Hodgepodge of Other Standards and Privacy Laws Fail to State a Plausible Section 15(e) Claim

Even accepting their conclusory allegations about Defendants' data security practices, Plaintiffs insufficiently allege that Defendants violated accepted industry standards. Although they state that the National Institute of Standards and Technology and International Organization for Standardizations have developed biometric data security standards, they do not allege facts about

[17] *See* SAC ¶ 157 & n.140 (citing CapCut Privacy Policy).

the adoption of those standards in Defendants' industry (which they do not even try to define). *See* SAC ¶¶ 552, 556, 558, 563, 565, 566. "[S]peculat[ion] as to what the reasonable standard of care is within the industry" does not state a claim. *McClaine*, 2024 WL 3860971, at *4.

Plaintiffs similarly fail to allege that Defendants' industry has widely adopted the CCPA and the EU's General Data Protection Regulation ("GDPR") standards for data security. *See* SAC ¶ 566. To the contrary, Plaintiffs' claims of widespread adoption are implausible given that the CCPA applies only to "California resident[s]," Cal. Civ. Code § 1798.140(i), and the GDPR similarly applies only to processor activities in the European Union, GDPR Art. 3. In any case, Plaintiffs' allegations that Defendants violated those standards are too vague to state a claim and unrelated to Section 15(e)'s data security provisions. Plaintiffs do not allege which GDPR provisions Defendants are purportedly violating. SAC ¶ 566. As for alleged CCPA violations, Plaintiffs' allegation that Defendants use biometric data for "other purposes" apart from video editor functionality is ambiguous and has no bearing on biometric data security. *Id.* ¶ 555. Similarly, as discussed *supra*, Plaintiffs' claims that Defendants violate CCPA data retention provisions, *id.* ¶ 564, are merely BIPA Section 15(a) claims by another name.

**CONCLUSION**

For the foregoing reasons, the SAC's first, second, third, fourth, seventh, eighth, ninth and twelfth causes of action should be dismissed, as should the thirteenth cause of action to the extent that it asserts a claim under the BIPA Section 15(e). Moreover, the Court previously granted Plaintiffs leave to amend only on the condition that "they can cure the deficiencies with these claims while still complying with their Rule 11 obligations." Dismissal Order at 48. Because Plaintiffs have failed to meet this condition and have now had two opportunities to amend their allegations, dismissal should be with prejudice.

Dated: May 16, 2025

Respectfully submitted,

*By: Anthony J Weibell*

Anthony J Weibell
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

Sophia M. Mancall-Bitel
MAYER BROWN LLP
333 S. Grand Ave. 47th Floor
Los Angeles, CA 90071
(213) 229-9500
smancall-bitel@mayerbrown.com

J. Gregory Deis
Matthew D. Provance
Anastasiya Lobacheva
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
gdeis@mayerbrown.com
mprovance@mayerbrown.com
alobacheva@mayerbrown.com

*Counsel for Defendants ByteDance Inc., TikTok Inc., ByteDance Pte. Ltd., and ByteDance Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on this date, which will send notification of such filing to the e-mail addresses registered.

Dated: May 16, 2025

*/s/ Anthony J Weibell*