**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVELIA RODRIGUEZ; ERIKKA WILSON; A.N., A MINOR; AIDEN GUNDLACH; ZACHARY BUCKUS; RAYMON MARINES; J.V., A MINOR; DOMINICK POLIZZI; AND ROBERT KOPLOS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>BYTEDANCE INC.; BEIJING DOUYIN INFORMATION SERVICE CO. LTD. F/K/A BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; BYTEDANCE LTD.; BYTEDANCE PTE. LTD.; BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; AND TIKTOK INC. F/K/A MUSICAL.LY INC.,<br>Defendants. | Case No. 1:23-cv-04953<br><br>Judge Georgia N. Alexakis |

**DEFENDANTS BYTEDANCE INC., BYTEDANCE LTD., BYTEDANCE PTE. LTD., AND TIKTOK INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ALTERNATIVE SERVICE OF PROCESS ON CHINA-BASED DEFENDANTS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 3

I. PLAINTIFFS' MOTION SHOULD BE DENIED AS UNTIMELY ........ 3

A. Plaintiffs Are Well Past the 90-Day Deadline to Either Complete Service in the U.S. or Commence Service in a Foreign Country ........ 3

B. Plaintiffs' Motion Fails to Demonstrate Any "Good Cause" Sufficient to Justify Extending the Normal 90-day Deadline by a Factor of Seven ........ 4

II. PLAINTIFFS' MOTION SHOULD BE DENIED TO AVOID SERIOUS DELAY ........ 5

III. PLAINTIFFS' MOTION SHOULD BE DENIED AS UNNECESSARY ........ 6

IV. PLAINTIFFS' MOTION SHOULD BE DENIED AS CONTRARY TO LAW ........ 7

A. The Hague Convention Prohibits Plaintiffs From Serving BDIS Via Email ........ 7

1. The Hague Convention Applies ........ 7

2. The Hague Convention Provides the Exclusive Means for Serving a Defendant in a Signatory Jurisdiction ........ 8

3. The Hague Convention's Exclusive Service Provisions Do Not Permit Email Service on Chinese Defendants ........ 9

B. Plaintiffs Fail to Qualify for Any Exception to Serve Via Alternative Means ........ 12

C. Service On Other Defendants or U.S. Counsel for Those Other Defendants Contravenes Due Process ........ 14

CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1025 W. Addison St. Apartments Owner, LLC v. Grupo Cinemex, S.A. de C.V.*,
2021 WL 2136073 (N.D. Ill. May 26, 2021) .....11, 13

*Bolden v. City of Topeka*,
441 F.3d 1129 (10th Cir. 2006) .....3

*Brainlife LLC v. Beekeeper's Nats. Inc.*,
2024 WL 3088538 (S.D. Ill. June 20, 2024) .....12

*Cadence Design Sys., Inc. v. Fenda USA Inc.*,
734 F. Supp. 3d 960 (N.D. Cal. 2024) .....8, 9, 10, 11

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2008 WL 4104341 (N.D. Cal. Sept. 3, 2008) .....15

*Chen v. P'ships & Unincorporated Ass'ns Identified on Schedule A*,
2025 WL 47972 (N.D. Ill. Jan. 8, 2025) .....14

*Corkcicle, LLC v. YFS Kitchen & Beauty*,
2022 WL 3581183 (W.D. Tex. Aug. 19, 2022) .....12

*D Squared Plant Traps LLC v. Guangdong Bixing Trading Co.*,
716 F. Supp. 3d 352 (W.D. Pa. 2024) .....13

*Dalrada Precision Corp. v. Cox*,
2024 WL 3094633 (S.D. Cal. June 21, 2024) .....4, 6

*Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*,
480 F. Supp. 3d 977 (N.D. Cal. 2020) ..... *passim*

*Flava Works, Inc. v. Does 1 - 26*,
2013 WL 1751468 (N.D. Ill. Apr. 19, 2013) .....12

*Flying Heliball, LLC v. Zero Zero Robotics, Inc.*,
2025 WL 464323 (C.D. Cal. Feb. 11, 2025) .....10

*Guatemala v. IC Power Asia Dev. Ltd.*,
619 F. Supp. 3d 421 (S.D.N.Y. 2022) .....14

*Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*,
2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) .....11, 13

*Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) .......... 4-5, 8, 9, 10

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) .......... 10, 11, 12

*NBA Props., Inc. v. P'ships & Unincorporated Assn's Identified in Schedule "A"*, 549 F. Supp. 3d 790 (N.D. Ill. 2021) .......... 8, 11, 13, 14

*Noco Co. v. CF Grp. SZKMS Co.*, 571 F. Supp. 3d 862 (N.D. Ohio 2021) .......... 15

*Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805 (7th Cir. 2005) .......... 4

*Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 2021 WL 2894166 (N.D. Ill. July 9, 2021) .......... 8, 11, 13

*Ouyeinc Ltd. v. Alucy*, 2021 WL 2633317 (N.D. Ill. June 25, 2021) .......... 11, 13-14

*In re Paraquat Prods. Liab. Litig.*, 2021 WL 4775284 (S.D. Ill. Oct. 13, 2021) .......... 11

*Parker v. Cincinnati, Inc.*, 2009 WL 3585770 (C.D. Ill. Oct. 26, 2009) .......... 4

*Parsons v. Shenzen Fest Tech. Co.*, 2021 WL 767620 (N.D. Ill. Feb. 26, 2021) .......... 12, 14

*Paulsen v. Abbott Lab'ys*, 368 F. Supp. 3d 1152 (N.D. Ill. 2019) .......... 14

*Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404 (N.D. Tex. 2020) .......... 10

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .......... 11, 12

*Safety Vision LLC v. LEI Tech. Canada*, 2024 WL 2946578 (S.D. Tex. June 11, 2024) .......... 6

*Shah v. Novelis*, 2024 WL 1739753 (5th Cir. Apr. 23, 2024) .......... 4

*Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382 (S.D.N.Y. 2022) .......... 9, 10

*Smith v. SMS Grp., Inc.*,
2022 WL 15460279 (S.D. Ill. Oct. 27, 2022) ....................................................................6

*Strabala v. Zhang*,
318 F.R.D. 81 (N.D. Ill. 2016)....................................................................8, 10, 11, 12

*Stream SICAV v. Wang*,
989 F. Supp. 2d 264 (S.D.N.Y. 2013)..........................................................................15

*TikTok Inc. v. Garland*,
145 S. Ct. 57 (2025)........................................................................................................5

*Trs. of Chicago Reg'l Council of Carpenters Pension Fund v. Conforti Const. Co.*, 2013 WL 3771415 (N.D. Ill. July 17, 2013) ..................................................15

*Ultra Int'l Music Publ'g, LLC v. Sony Music Ent.*,
2025 WL 670842 (S.D.N.Y. Mar. 3, 2025) ....................................................................1

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988).....................................................................................................7, 8

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017)........................................................................................................7

*Zisman v. Sieger*,
106 F.R.D. 194 (N.D. Ill. 1985)....................................................................................15

**Statutes**

Protecting Americans from Foreign Adversary Controlled Applications Act, Pub L. No. 118-50, 138 Stat. 895 (2024) .........................................................................5

**Other Authorities**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638............................................................................................................... *passim*

Fed. R. Civ. P. 4(f)(2) ......................................................................................................11

Fed. R. Civ. P. 4(f)(3) ....................................................................................................7, 11

Fed. R. Civ. P. 4(m) ...................................................................................................3, 4, 14

Minute Order, *Blink Indus. Ltd. v. The P'ships & Unincorporated Ass'ns Identified On Schedule A*,
No. 1:25-cv-00113 (Jan. 21, 2025), ECF No. 19 ...........................................................13

Minute Order, *Guangdong Aoyun Tech. Co. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:24-cv-11570 (Nov. 19, 2024), ECF No. 15 .....13

Minute Order, *Sesame Workshop v. The P'ships & Unincorporated Ass'ns Identified On Schedule A*, No. 1:25-cv-1914 (Mar. 18, 2025), ECF No. 23.....13

Restatement (Third) of Foreign Relations Law § 471 (1987) .....9

Defendants ByteDance Pte. Ltd. ("BDPL"), ByteDance Inc. ("BDI"), ByteDance Ltd. ("BDL"), and TikTok Inc. ("TTI") (collectively "Defendants") submit this opposition to Plaintiffs' Motion for Alternative Service of Process on China-Based Defendants, ECF No. 61 ("Motion"), which seeks to serve defendants Beijing Douyin Information Services Co. Ltd. ("BDIS") and Beijing ByteDance Technology Co. Ltd. through email service. Although the Complaint names these two entities separately, they are the same entity, which changed its name in 2022. *See* Declaration of Anthony J Weibell, May 19, 2025, ¶ 3, Ex. 1 ("Weibell Decl."). Neither Defendants nor their counsel represent BDIS in this action, nor do they submit this opposition on behalf of BDIS. Rather, Defendants submit this opposition on their own behalf to oppose the negative effects of Plaintiffs' Motion on them and in their capacity as amici curiae. *Ultra Int'l Music Publ'g, LLC v. Sony Music Ent.*, 2025 WL 670842, at *4 (S.D.N.Y. Mar. 3, 2025) (defendant's opposition to alternative service on co-defendant treated "as a submission in the nature of an amicus brief").

## <u>INTRODUCTION</u>

The Court should reject Plaintiffs' Motion because it is (1) untimely, (2) disruptive to the current schedule, (3) unnecessary, and (4) contrary to law.

*First*, Plaintiffs waited nearly two years (633 days to be exact) before filing the Motion. Had Plaintiffs gone through the normal process for service on BDIS back when they served the other Defendants in 2023, it would have been completed long ago. Yet they never even attempted until now. Such a delay exceeds by a factor of seven the 90-day deadline to complete service in the U.S. or commence service in a foreign country. Plaintiffs' Motion shows no "good cause" for such an extension. Failing to even attempt to serve BDIS for two years also belies any argument that the Court must in fairness order "urgent" alternative service by email. For these reasons alone, this case is readily distinguishable from any case Plaintiffs cite, and the Motion should be denied.

*Second*, allowing untimely service at this late date will only further disrupt and delay the current proceedings. If served, BDIS will have the right to challenge the Court's jurisdiction over it and the sufficiency of the claims that the Court has already considered. Because BDIS had no opportunity to be heard on the prior motion to dismiss, and there is no personal jurisdiction over a foreign entity that is not responsible for the CapCut app in the U.S., the case would need to be put on hold until BDIS's challenges to jurisdiction and to the pleadings have been resolved.

*Third*, BDIS is an unnecessary defendant. Plaintiffs identify no good reason to bring BDIS into this case—nor could they. BDIS is not the parent of any Defendant in this action. To the contrary, the parent of the current Defendants is BDL, which is already a party. Even if BDL is required to divest its U.S. subsidiaries as Plaintiffs fear, both BDL and the subsidiary that operates CapCut in the U.S. (BDPL) would still be defendants. Thus, there is no sudden justification for bringing BDIS into the case that did not exist two years ago when the case was filed.

*Fourth*, service by email on a corporation with a known address in China that can be served through the Hague Convention and that has made no attempt to evade service, is improper and contrary to law. Due Process also prohibits Defendants and Defendants' counsel from accepting or receiving service on behalf of BDIS where BDIS has not authorized such service.

Accordingly, this Court should deny Plaintiffs' Motion.

## **BACKGROUND**

Plaintiffs filed this case against Defendants and BDIS on July 28, 2023. ECF No. 1. Soon thereafter, three Defendants agreed to waive service: BDPL (the Singapore-based entity that operates and provides CapCut in the U.S., *see* Weibell Decl. ¶ 8, Ex. 4) and the two U.S.-based Defendants (BDI and TTI). ECF No. 11. Plaintiffs also served BDL, the ultimate parent corporation of BDPL, BDI, and TTI. *See* Mot. at 7. Although Plaintiffs asked at the time if BDIS

would waive service, counsel for Defendants did not represent BDIS and was not authorized to receive communications or accept service on its behalf. Weibell Decl. ¶ 5.

Defendants who waived service engaged in mediation with Plaintiffs in January 2024. Plaintiffs then amended their Complaint on February 1, 2024. ECF No. 22. Defendants moved to dismiss that Complaint on March 14, 2024. ECF No. 30. This Court ruled on the motion on March 3, 2025. ECF No. 56. Plaintiffs again amended their Complaint on April 4, 2025. ECF No. 58. The court held a conference on April 17, 2025, after which the parties commenced discovery. ECF No. 60. Defendants moved to dismiss the Second Amended Complaint on May 16, 2025. ECF No. 69. Long before any of these activities occurred, Plaintiffs could have served BDIS so that it could have participated in all of these activities, but they did not. Suddenly, on April 17, 2025, nearly two years after the start of this action, Plaintiffs announced their intent to file the present Motion.

## ARGUMENT

### I. PLAINTIFFS' MOTION SHOULD BE DENIED AS UNTIMELY

Plaintiffs' Motion should be denied as untimely because (a) Plaintiffs are well past the 90-deadline to complete service in the U.S. or to commence service in a foreign country, and (b) The Motion demonstrates no "good cause" to excuse their failure to timely serve BDIS.

#### A. Plaintiffs Are Well Past the 90-Day Deadline to Either Complete Service in the U.S. or Commence Service in a Foreign Country

Plaintiffs' Motion seeking to serve BDIS was filed more than 630 days after BDIS was first named as a defendant in this case—well past the 90-day deadline to do so.

Ordinarily, Plaintiffs are required to serve defendants "within 90 days after the complaint is filed" absent a showing of "good cause." Fed. R. Civ. P. 4(m). For Defendants named in the original Complaint, this deadline "is not restarted by the filing of an amended complaint." *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006). Although the 90-day deadline to *complete*

service under Rule 4(m) does not apply to "service in a foreign country," a plaintiff must at least *commence* service in a foreign country by the Rule 4(m) deadline, absent a compelling good faith reason for failing to do so. *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005).

"Because district courts need to be able to control their dockets, . . . the amount of time allowed for foreign service is not unlimited." *Id.* Thus a court may dismiss a complaint against a foreign defendant if a plaintiff "mak[es] no attempt to begin the process of foreign service within [the time period set by Rule 4(m)]." *Id.*; *see also Parker v. Cincinnati, Inc.*, 2009 WL 3585770, at *2 (C.D. Ill. Oct. 26, 2009) (dismissing complaint after year-long delay in effectuating service); *Dalrada Precision Corp. v. Cox*, 2024 WL 3094633, at *3 (S.D. Cal. June 21, 2024) (same). Here, the Motion should be denied because the deadline to serve BDIS in the U.S. or commence service on BDIS in a foreign country has passed seven times over.

### B. Plaintiffs' Motion Fails to Demonstrate Any "Good Cause" Sufficient to Justify Extending the Normal 90-day Deadline by a Factor of Seven

Plaintiffs' Motion seeks to extend the normal 90-day deadline of Rule 4(m) by a factor of seven (90 days to over 630 days). Yet they cannot demonstrate "good cause" for this extension, as required by Rule 4(m), so their Motion should be denied. *See Shah v. Novelis*, 2024 WL 1739753, at *6 (5th Cir. Apr. 23, 2024) (plaintiff must attempt service on foreign defendants in "[g]ood faith" and with "reasonable dispatch").

Plaintiffs lack of diligence in attempting to serve BDIS through the Hague Convention at the time the case was filed belies any claim of urgency. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ("Hague Convention"). The Convention governs the service of process abroad in civil lawsuits between citizens of signatory states, such as the U.S. and China. *See Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F.

Supp. 3d 816, 822 (N.D. Ill. 2019). BDIS is entitled to service via the Hague Convention as a Chinese corporation. Had Plaintiffs gone through the Hague Convention to serve BDIS back when they served the other Defendants, service would likely have been completed long ago.[1]

Nor do "recent developments" in this case justify alternative service at the eleventh hour. *See* Mot. at 1. Even if Plaintiffs were somehow justified in awaiting the outcome of mediation to serve BDIS, *see id.* at 15, that mediation concluded in January 2024, *almost seventeen months ago*. *See* ECF No. 20. Plaintiffs do not explain why the reassignment of this case or the motion to dismiss briefing, Mot. at 15, prevented them from taking a single step to effectuate service for almost a year and a half. The start of discovery does not make service an unexpected emergency.

Finally, the risk of BDL's purported divestiture or sale of CapCut does not present an urgency. Mot. at 14-15. Plaintiffs have been on notice of that potential divestiture for many months. The Protecting Americans from Foreign Adversary Controlled Applications Act was signed into law over a year ago on April 24, 2024, Pub. L. No. 118-50, 138 Stat. 895 (2024), and the Supreme Court upheld its constitutionality over four months ago, on January 17, 2025, *TikTok Inc. v. Garland*, 145 S. Ct. 57, 72 (2025). Even if BDL is required to divest its U.S. subsidiaries as Plaintiffs fear, both BDL and the subsidiary that has operated CapCut in the U.S. (BDPL) would still be defendants in this action. Thus, Plaintiffs' argument that they need to serve BDIS as soon as possible in case of divestiture makes no sense. *See* Mot. at 1-2.

## II. PLAINTIFFS' MOTION SHOULD BE DENIED TO AVOID SERIOUS DELAY

Allowing service on BDIS at this late stage would cause the very delay Plaintiffs claim they seek to avoid. Mot. at 15. If served, BDIS will have the right to challenge both the Court's jurisdiction over it and the sufficiency of the claims that the Court has already considered. Plaintiffs

[1] It usually takes 6 months for service in China through the Convention. *See* Weibell Decl. ¶ 11, Ex. 5.

are on their third version of the Complaint, the parties are briefing the second motion to dismiss, and the Court has already ruled on the first motion to dismiss. Because BDIS had no opportunity to be heard on that motion and because there is no personal jurisdiction over a foreign entity that is not responsible for the app in the U.S., BDIS will likely move to dismiss for lack of personal jurisdiction. This Court would either have to leave BDIS behind for discovery, class certification, and dispositive motion briefing, or put the whole case on hold until BDIS's motions have been resolved. That would run counter to "the Court's goal to secure the just, speedy, and inexpensive determination of every action and proceeding" invoked by Plaintiffs. *See* Mot. at 15 (quoting *Smith v. SMS Grp., Inc.*, 2022 WL 15460279, at *2 (S.D. Ill. Oct. 27, 2022)); *see also Dalrada*, 2024 WL 3094633, at *3 (S.D. Cal. June 21, 2024) ("presumption of prejudice to Defendant arises" where plaintiffs have delayed service and can only be rebutted with "a reason" for the delay).

There is no good cause for Plaintiffs to delay the current proceedings to bring in an unnecessary party (as explained below). The better result is to deny Plaintiffs' Motion and dismiss BDIS without prejudice. *See Safety Vision LLC v. LEI Tech. Canada*, 2024 WL 2946578, at *4 (S.D. Tex. June 11, 2024) (denying leave to serve foreign defendant where plaintiffs failed to demonstrate "reasonable diligence" and service would cause "serious delay").

## III. PLAINTIFFS' MOTION SHOULD BE DENIED AS UNNECESSARY

Plaintiffs' Motion should also be denied as unnecessary. Plaintiffs identify no good reason to include BDIS in this litigation—nor could they. *First*, nothing in Plaintiffs' factual allegations or exhibits demonstrates that BDIS controls *CapCut* in the U.S. To the contrary, BDPL and BDI provide CapCut in the U.S. Weibell Decl. ¶ 8, Ex. 4. *Second*, BDIS is not the parent of any other Defendant in this action. The ultimate parent of the current Defendants is BDL, which is already a party. ECF No. 39. Even if BDL is required to divest its U.S. subsidiaries as Plaintiffs fear, both BDL and the foreign subsidiary that has operated CapCut in the U.S. (BDPL) would still be

defendants. *Third*, the current Defendants can provide Plaintiffs with all the relevant information that they seek. BDIS is not holding any relevant documents or witnesses that are not available to the current Defendants. *See* Weibell Decl. ¶ 10. Plaintiffs have identified no discovery that cannot be provided by the existing Defendants. Thus, there is no justification for bringing BDIS into the case, let alone a justification that did not exist two years ago when the case was filed.

## IV. PLAINTIFFS' MOTION SHOULD BE DENIED AS CONTRARY TO LAW

Email service on a corporation with a known address that could have been served through the Hague Convention months ago is improper and contrary to law. While some courts have allowed email service on Chinese residents, those courts have done so in distinguishable cases that incorrectly analyzed the Convention's exclusive service provisions. Correctly applying the law and due process principles, Plaintiffs must serve BDIS through the Convention.

### A. The Hague Convention Prohibits Plaintiffs From Serving BDIS Via Email

Plaintiffs seek to serve BDIS through Federal Rule of Civil Procedure 4(f)(3), but that Rule does not give them license to flout international law. Rule 4(f)(3) allows for alternative service only "by . . . means not prohibited by international agreement." Absent limited exceptions to the Hague Convention (none of which apply here), Plaintiffs must use its enumerated and exclusive methods of service to serve BDIS. Email is not one of those methods.

#### 1. The Hague Convention Applies

Plaintiffs ask this Court to ignore an international treaty for their own convenience two years into this case. But the Hague Convention applies "in all cases, in civil or commercial matters," involving service abroad, Art. 1, and "pre-empts inconsistent methods of service." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). Because BDIS is a Chinese entity, the Convention's "systemic

comity interests" dictate that Plaintiffs must abide by the Convention's terms to serve it. *See Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 987 (N.D. Cal. 2020).

None of the Hague Convention's limited exceptions apply here. Although the Convention does not apply if a defendant's address is "not known," Hague Convention Art. 1, here, BDIS has a known published address. *See* Weibell Decl. ¶ 4. For that reason, Plaintiffs' citation to *Strabala v. Zhang*, where the defendant hid its physical address, has no bearing here. 318 F.R.D. 81, 115 n.36 (N.D. Ill. 2016). And "[b]efore courts will accept that a defendant's address is 'not known,' the plaintiff must make reasonably diligent efforts to ascertain and verify" it. *NBA Props., Inc. v. P'ships & Unincorporated Assn's Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021); *Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 2021 WL 2894166, at *4 (N.D. Ill. July 9, 2021); *Luxxotica*, 391 F. Supp. 3d at 823. Here, Plaintiffs have not identified *any* steps they took to ascertain BDIS's address, much less any reasonably diligent ones. Further, Plaintiffs cannot claim the need for "urgency" here. *See supra* at 4-5. Because no exception is relevant, the Convention's "mandatory" provisions apply. *Schlunk*, 486 U.S. at 705.

#### 2. The Hague Convention Provides the Exclusive Means for Serving a Defendant in a Signatory Jurisdiction

Under basic principles of international law, Plaintiffs must abide by the Hague Convention's exclusive service procedures. The Convention allows for only three service methods: "(1) through the receiving country's central authority, Arts. 2–7; (2) through various alternative methods like consular channels, service on judicial officers, or service through 'postal channels,' so long as the receiving country has not objected to such methods, Arts. 8–10; and (3) through methods to which the receiving country has affirmatively agreed or authorized, Arts. 11, 19." *Cadence Design Sys., Inc. v. Fenda USA Inc.*, 734 F. Supp. 3d 960, 964 (N.D. Cal. 2024).

The Convention's text and structure establish that those methods are exclusive. The Convention "shall apply in all cases" involving service abroad. Art. 1. If a plaintiff uses any method it deems convenient, it is not "apply[ing]" the Convention. *See Facebook,* 480 F. Supp. 3d at 983. Moreover, the Convention allows countries to agree to service methods not specified by its terms. Art. 11. That section would serve no purpose if a signatory could unilaterally "authorize alternative methods under [its] local laws at will." *Cadence Design*, 734 F. Supp. 3d at 964; *see also Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1394 (S.D.N.Y. 2022).

The exclusive nature of the Convention makes sense. The whole point of the Convention, as noted in its preamble, is to ensure that documents be brought "to the notice of the addressee in sufficient time" and to implement uniform notice standards. The Convention thus addresses a concern that, for example, American companies will be found in default when foreign countries use esoteric service methods. If U.S. courts were free to authorize service on foreign signatories in any manner, other countries could easily take the same position, authorizing their courts to serve U.S. entities in any way, such as through social media or messaging apps. That would thwart the whole purpose of the Convention. *See Cadence Design*, 734 F. Supp. 3d at 964.

### 3. The Hague Convention's Exclusive Service Provisions Do Not Permit Email Service on Chinese Defendants

Because China has objected to email service, the Hague Convention prohibits courts from authorizing email service on Chinese residents. "[F]or states that have objected to all of the alternative methods [of service listed in the Convention], service through the Central Authority is in effect the exclusive means." Restatement (Third) of Foreign Relations Law § 471 (1987). Like many other countries, China has objected to the alternative forms of service listed in Article 10 of the Convention, including through postal channels. *See Luxxotica*, 391 F. Supp. 3d at 827.

More importantly, in addition to China's broad objection to alternative forms of service, *China has expressly objected to email service*—a fact that Plaintiffs' cases do not even recognize. Specifically, the Chinese Ministry of Justice, which oversees requests to serve Chinese residents under the Hague Convention, has expressly stated that a foreign individual cannot "serve judicial documents" upon Chinese residents via "email" under the Convention; such service is "invalid" under Chinese law; and Chinese courts view email service as "procedurally defective" and will not recognize or enforce a foreign judgment initiated by email service. Weibell Decl. ¶ 13, Ex. 7; *see also Smart Study*, 620 F. Supp. 3d at 1395 (noting that China views "an objection to service by postal channels as includ[ing] an implicit objection to service by email"). Thus, China has made clear that email service on its residents is prohibited.

Courts around the country have agreed. *See e.g.*, *Luxottica*, 391 F. Supp. 3d at 827 ("Because email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent."); *Flying Heliball, LLC v. Zero Zero Robotics, Inc.*, 2025 WL 464323, at *3 (C.D. Cal. Feb. 11, 2025); *Cadence Design*, 734 F. Supp. 3d at 964; *Smart Study*, 620 F. Supp. 3d at 1392; *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 412 (N.D. Tex. 2020); *Facebook*, 480 F. Supp. 3d at 983.

Plaintiffs cite several cases they claim support their theory that courts can authorize any method of service they want, including email service, on a Chinese resident (Mot. at 12). Yet, besides being factually inapposite, *see infra* at 12 (*e.g.*, *Strabala*, 318 F.R.D. at 115 and *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008)), Plaintiffs' cited cases are incorrect for two reasons:

First, none of these cases consider the express statements of the Chinese Ministry of Justice objecting to email service that are described above. Consequently, a number of Plaintiffs' cases

"get[] things backward" because they are only aware of China's objection to "postal channels" and incorrectly reason this objection does not include email. *Compare NBA Props.*, 549 F. Supp. 3d at 798 (cited by Plaintiffs); *Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) (same),[2] *with Facebook*, 480 F. Supp. 3d at 984. As the *Facebook* court put it, "China affirmatively objected to service 'by postal channels' because service 'by postal channels' is expressly permitted by the Convention, absent objection. The same is not true of service by email. The Convention doesn't offer service by email as an option, so there was no reason for China to affirmatively object to it." *Id.*

Second, cases noting that alternative service is neither a "last resort" nor "extraordinary relief" rely on inapplicable precedent that did not even involve the Hague Convention: *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002). *See, e.g.*, *1025 W. Addison St. Apartments Owner, LLC v. Grupo Cinemex, S.A. de C.V.*, 2021 WL 2136073, at *8 (N.D. Ill. May 26, 2021); *NBA Props.*, 549 F. Supp. 3d at 798 (citing case that relied on *Rio*); *Oakley*, 2021 WL 2894166, at *4 (same); *Ouyeinc Ltd. v. Alucy*, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021); *Strabala*, 318 F.R.D. at 115; *MacLean-Fogg*, 2008 WL 5100414, at *2; *In re Paraquat Prods. Liab. Litig.*, 2021 WL 4775284, at *2 (S.D. Ill. Oct. 13, 2021). In *Rio*, the court permitted service under Rule 4(f)(3) on a defendant in Costa Rica, which is not a Convention signatory, without requiring the plaintiff to first follow Rule 4(f)(2)'s service procedures (*i.e.*, through diplomatic channels or letters rogatory). 284 F.3d at 1014-15. But *Rio* explicitly acknowledged that courts cannot "contraven[e]" the Hague Convention under Rule 4(f)(3). *Id.* at 1015 & n.4. Because the Convention sets forth the exclusive manner of service, email service would contravene it. *See supra* at 8-9; *see also Cadence Design*, 734 F. Supp. 3d at 965 (explaining

[2] The out-of-district cases Plaintiffs cite, Mot. at 12 n.29, all employ this faulty reasoning.

that *Rio* does not apply to Hague Convention cases); *Facebook*, 480 F. Supp. 3d at 985-87 (same). This Court should respect China's objection to email service (which was made under an international treaty) and require Plaintiffs to serve BDIS through the channels China permits under the Hague Convention.

### B. Plaintiffs Fail to Qualify for Any Exception to Serve Via Alternative Means

Even in cases where courts have considered alternative methods of service, unless Plaintiffs can show that they made a "reasonable attempt" at service through the Convention "sufficient to require the court's intervention," they are not entitled to service via alternative means. *Flava Works, Inc. v. Does 1 - 26*, 2013 WL 1751468, at *8 (N.D. Ill. Apr. 19, 2013) (denying alternative service request where defendant's address was available and plaintiff did not attempt service via Convention); *see also Parsons v. Shenzen Fest Tech. Co.*, 2021 WL 767620, at *3 (N.D. Ill. Feb. 26, 2021); *Brainlife LLC v. Beekeeper's Nats. Inc.*, 2024 WL 3088538, at *5 (S.D. Ill. June 20, 2024). That requirement discourages plaintiffs from "stick[ing] their head in the sand to avoid discovering [foreign defendants'] addresses," and to "easily circumvent foreign law." *Brainlife*, 2024 WL 3088538, at *5. Plaintiffs' failure to attempt service alone warrants denying their request. *Flava Works*, 2013 WL 1751468, at *8; *see also Corkcicle, LLC v. YFS Kitchen & Beauty*, 2022 WL 3581183, **3-5 (W.D. Tex. Aug. 19, 2022) (plaintiffs' claims of "expected delay" did not justify alternative service); *cf. Strabala*, 318 F.R.D. at 114-15 (allowing alternative service as reasonable only after plaintiff attempted service under the Hague Convention); *MacLean-Fogg Co.*, 2008 WL 5100414, at **1-2 (allowing email service after plaintiffs unsuccessfully attempted service and showed that proposed email addresses were reliable).[3]

---

[3] Because Plaintiffs would have completed service through the Convention had they started the process in 2023, the argument that this process would be "unreasonably time-consuming," Mot. at 8, is irrelevant.

But Plaintiffs made no attempt at all—much less any reasonable one—to serve BDIS via the Hague Convention. Their lack of diligence forecloses any claim that "a need for speed" or a "case of urgency" justifies alternative service. *See NBA Props*, 549 F. Supp. 3d at 797; Hague Convention, Art. 15; *see also D Squared Plant Traps LLC v. Guangdong Bixing Trading Co.*, 716 F. Supp. 3d 352, 357 (W.D. Pa. 2024) (declining to apply urgency exception where plaintiff did not even attempt service). Unlike in their cited cases, where urgency was "justified" to ensure that plaintiffs could recover funds from infringing e-commerce sellers, *NBA Props*., 549 F. Supp. 3d at 797; *Oakley*, 2021 WL 2894166, at *5, or from a financially struggling defendant, *1025 W. Addison*, 2021 WL 2136073, at *8, Plaintiffs here provide no valid excuse for their delay.

Further, neither the current Defendants nor BDIS are avoiding service such that Plaintiffs must resort to alternative methods. To be sure, this Court has granted requests for alternative service in trademark cases involving elusive e-commerce platform defendants.[4] Courts have recognized that the "epidemic" of counterfeit product cases presents "exigent circumstances" that justify alternative service, particularly where defendants shield their physical addresses to avoid service. *Hangzhou*, 2021 WL 1222783, at *3 (these cases involve an injunction already issued against the defendant, and "time is of the essence" to notify defendants when injunctions are in place); *see also NBA Props.*, 549 F. Supp. 3d at 797 (email more "reliable" method of service where defendants' physical addresses were not verified); *Oakley*, 2021 WL 2894166, at *5 (same); *Ouyeinc*, 2021 WL 2633317, at *3 (trademark infringement case noting that courts allow

[4] *See, e.g.*, Minute Order, *Sesame Workshop v. The P'ships & Unincorporated Ass'ns Identified On Schedule A*, No. 1:25-cv-1914 (Mar. 18, 2025), ECF No. 23; Minute Order, *Blink Indus. Ltd. v. The P'ships & Unincorporated Ass'ns Identified On Schedule A*, No. 1:25-cv-00113 (Jan. 21, 2025), ECF No. 19; Minute Order, *Guangdong Aoyun Tech. Co. v. The P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:24-cv-11570 (Nov. 19, 2024), ECF No. 15.

alternative service in "similar" situations); *Chen v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2025 WL 47972, at *6 (N.D. Ill. Jan. 8, 2025) (same).

No similar circumstances exist here. There is no injunction in place that warrants expedited notice to BDIS. No Defendant in this case is acting as an "international e-business scofflaw, playing hide-and-seek with the federal court." *NBA Props*. 549 F. Supp. 3d at 798 (citation omitted). To the contrary, BDPL, which operates the CapCut app, has appeared and waived service. All other Defendants have appeared in this action. BDIS's address is available. Plaintiffs cannot claim that any Defendants are avoiding service and thus that alternative means are necessary.

### C. Service On Other Defendants or U.S. Counsel for Those Other Defendants Contravenes Due Process

Nor can Plaintiffs circumvent the Hague Convention by effectuating service through BDIS's "corporate affiliates" or their U.S. counsel. *See* Mot. at 13. Even if such service were allowed, it is too late under Rule 4(m) to effectuate service in the U.S. because the 90-day deadline for service in the U.S. is long past. *See supra* § I.A. But also, these proposed methods of service would contravene due process principles, which require that service be "reasonably calculated, under all of the circumstances, to apprise Defendants . . . of the pendency of this action and afford them an opportunity to present objections." *Parsons*, 2021 WL 767620, at *4.

"It is hornbook law that service of process on a parent. . . [does not] constitute service on a subsidiary" absent exceptional circumstances. *Guatemala v. IC Power Asia Dev. Ltd.*, 619 F. Supp. 3d 421, 431 (S.D.N.Y. 2022). Service of a foreign corporation via a corporate affiliate is especially inappropriate when the relationship between the two entities is tangential. *See Paulsen v. Abbott Lab'ys*, 368 F. Supp. 3d 1152, 1163-64 (N.D. Ill. 2019) (service of successors-in-interest to a joint venture did not suffice to effectuate service on joint venture itself). While BDIS has a

relationship with the BDL corporate family, it is not the parent company of BDL, BDI, TTI, or BDPL. *See* Weibell Decl. ¶ 7; *id.* Ex. 3. Nor do Plaintiffs proffer any facts showing that any Defendants act as BDIS's agents for purposes of accepting service or running the CapCut app in the U.S. Nor could they. BDIS has no role in operating or providing the app in the U.S. *See* Weibell Decl. ¶ 9. Plaintiffs' cited cases, *see* Mot. at 13, all of which involve a clear agency relationship between a served U.S. affiliate and foreign defendant, are therefore inapposite. *Zisman v. Sieger*, 106 F.R.D. 194, 196 (N.D. Ill. 1985) (foreign parent did business in Illinois through served U.S. subsidiary); *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 277-80 (S.D.N.Y. 2013) (service of foreign subsidiary's executive was proper through U.S. parent entity where parent had "little independent content or purpose" from its subsidiaries); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2008 WL 4104341, at *1 (N.D. Cal. Sept. 3, 2008) (foreign defendants had U.S.-based counsel).

Finally, Plaintiffs cannot serve BDIS through "its U.S. counsel," Mot. at 13, because BDIS has no U.S. counsel in this case. Contrary to Plaintiffs' unsupported allegations, counsel for Defendants do not represent BDIS and have not been authorized to accept service on its behalf. *See* Weibell Decl. ¶ 6. Service through U.S. counsel for Defendants therefore would not comport with due process. *See Trs. of Chicago Reg'l Council of Carpenters Pension Fund v. Conforti Const. Co.*, 2013 WL 3771415, at *2 (N.D. Ill. July 17, 2013) ("to constitute proper service," a plaintiff must serve an attorney who is "specifically authorized by the defendant to perform that particular task"); *Noco Co. v. CF Grp. SZKMS Co.*, 571 F. Supp. 3d 862, 869 (N.D. Ohio 2021) (service through attorney who was not representing defendant improper).

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' Motion.

Dated: May 19, 2025

By: */s/ Anthony J Weibell*

Anthony J Weibell
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com

Sophia Mancall-Bitel
MAYER BROWN LLP
333 S. Grand Ave 47th Floor
Los Angeles, CA 90071
(213) 229-9500
smancall-bitel@mayerbrown.com

J. Gregory Deis
Matthew D. Provance
Anastasiya Lobacheva
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
gdeis@mayerbrown.com
mprovance@mayerbrown.com
alobacheva@mayerbrown.com

*Counsel for Defendants ByteDance Inc., TikTok Inc., ByteDance Pte. Ltd., and ByteDance Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on May 19, 2025, which will send notification of such filing to the e-mail addresses registered.

Dated: May 19, 2025

*/s/ Anthony J Weibell*