**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVELIA RODRIGUEZ; ERIKKA WILSON; A.N., A MINOR; AIDEN GUNDLACH; ZACHARY BUCKUS; RAYMON MARINES; AND J.V. A MINOR; DOMINICK POLIZZI; and ROBERT KOPLOS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE, INC.; BEIJING DOUYIN INFORMATION SERVICE CO. LTD. F/K/A BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; BYTEDANCE LTD.; BYTEDANCE PTE. LTD.; BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; AND TIKTOK, INC. F/K/A MUSICAL.LY, INC.,<br><br>Defendants. | Case No. 1:23-CV-04953<br><br>Judge Georgia N. Alexakis |

**PLAINTIFFS' REPLY IN SUPPPORT OF THEIR MOTION**
**<u>FOR ALTERNATIVE SERVICE OF PROCESS ON CHINA-BASED DEFEENDANTS</u>**

## TABLE OF CONTENTS

**Page**

I. Plaintiffs' Motion Is Timely. .................... 1

II. Alternative Service Will Not Cause Delay. .................... 4

III. Service on The China-Based Defendants Is "Necessary" .................... 5

IV. Rule 4(f)(3) Authorizes Multiple Forms of Alternative Service. .................... 6

CONCLUSION .................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Assad v. Liberty Chevrolet, Inc.*,
124 F.R.D. 31 (D.R.I. 1989) ....................3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2008 WL 4104341 (N.D. Cal. Sept. 3, 2008) ....................7

*CFTC v. Caniff*,
2020 WL 956302 (N.D. Ill. Feb. 27, 2020) ....................9

*Chen v. P'ships and Unincorp. Ass'ns Identified on Schedule A*,
2025 WL 47972 (N.D. Ill. Jan. 8, 2025) ....................9

*Empire Indus., Inc. v. Winslyn Indus., LLC*,
2020 WL 3100581 (N.D. Ill. June 11, 2020) ....................2, 3

*Flying Heliball, LLC v. Zero Zero Robotics, Inc.*,
2025 WL 464323 (C.D. Cal. Feb. 11, 2025) ....................8

*Hangzhou Chic Intelligent Tech. Co. v. P'ships and Unincorp. Ass'ns Identified on Schedule A*,
2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) ....................6, 8

*Klauber Bros., Inc. v. P'ships and Unincorp. Ass'ns Identified in Schedule "A"*,
2024 WL 182209 (N.D. Ill. Jan. 17, 2024) ....................9

*Monco v. Zoltek Corp.*,
2018 WL 3190817 (N.D. Ill. April 24, 2018) ....................8, 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ....................10

*Nagravision SA v. Gotech Int'l Tech. Ltd.*,
882 F.3d 494 (5th Cir. 2018) ....................8

*NBA Props., Inc. v. P'ships and Unincorp. Assn's Identified in Schedule A*,
549 F. Supp. 3d 790 (N.D. Ill. 2021) ....................7, 8, 9

*Neman Bros. & Assocs., Inc. v. P'hips and Unincorp. Ass'ns Identified in Schedule A*,
2024 WL 5056449 (N.D. Ill. Dec. 10, 2024) ....................6

*Nylock Corp. v. Fastener World Inc.*,
396 F.3d 805 (7th Cir. 2005) ....................2, 3

*Oakley, Inc. v. P'ships and Unincorp. Ass'ns Identified in Schedule "A"*,
2021 WL 2894166 (N.D. Ill. July 9, 2021)....................................................................6

*Ouyeinc Ltd. v. Alucy*,
2021 WL 2633317 (N.D. Ill. June 25, 2021)..........................................................6, 8

*In re Paraquat Prods. Liab. Litig.*,
2021 WL 4775284 (S.D. Ill. Oct. 13, 2021)......................................................7, 9, 10

*Peanuts Worldwide LLC v. P'ships and Unincorp. Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316 (N.D. Ill. 2024)....................................................................8

*Stream SICAV v. Wang*,
989 F. Supp. 2d 264 (S.D.N.Y. 2013)..............................................................3, 8, 10

*Viahart, L.L.C. v. GangPeng*,
2022 WL 445161 (5th Cir. Feb. 14, 2022)....................................................................8

*Zisman v. Sieger*,
106 F.R.D. 194 (N.D. Ill. 1985)....................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 4.................................................................................................. *passim*

Defendants offer no good reason for the Court to abandon the routine practice in this District authorizing alternative service of process on China-based defendants under Rule 4(f)(3). None of the objections raised in the Opposition—which is not filed on behalf of the China-based Defendants,[1] but rather is "an amicus brief" filed by Defendants that do not object to service or have been served (Def. Mem. at 1)—warrant deviating from this District's standard practice.[2]

## I. Plaintiffs' Motion Is Timely.

Plaintiffs' motion is timely. Soon after the case was filed, Plaintiffs (1) contacted a process server, (2) learned that service in China is a difficult and time-consuming process that would require them to amend and translate the complaint into Chinese with no guarantee of success, (3) attempted to negotiate waivers of service (and obtained waivers for three Defendants), (4) served the China-based Defendants' corporate parent (ByteDance Ltd.), and (5) raised the issue with the Court, which understood that the parties were attempting to settle the case or negotiate waivers of service without the need for judicial intervention. (Exs. 13-14 to Pl. Mem.; 1/11/24 Hr. Tr. at 2-7, ECF No. 32, Ex. A.) Plaintiffs file their motion now because: (1) pursuant to Court order, on April 2, 2025, Plaintiffs filed the operative version of the Complaint (the "SAC"); (2) on April 4, 2025, the parties concluded negotiations attempting to settle the case or waive service without success; (3) on April 17, the parties appeared before the Court for the first time since the case was reassigned; (4) the Court ordered the start of discovery; and (5) Defendants may soon be required to divest CapCut pursuant to federal law.

---

[1] Defendants contend that in reality only one of the China-based entities still exists due to a corporate reorganization. However, it is not clear from the materials they provide that the entity no longer exists or that the second entity is the sole successor to the first. Thus, Plaintiffs seek to serve both entities.

[2] *See* Pl. Mem. at 2, 12. In addition to the cases cited in the opening memorandum, attached as Exhibit B are recent orders from this Court authorizing alternative service on China-based companies.

Despite this record, Plaintiffs now argue that the motion is "untimely" under FRCP 4(m), which provides that a defendant may seek dismissal "without prejudice" if a plaintiff fails to serve a domestic defendant within 90 days. However, during the pendency of this litigation, Defendants never filed a motion to dismiss under Rule 4(m) (and did not include any such argument in the motion to dismiss they did file). They did not do so because all parties and the Court were aware that the parties were trying to negotiate a resolution.

Moreover, Defendants admit that the 90-day deadline in Rule 4(m) that they cite applies to domestic service only: "Rule 4(m) does not apply to 'service in a foreign country.'" (Def. Mem. at 4.) Indeed, the rule says so expressly: "[t]his subdivision (m) does not apply to service in a foreign country under Rule 4(f)." Fed. R. Civ. P. 4(m).

While Defendants nonetheless argue that "a plaintiff must at least ***commence*** service in a foreign country by the Rule 4(m) deadline, absent a compelling good faith reason for failing to do so" (Def. Mem. at 4), the case they cite does not so hold. Rather, interpreting a prior version of Rule 4(m) applying a 120-day deadline for domestic service, the court held that "[t]he explicit language of this rule makes it very clear that the 120–day limit is inapplicable in cases involving service in a foreign country"—likely because "timeliness of foreign service is often out of the plaintiff's control." *Nylock Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005). The court merely observed that "the amount of time allowed for foreign service is not unlimited" and that "[i]f, for example, a plaintiff made ***no attempt*** to begin the process of foreign service within 120 days, it ***might*** be proper for a court to dismiss the claim." *Id.* (emphasis added). Thus, courts within the Seventh Circuit have adopted a "reasonable diligence" standard in analyzing whether foreign service is timely. *See, e.g., Empire Indus., Inc. v. Winslyn Indus., LLC,* 2020 WL 3100581, at *3 (N.D. Ill. June 11, 2020).

In any event, this is ***not*** a case where Plaintiffs made "no attempt" to effectuate service. *Nylock*, 396 F.3d at 807 (denying motion to dismiss). As noted, Plaintiffs contacted a process server, raised the issue with the Court, and were attempting to negotiate a waiver of service.

Moreover, the operative complaint here was only recently filed on April 2, 2025. While Defendants argue that an amended complaint does not "restart" the Rule 4(m) deadline, again, that deadline does not apply to foreign service under Rule 4(f). And, as a practical matter, prior service efforts "would have been rendered useless by the need to re-serve amended pleadings," providing "good reason[] why [Plaintiffs] could not have realistically served" the China-based Defendants sooner. *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013).

The same basic facts demonstrate a "good faith reason" excusing any alleged untimeliness. *See Empire Indus.*, 2020 WL 3100581, at *4 ("sufficient reason to excuse the delay in service" of 603 days where party "hoped or expected that the Court's issuance of the preliminary injunction … would resolve the dispute"); *Assad v. Liberty Chevrolet, Inc.*, 124 F.R.D. 31 (D.R.I. 1989) ("good faith settlement negotiations … constituted good cause under Rule 4(j) thereby excusing the delay of service of process").[3]

Plaintiffs were attempting to negotiate a settlement or waiver of service right up until April 4, 2025. As noted, the Court was aware the parties were attempting to resolve this issue, which was addressed in a joint status report and hearing before the case was reassigned. (ECF No. 14, at 5.) Moreover, Defendants' suggestion that the January 2024 mediation was the last

[3] The cases Defendants cite are distinguishable. In *Dalrada Precision Corp. v. Cox*, "Plaintiffs ignored an Order explicitly requiring them to demonstrate diligence in their efforts to serve Defendant" and gave no "reason for their delay," 2024 WL 3094633, at *3 (S.D. Cal. June 21, 2024). In *Parker v. Cincinnati*, "Plaintiff delayed nearly a year before having a summons issued" and "fail[ed] to provide any justification for this delay." 2009 WL 3585770, at *2 (C.D. Ill. Oct. 26, 2009). "[A]fter the summons was issued, service was effected within a few weeks." *Id.* In *Safety Vision LLC v. LEI Tech. Canada*, plaintiff failed to exercise "reasonable diligence" by waiting "over three years" to serve defendant while telling the court it would "take immediate steps to serve" defendant. 2024 WL 2946578, at *4 (S.D. Tex. June 11, 2024).

word on settlement (Def. Mem. at 5) is inaccurate. As the parties reported at the hearing following the mediation, they were "continuing ongoing discussions" and had agreed to "extend th[e] deadline for [the motion to dismiss briefing] to allow more time for the parties to … continue talking" with the intent that they would "continue with informal discovery and trying to … reach a resolution." (1/11/24 Hr. Tr. at 4, 7, ECF No. 32, Ex. A.) When the case was reassigned in August 2024, the next status conference set for October was cancelled and all motion hearing dates were stricken. Accordingly, any alleged untimeliness should be excused.

## II. Alternative Service Will Not Cause Delay.

Defendants' claim that alternative service would "disrupt and delay" the proceedings (Def. Mem. at 2) is likewise wrong and, in any event, is no basis for denying Plaintiffs' motion. Indeed, Rule 4(f)(3) is designed to prevent unnecessary expense and delay. Moreover, Defendants could easily eliminate any alleged delay by agreeing to waive service for the China-based Defendants, which is encouraged under the Federal Rules: "An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a duty to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1) (service waiver). Defendants have never provided any good reason for not doing so—particularly given that the China-based Defendants' parent has already been served and they have waived service for all remaining Defendants.

In fact, as the Court is aware from the hearing, it is Defendants who are seeking to delay the proceedings—not Plaintiffs. Defendants (1) requested an extension in the briefing schedule for the motion to dismiss while the parties attempted to negotiate a settlement, (2) argued no discovery should take place until the motion to dismiss was decided, (3) again argued no discovery should proceed until a ruling on the renewed motion to dismiss, and (4) now argue that

if this motion is granted, "the case would need to be put on hold until BDIS's challenges to jurisdiction and to the pleadings have been resolved." (*Id.*)

In any event, as the Court recognized at the last hearing when Defendants made a similar argument, there is no reason the parties cannot brief a motion to dismiss while discovery and other activities in the case proceed. The Court has set a schedule that affords plenty of time for such motion practice given that discovery will not be completed until May 21, 2026, followed by class certification briefing. (ECF No. 60.) Moreover, Defendants offer no reason the Court cannot simply apply its Rule 12(b)(6) rulings to the China-based Defendants, and it is difficult to see what jurisdictional objection they could have when none of the other foreign Defendants, including the China-based entities' corporate parent, have challenged jurisdiction.

## III. Service on The China-Based Defendants Is "Necessary".

Defendants likewise cite no law to support their argument that the Court may deny Plaintiffs' motion because Defendants allege that service on the China-based Defendants is "unnecessary." (Def. Mem. at 6.) Plaintiffs are the masters of their complaint, and it is their prerogative who they name as defendants. Whether a defendant believes it is not "necessary" to the lawsuit is no basis for imposing obstacles to service of the complaint.

Moreover, as discussed in the complaint and Plaintiffs' motion, the China-based entities are among the main operational entities in the ByteDance group in China. While it may be true that Defendants have set up front companies to "provide CapCut in the U.S." (Def. Mem. at 6), the undisputed record shows that the CapCut app was created in China and is "directly run by ByteDance executives in China." (Ex. 2 to Pl. Mem.; SAC ¶¶ 34-37, 97-98.) Moreover, Defendants ignore that Plaintiffs have also sued Defendant TikTok based on its deceptive marketing of the CapCut app, which likewise is subject to "day-to-day management" by "ByteDance's top-level management in China." (Ex. 6 to Pl. Mem.; Ex. 7 to Pl. Mem. ¶¶ 53-54.)

Service on the China-based Defendants is necessary to enforce any injunctive relief (such as destroying any user data wrongly obtained from Plaintiffs) as well as to ensure compliance with discovery and other orders in the case. Those concerns are particularly compelling here given the uncertainty regarding the impending divestiture of the CapCut app required by federal law. (Pl. Mem. at 9-10.) Assurances from defense counsel that, while they do not represent the China-based entities, Plaintiffs will receive from them "all the relevant information they seek" do not suffice. (*See* Def. Mem. at 7; Weibell Decl. ¶¶ 6, 10.)

## IV. Rule 4(f)(3) Authorizes Multiple Forms of Alternative Service.

Finally, alternative service under Rule 4(f)(3) is not "improper" or "contrary to law." (Def. Mem. at 2.) As the decisions cited in the motion make clear, courts have repeatedly held that (1) service on domestic corporate affiliates of foreign entities or their counsel is appropriate under Rule 4(f)(3) and does not implicate the Hague Convention at all, and (2) in this District, service by email on China-based entities under Rule 4(f)(3) is routine—whether or not the address of the defendant is "known". *See, e.g., Neman Bros. & Assocs., Inc. v. P'hips and Unincorp. Ass'ns Identified in Schedule A*, 2024 WL 5056449, at *2 (N.D. Ill. Dec. 10, 2024) ("Even assuming [plaintiff's] address could have been discovered by the plaintiff with reasonable diligence, and was therefore 'known' for purposes of the Hague Convention, the Court is persuaded by the majority of courts in this jurisdiction which have held that even where the Hague Convention does apply, and a defendant is located in China, email service is an acceptable and sufficient method of service.") (collecting cases).[4]

[4] As the *Neman Brothers* court recognized, regardless of whether a defendant's address is known, courts routinely authorize email service because the Convention does not prohibit it. *E.g., Oakley, Inc. v. P'ships and Unincorp. Ass'ns Identified in Schedule "A"*, 2021 WL 2894166, at *4 (N.D. Ill. July 9, 2021) (Rule 4(f)(3) (service by email proper even though plaintiffs did not exercise reasonable diligence to find defendants' addresses); *Ouyeinc Ltd. v. Alucy*, 2021 WL 2633317 (N.D. Ill. June 25, 2021); *Hangzhou Chic*

**A. Service on domestic corporate affiliates is appropriate under Rule 4(f)(3).**

Defendants' Opposition largely ignores that alternative service may be accomplished through the China-based Defendants' U.S.-based affiliates or their counsel. As noted in Plaintiffs' motion, courts have gone so far as to hold that the Hague Convention is completely inapplicable where, as here, the court may authorize alternative service on a foreign defendant's domestic affiliate or counsel, given that "[t]he Hague Convention applies only when transmittal abroad is required." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2008 WL 4104341, at *1 (N.D. Cal. Sept. 3, 2008); *Zisman v. Sieger*, 106 F.R.D. 194, 199-200 (N.D. Ill. 1985) (service in U.S. on agent of foreign defendant renders Hague Convention inapplicable).

In the *Paraquat* MDL, for example, the court authorized service on a foreign parent "via email, via its domestic subsidiary, and/or via domestic counsel" even though the foreign defendant "ha[d] not authorized" such service, noting that this was "'a common form of service under Rule 4(f)(3).'" *In re Paraquat Prods. Liab. Litig.*, 2021 WL 4775284, at **1,3 (S.D. Ill. Oct. 13, 2021). The purported bars to service Defendants raise under the Hague Convention are inapplicable under such circumstances, which do not entail transmission abroad.

**B. Email service on Chinese defendants is also appropriate under Rule 4(f)(3).**

In the alternative, direct email service on the China-based Defendants themselves would also be appropriate under Rule 4(f)(3) and is routine in this District. As Plaintiffs noted in their motion, while there is a split of authority, the majority view is that alternative service by email is not prohibited by the Hague Convention. *E.g.*, *Peanuts Worldwide LLC v. P'ships and Unincorp. Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316, 330 (N.D. Ill. 2024) ("[T]his

---

*Intelligent Tech. Co. v. P'ships and Unincorp. Ass'ns Identified on Schedule A*, 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021). However, "[t]he [Hague] Convention does not [even] apply if the defendant's address is 'not known.'" *NBA Props., Inc. v. P'ships and Unincorp. Assn's Identified in Schedule A*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021).

court will follow the 'overwhelming majority of courts in this district' in reaching the more straightforward conclusion that the Convention does not prohibit service by email.") (rejecting cases cited by Defendants such as *Luxottica*, *Smart Study*, and *Prem Sales*).

In response, Defendants have scoured "[c]ourts around the country" to collect together a handful of outlier decisions. (Def. Mem. at 10.) However, as Plaintiffs observed in their motion, the majority rule is correct. The Hague Convention prohibits service only through "postal channels," and the weight of authority in this District holds that "the most natural understanding" of that phrase does not include email (regardless of how the Chinese Ministry of Justice or Defendants interpret that term). *NBA Props.*, 549 F. Supp. 3d at 798; *Hangzhou Chic*, 2021 WL 1222783, at *3; *Ouyeinc*, 2021 WL 2633317, at *3; *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (rejecting Chinese defendant's argument that email "service did not comply with the Hague Convention," noting "the Hague Convention … does not displace Rule 4(f)(3)"); *Viahart, L.L.C. v. GangPeng*, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022).

Moreover, even the cases Defendants cite recognize that the Hague Convention contains an "exception" where there are "circumstances suggesting 'urgency'." *Flying Heliball, LLC v. Zero Zero Robotics, Inc.*, 2025 WL 464323, at *3 (C.D. Cal. Feb. 11, 2025). That is the case here, where the other Defendants have been served, discovery is starting, and Defendants will soon be required to divest the CapCut app. *Monco v. Zoltek Corp.*, 2018 WL 3190817, at *5 (N.D. Ill. April 24, 2018) (alternative service approved where "the parties are expected to finish discovery by November of 2018, and … [defendant's] subsidiary, is already in the case"); *Wang*, 989 F. Supp. 2d at 280 ("requiring [defendant] to serve [subsidiary] through the Hague Convention now would either needlessly delay the resolution of this case for many months, when

in other respects it is ready to go forward, or result in the case against [defendant] moving forward decoupled from the case against [subsidiary]—an inefficient result”).

**C. Prior Attempts At Service Are not Required Under Rule 4(f)(3).**

Contrary to Defendants’ assertion, there is no requirement under Rule 4(f)(3) that Plaintiffs first attempt to effect service through the Hague Convention or face a defendant that is “avoiding service.” (Def. Mem. at 13-14.) “The plain language of the rule does not require a plaintiff to attempt service under Rule 4(f)(1) [including pursuant to the Hague Convention] before seeking authorization to use an alternative means of service under Rule 4(f)(3).” *CFTC v. Caniff*, 2020 WL 956302, at *5 (N.D. Ill. Feb. 27, 2020) (collecting cases).[5]

In any event, Plaintiffs have undertaken efforts to effectuate service in this case, most of which have been successful. Plaintiffs served the China-based Defendants’ corporate parent and obtained waivers of service from its U.S. and Singapore-based corporate affiliates. Plaintiffs sought a waiver with respect to the China-based Defendants as well, but Defendants refused. Having undertaken these efforts, Plaintiffs now seek an order stating that the service they have already achieved on the corporate affiliates is a sufficient means of service on the China-based Defendants or, in the alternative, that they may serve them by email.

**D. Alternative Service Satisfies Due Process.**

Finally, alternative service satisfies due process. Here, the corporate parent and affiliates of the China-based entities have been served and are actively participating in the case. Moreover, the China-based Defendants are sophisticated corporations with U.S. affiliates, and

[5] *NBA Props., Inc.*, 549 F. Supp. 3d at 796 (Rule 4(f) “‘does not require a party to attempt service under the [Hague Service] Convention before seeking a court order directing alternative service.’”); *Chen v. P’ships and Unincorp. Ass’ns Identified on Schedule A*, 2025 WL 47972, at *6 (N.D. Ill. Jan. 8, 2025) (same); *Klauber Bros., Inc. v. P’ships and Unincorp. Ass’ns Identified in Schedule “A”*, 2024 WL 182209, at *3 (N.D. Ill. Jan. 17, 2024) (same); *Paraquat*, 2021 WL 4775284, at *2 (“nothing in Rule 4(f)(1) requires a plaintiff to comply with the Hague Convention before alternate service is ordered”).

their co-Defendants' Opposition makes clear that they are coordinating with the other Defendants. (Def. Mem. at 7; Weibell Decl. ¶ 10.) Under the circumstances, there can be no question the China-based Defendants can be made "aware of the claims"—if they are not already aware—by service on their corporate affiliates or counsel. *Paraquat*, 2021 WL 4775284, at *3; *Monco*, 2018 WL 3190817, at *5 (due process satisfied where defendant "is a sophisticated company with U.S. subsidiaries," "service in this case should not be surprising, and it is unlikely that [defendant] is not already aware of this litigation"); *Wang*, 989 F. Supp. 2d at 280 (serving foreign CEO through "service on [defendant corporation] and its counsel … would comport with due process" since "it is all but inconceivable that [defendant corporation] and its counsel would be unable to inform [its foreign CEO] of this lawsuit").

The proposed means of alternative service are therefore sufficient "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Indeed, courts in this District routinely authorize alternative service with less process where, for example, the foreign defendant has no corporate affiliates in the case at all. (*See* Orders, Ex. B.)[6]

## CONCLUSION

Plaintiffs respectfully request that the Court grant their motion and authorize service by email on the China-based Defendants' corporate affiliates or counsel and/or service by email directly on the China-based Defendants—Beijing Douyin Information Service Co. Ltd. ("BDIS") and Beijing ByteDance Technology Co. Ltd.

[6] Service is not "too late under Rule 4(m)." (Def. Mem. at 14.) Rule 4(m) does not apply to service under Rule 4(f), and, in any event, service has already been achieved on the U.S. affiliates. Similarly, the cases Defendants cite in support of their contention that "[s]ervice through U.S. counsel for Defendants …. would not comport with due process" (*id.* at 15) likewise do not address alternative service under Rule 4(f).

Dated: June 9, 2025

Respectfully submitted,

By: */s/ Jeannie Evans*

Jeannie Evans (Bar No. 6296339)
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4962
Facsimile: (708) 628-4952
jeannie@hbsslaw.com

Steve W. Berman (Bar No. 3126833)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Douglas G. Smith
ALPHEUS LLC
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
Telephone: (312) 451-6708
dsmith@alpheusllc.com

*Counsel for Plaintiffs and the Class*