**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVELIA RODRIGUEZ; ERIKKA WILSON; A.N., A MINOR; AIDEN GUNDLACH; ZACHARY BUCKUS; RAYMON MARINES; J.V. A MINOR; DOMINICK POLIZZI; AND ROBERT KOPLOS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE INC.; BEIJING DOUYIN INFORMATION SERVICE CO. LTD. F/K/A BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; BYTEDANCE LTD.; BYTEDANCE PTE. LTD.; BEIJING BYTEDANCE TECHNOLOGY CO. LTD.; AND TIKTOK INC. F/K/A MUSICAL.LY, INC.,<br><br>Defendants. | Case No. 1:23-CV-04953<br><br>Judge Georgia N. Alexakis |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. THE CFAA CLAIM SHOULD BE DISMISSED AGAIN ..... 1

A. Plaintiffs' Amendments Do Not Allege CFAA "Loss" ..... 1

B. Plaintiffs' Amendments Do Not Allege a Threat to Public Health or Safety ..... 3

II. THE CDAFA CLAIM SHOULD BE DISMISSED AGAIN ..... 4

III. THE ECPA AND CIPA CLAIMS SHOULD BE DISMISSED AGAIN ..... 6

A. Plaintiffs Again Fail to Plausibly Allege an "Interception" ..... 6

B. Plaintiffs Fail to Allege "Eavesdropping Upon" or "Recording" of "Confidential Communications" ..... 8

IV. THE SCA CLAIM SHOULD BE DISMISSED AGAIN ..... 9

V. THE UCL CLAIM SHOULD BE DISMISSED AGAIN ..... 10

VI. THE FAL CLAIM SHOULD BE DISMISSED AGAIN ..... 12

VII. THE RESTITUTION AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED AGAIN ..... 14

VIII. THE BIPA SECTION 15(e) CLAIM SHOULD BE DISMISSED AGAIN ..... 15

CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....................7

*In re Adobe Sys., Inc. Privacy Litigation*,
66 F. Supp. 3d 1197 (N.D. Cal. 2014) ....................11

*Bonte v. U.S. Bank, N.A.*,
624 F.3d 461 (7th Cir. 2010) ....................1, 15

*Bowen v. Porsche Cars, N.A., Inc.*,
561 F. Supp. 3d 1362 (N.D. Ga. 2021) ....................2

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ....................7

*Bryant v. Compass Grp. USA, Inc.*,
958 F.3d 617 (7th Cir. 2020) ....................15

*Callen v. Daimler AG*,
2021 WL 4523436 (N.D. Ga. Oct. 4, 2021) ....................13

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................7

*Canel v. Art Inst. of Chi.*,
2025 WL 564504 (N.D. Ill. Feb. 20, 2025) ....................16

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................15

*Colo. Republican Comm. v. Doe*,
2016 WL 3922156 (D. Colo. July 21, 2016) ....................4

*Cottle v. Plaid, Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................5

*Cullis v. Tesla Inc.*
2024 WL 4581655 (E.D. Cal. Oct. 25, 2024) ....................13

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) .................... 10-11

*Daugherty v. Univ. of Chi.*,
2017 WL 4227942 (N.D. Ill. Sept. 22, 2017) ....................2, 6, 7, 9

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ....................7

*Doe v. Grindr Inc.*,
128 F.4th 1148 (9th Cir. 2025) ....................14

*Doe v. Tenet Healthcare Corp.*,
2025 WL 1635956 (E.D. Cal. June 9, 2025) ....................5, 11

*Edwards v. MUBI, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025) ....................11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................7, 11

*Fleury v. Union Pac. R.R. Co.*,
528 F. Supp. 3d 885 (N.D. Ill. 2021) ....................3

*Griffith v. TikTok Inc.*,
2023 WL 9019035 (C.D. Cal. Dec. 13, 2023) ....................4, 9

*Grisafi v. Sony Elecs. Inc.*,
2019 WL 1930756 (D.N.J. Apr. 30, 2019) ....................3

*Halperin v. Int'l Web Servs., LLC*,
70 F. Supp. 3d 893 (N.D. Ill. 2014) ....................2, 3

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................10, 12, 13

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) ....................13

*Hubbard v. Google LLC*,
2025 WL 82211 (N.D. Cal. Jan. 13, 2025) ....................12

*Ji v. Naver Corp.*,
2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) ....................11

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997) ....................12, 13

*Lineberry v. AddShopper, Inc.*,
2025 WL 551864 (N.D. Cal. Feb. 19, 2025) ....................6

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sep. 16, 2024) ....................16

*In re Marriott Int'l, Inc.*,
31 F.4th 898 (4th Cir. 2022) ....................14

*McClaine v. DX Enters., Inc.*,
2024 WL 3860971 (S.D. Ill. Aug. 19, 2024) .................... 15-16

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) ....................5

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................11, 12

*Mortensen v. Bresnan Commc'n, L.L.C.*,
2010 WL 5140454 (D. Mont. Dec. 13, 2010)....................3

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ....................15

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ....................4

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018) ....................16

*Owens v. Smith, Gambrell and Russell Int'l, LLP*,
2024 WL 391663 (C.D. Cal. May 30, 2024) ....................12

*Parklane Hosiery Co. v. Shore*,
439 U.S. 322 (1979)....................3

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ....................7, 8, 13, 14

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) ....................5

*Schaaf v. Midwest Transfer & Logistics, LLC*,
2010 WL 2722819 (N.D. Ill. July 8, 2010)....................4

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................2, 6, 7, 9, 10

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ....................11

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017) *aff'd*, 731 F. App'x 719 (9th Cir. 2018) ....................11

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 WL 4367849 (N.D. Ill. Oct. 1, 2024)....................7

*In re Toyota RAV4 Hybrid Fuel Tank Litigation*,
534 F. Supp. 3d 1067 (N.D. Cal. 2021) ....................12, 13

*United States v. Mitra*,
405 F.3d 492 (7th Cir. 2005) ....................4

*Van Buren v. United States*,
593 U.S. 374 (2021)....................1

*Vaquero Energy, Inc. v. Herda*,
2015 WL 5173535 (E.D. Cal. Sept. 3, 2015)....................4

*Vitt v. Apple Comp., Inc.*,
2010 WL 11545683 (C.D. Cal. May 21, 2010), *aff'd*, 469 F. App'x 605 (9th Cir. 2012) ....................14

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ....................13

**Statutes**

Cal. Civ. Code § 1798.150(c) ....................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................15

## INTRODUCTION

Defendants' motion to dismiss showed that the amendments to Plaintiffs' Second Amended Complaint ("SAC") rest on conclusory statements, speculation, and invalid theories. This is the same reason the Court dismissed these claims from the First Amended Complaint. Unable to correct these problems, Plaintiffs' Opposition instead attempts to manufacture factual disputes where none exist, ignores authority that is contrary to their claims, and improperly tries to amend the SAC through briefing. The Court should grant Defendants' motion.

## ARGUMENT

### I. THE CFAA CLAIM SHOULD BE DISMISSED AGAIN

#### A. Plaintiffs' Amendments Do Not Allege CFAA "Loss"

Plaintiffs' CFAA claim does not plausibly allege a cognizable "loss" for the same reasons it failed the first time. Mot. at 4–8. Their Opposition fails to sufficiently address this defect:

*First*, Plaintiffs ignore Defendants' argument, *see* Mot. at 4, and the Court's order, *see* Dismissal Order at 12, which make clear that diminution in value of data is not a cognizable "loss" under the CFAA. *See* Opp. at 5–8. By failing to address this defect, Plaintiffs concede it. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond is a waiver).

*Second*, Plaintiffs rightly abandon their invalid "identity theft and fraud" theory, SAC ¶¶ 266, 271, stating that they "need not invoke [it] to meet the $5,000 threshold." Opp. at 6 n.8.

*Third*, for Plaintiffs' new "subscription fees" for "defective software" theory, *see* SAC ¶¶ 266, 271, Plaintiffs fail to explain—let alone allege in the SAC as they must—how CapCut was "defective," or how this alleged loss was *caused* by an *unauthorized* access to their devices. *See* Mot. at 5; *see also* Opp. at 7. Plaintiffs altogether ignore the Supreme Court precedent that holds CFAA losses include only "costs *caused* by harm to computer data, programs, systems, or information services." *Van Buren v. United States*, 593 U.S. 374, 391 (2021) (emphasis added).

*Fourth*, Plaintiffs fail to address the authority that rejects their theory that battery drain constitutes a CFAA "loss," and they offer no authority that validates their theory. SAC ¶¶ 266, 271; *see* Mot. at 5–8; Opp. at 6. Plaintiffs cannot twist the question of battery drain into a factual dispute as they try to do, *see* Opp. at 6. Their alleged loss must be *legally* sufficient before they are entitled to a *factual* inquiry about whether it occurred. Plaintiffs also sidestep the "obvious alternative explanations" for battery drain, Mot. at 7, including those illustrated by their own screenshot. *See* Opp. at 6; SAC ¶ 200. And, critically, Plaintiffs still fail to plausibly allege that *they personally* sustained any battery drain. *See* Mot. at 6–8.[1] Instead, Plaintiffs merely assert—in threadbare fashion—that "battery drain is caused by the way CapCut functions, and users downloaded the same app." Opp. at 6.

*Finally*, Plaintiffs' Opposition misunderstands the law of aggregating classwide damages. *See id*. at 7. As Plaintiffs' own cases recognize, even if the CFAA did allow a plaintiff to aggregate damages across the entire putative class of persons to reach the $5,000 threshold, such damages can only be aggregated if "the damage arose from a single act" of unauthorized access, like a single breach of computer security at a single computer holding all of the class's data. *See* Mot. at 6. Contrary to Plaintiffs' argument (Opp. at 7–8), classwide alleged damages cannot be aggregated just because "the losses all arise from the same app" downloaded and used at different times by different class members. *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 899 (N.D. Ill. 2014). Plaintiffs cite out-of-circuit cases that contradict *Halperin* and are mostly distinguishable to the extent the unauthorized access there flowed from a single act by the defendant at the same

[1] "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class[.]'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (citation omitted). "The named plaintiffs in a class action cannot acquire standing through the injuries of unnamed class members. Therefore, Plaintiffs must sufficiently allege that they personally possess Article III standing to proceed[.]" *Daugherty v. Univ. of Chi.*, 2017 WL 4227942, at *5 (N.D. Ill. Sept. 22, 2017) (internal citation omitted).

time. *See Bowen v. Porsche Cars, N.A., Inc.*, 561 F. Supp. 3d 1362, 1366–67 (N.D. Ga. 2021) (a single software or firmware update was sent to all users' devices on or around the same time); *Grisafi v. Sony Elecs. Inc.*, 2019 WL 1930756, at *2, 5 (D.N.J. Apr. 30, 2019) (update was released by defendant to all users' devices around the same time); *Mortensen v. Bresnan Commc'n, L.L.C.*, 2010 WL 5140454, at *1, *7 (D. Mont. Dec. 13, 2010) (finding "single act" where an internet service provider allowed a third party to install and distribute its device onto ISP's network infrastructure for users). That is not the case here at all. As in *Halperin*, each class member here downloaded and used the app at different times.

### B. Plaintiffs' Amendments Do Not Allege a Threat to Public Health or Safety

Plaintiffs also still do not plausibly allege "a threat to public health or safety" as required by the CFAA to meet this alternate theory of CFAA harm. *See* Mot. at 8–9. Plaintiffs' inflammatory allegations about the 2024 Legislation,[2] *see* Opp. at 8–12, are neither correct nor sufficient to bring video editing software like CapCut within the meaning of "a threat to public health or safety" under the CFAA. Plaintiffs fail entirely to address Defendants' points about how Plaintiffs misrepresent the 2024 Legislation.[3] *See* Mot. at 9, 17–19. Nor do Plaintiffs have any answer for the fact that even under their theory, it is a foreign government that is the "cause" of the alleged "threat," not Defendants' alleged access to data on Plaintiffs' devices. *See id.* at 9.

Moreover, Plaintiffs concede they allege only data privacy "threats," s*ee* Opp. at 8–9, 11, and they fail to cite a single case holding that the threat of a privacy invasion is a "threat to public

[2] This and any other terms defined in the Motion have the same meaning in this brief.

[3] Plaintiffs assert in a footnote that Defendants are "likely collaterally estopped" from arguing that Plaintiffs fail to allege a threat to public health or safety under the CFAA in light of the 2024 Legislation. Opp. at 12 n.16. But collateral estoppel applies only to "relitigating an *identical* issue." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (emphasis added). Setting aside Plaintiffs' misapprehension of the 2024 Legislation, *see* Mot. at 17–19, they point to nothing that says Defendants' purported access to CapCut data causes the specific type of harm required by the CFAA. *See id.* at 9, 17–19.

health or safety." *Id.* at 11. Plaintiffs' only cited case, *Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885, 892 (N.D. Ill. 2021), is a *BIPA* case discussing the purpose of *BIPA*, not a *CFAA* case, and is therefore completely irrelevant to the definition of "public health or safety" under the federal CFAA. *See, e.g.*, *Schaaf v. Midwest Transfer & Logistics, LLC*, 2010 WL 2722819, at *5 (N.D. Ill. July 8, 2010) (finding "unpersuasive" a party's reliance on a "substantively" different statute to interpret the statute at hand). Courts addressing data privacy in the CFAA context agree. *See, e.g.*, *Griffith v. TikTok Inc.*, 2023 WL 9019035, at *5 (C.D. Cal. Dec. 13, 2023) (dismissing CFAA theory that alleged user data access by China-based affiliates or the Chinese government constitutes CFAA harm); *see also* Mot. at 9. Plaintiffs call *Griffith* an "outlier" that is "at odds with the CFAA's plain language," Opp. at 11 & n.17, but fail to identify a single case disagreeing with it. Plaintiffs here assert that by adding two plaintiffs with armed services affiliations, they "satisfy[]" *Griffith*, Opp. at 12. But *Griffith* itself rejected a near-identical attempt. *See* Mot. at 9–10. Plaintiffs also do not identify any classified data on these named Plaintiffs' devices. *See id.*

Plaintiffs further fail to distinguish Defendants' three other cases. *See* Opp. at 12 n.15. Plaintiffs assert only that *United States v. Mitra*, 405 F.3d 492, 494 (7th Cir. 2005) and *Vaquero Energy, Inc. v. Herda*, 2015 WL 5173535, at *8 (E.D. Cal. Sept. 3, 2015) "happened to involve data relating to emergency services or oil and gas facilities." Opp. at 12 n.15. Plaintiffs fail to address that, in line with *Mitra* and *Vaquero*, the court in *Colorado Republican Committee v. Doe* recognized that the threat requirement may be met by access that "disables computers or deletes data essential to providing medical treatment, public utilities, or emergency response services." 2016 WL 3922156, at *2 (D. Colo. July 21, 2016). None of those facts are present here.

## II. THE CDAFA CLAIM SHOULD BE DISMISSED AGAIN

Plaintiffs rely on the same theories of purported loss in support of their CDAFA claim and vaguely refer to additional theories in passing. *See* Opp. at 12–13. They fail under the CDAFA just

like they fail under the CFAA. *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (CDAFA and CFAA claims rise or fall together in terms of cognizable loss).

*First*, Plaintiffs' payment of "subscription fees" is not a "loss" the CDAFA recognizes. *See* Mot. at 12–13. Plaintiffs' response that "any damage or loss is sufficient," Opp. at 12, ignores the requirement that the loss must occur "as a result of [the] alleged CDAFA violations." *Cottle v. Plaid, Inc.*, 536 F. Supp. 3d 461, 487–88 (N.D. Cal. 2021). Plaintiffs certainly did not incur the subscription fees as a *result* of unauthorized access to their devices, nor can they cite any case supporting this theory. Their cited authority is beside the point—it stands only for the principle that the CDAFA lacks the $5,000 threshold damages requirement of its federal counterpart. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655–56 (N.D. Cal. 2024); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1109 (N.D. Cal. 2025). In fact, the *Meta Healthcare Pixel* court "rejected plaintiffs' prior theories of damage or loss based on the 'diminished value of information' and their alleged 'inability' to use their computer device." 713 F. Supp. 3d at 655.

*Second*, relying on *Meta Healthcare Pixel* and *Rodriguez*, Plaintiffs point to barebones allegations that "CapCut's unauthorized access caused Plaintiffs' devices to work slower [and] utilized computer resources." Opp. at 13. Those cases do not help Plaintiffs. In *Meta*, the plaintiffs' allegations "identif[ied] the measurable impact on their devices." 713 F. Supp. 3d at 656. Plaintiffs here do not do so. *See* SAC ¶¶ 213, 348. In *Rodriguez*, the plaintiffs could proceed on their depletion of battery and bandwidth theory only because the plaintiffs there, unlike Plaintiffs here, "provided sufficient evidence to show harm for at least nominal damages." 772 F. Supp. 3d at 1110. Even so, the reasoning in *Rodriguez* has been expressly rejected by one of Plaintiffs' own cited cases, which held that Plaintiffs must allege "some damage to the computer system, network,

program, or data contained on that computer." *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *19 (E.D. Cal. June 9, 2025) (citing cases).

*Third*, Plaintiffs further argue that "CapCut's unauthorized access . . . created unjust profits through, for example, development of artificial intelligence[.]" Opp. at 13. But they do not plausibly allege that any of Plaintiffs' data—let alone biometric data—was accessed in violation of the CDAFA or that any alleged profits resulted from such access. *See* SAC ¶ 213 (no allegations of unjust profits), ¶ 417 (alleged unjust profits for UCL claim), ¶ 488 (similar for unjust enrichment/restitution claim); *see also id.* ¶ 181 (only allegation mentioning AI program does not allege that Plaintiffs' data was accessed in violation of CDAFA).

*Finally*, Plaintiffs demand that they are "entitled to" expenditures incurred to verify that data was not damaged or deleted by purported access. Opp. at 13. That is not enough because named Plaintiffs do not allege that they actually incurred any such expenditures. *See Lineberry v. AddShopper, Inc.*, 2025 WL 551864, at *2 (N.D. Cal. Feb. 19, 2025) (dismissing CDAFA claim where plaintiffs failed to "articulate [their] theory of loss [in] a concrete way"); *see also Spokeo*, 578 U.S. at 338 n.6; *Daugherty*, 2017 WL 4227942, at *5.

## III. THE ECPA AND CIPA CLAIMS SHOULD BE DISMISSED AGAIN

### A. Plaintiffs Again Fail to Plausibly Allege an "Interception"

Plaintiffs' attempt to salvage their ECPA and CIPA claims is convoluted, jumping back and forth between different types of data doing different things. Plaintiffs appear to reference three categories of data: (1) in-app communications between CapCut users, (2) information stored outside of the app in other areas of a user's device, and (3) data in storage on CapCut servers. But none of Plaintiffs' arguments demonstrate an actionable "interception" of the "contents" of Plaintiffs' own communications while "in transit," as required. Dismissal Order at 18–20.

*First*, Plaintiffs' reference to some users' "emails" and "videos" sent within CapCut (Opp. at 18) fails because they cannot allege, as they must, that the contents of those communications were *redirected to a third party* while in transit. *See* Dismissal Order at 18–20. Plaintiffs' authorities, some previously rejected by the Court, *see id.*, do not justify departing from the Court's holding.[4] And Plaintiffs fail to allege that they *personally* sent emails and videos that were intercepted. *See* Mot. at 12. Plaintiffs' citation to *In re TikTok Inc. In-App Browser Privacy Litigation* does not help them. Opp. at 18 n.20. There, *each* named plaintiff alleged they used the TikTok app to communicate with third-party websites and those communications were intercepted. 2024 WL 4367849, at *4. Plaintiffs' allegations that "certain named plaintiffs routinely use[d] the app" do not amount to allegations that a named Plaintiff used CapCut to communicate with other users and had those communications intercepted. Opp. at 18 n.20; *see also Spokeo*, 578 U.S. at 338 n.6; *Daugherty*, 2017 WL 4227942, at *5.[5]

*Second*, Plaintiffs' argument that CapCut accesses "information" from other areas of a user's device (Opp. at 14) fails to allege that any of the "information" being accessed constitutes

[4] *See, e.g.*, First Amended Class Action Compl. ¶ 138, *Ji v. Naver Corp.*, No. 21-CV-05143-HSG (N.D. Cal. Oct. 28, 2022), Dkt. No. 100, (defendants used "other devices separate from devices tied to [the domain related to the app]" to intercept videos); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3, *7 (N.D. Ill. Sept. 9, 2024) (defendant "use[d] source code . . . to contemporaneously . . . re-direct the [u]sers' communications to third parties"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 840 (N.D. Cal. 2014) ("Facebook . . . send[s] server requests to . . . [third-party] web page" which "could constitute a 'redirection' of the contents of users' messages"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596, 607–08 (9th Cir. 2020) (similar); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1260 (N.D. Cal. 2024) (third-party website installed and configured code on its site to collect and transmit data to another party); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 919–20 (N.D. Cal. 2023) (when a user visited third-party websites, Google's code instructed a user's browser to send a "concurrent transmission directly to Google"); *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *4, *11 (N.D. Ill. Oct. 1, 2024) (keystrokes on third-party websites allegedly accessed via in-app browser were collected by another party).

[5] This Court should disregard Plaintiffs' passing references to the criminal-or-tortious-act exception and CIPA Section 631(a) in footnotes. Opp. at 18 n.21, 19 n.23. After failing to plead this issue, Plaintiffs cannot raise it for the first time in their Opposition. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("[A] plaintiff may not amend his complaint in his response brief.").

the *contents* of communications, as required to trigger the wiretap laws. *See* Mot. at 13. Moreover, their allegations belie any claim that the CapCut app collected data outside the app "in real time." *Id.* at 13 n.5. To the extent Plaintiffs argue that "CapCut gains access to other apps" that "send and receive electronic communications such as email and text," Opp. at 14 (citing SAC ¶¶ 260–61), they plead only that CapCut accessed *stored* data, not data in transit (which would be impossible). *See* SAC ¶¶ 260–61 (alleging CapCut app gained access to "areas of Plaintiffs' devices containing email programs" whose data "is stored . . . within the phone[]"); *see also id.* ¶¶ 265, 296.

*Third*, Plaintiffs' allegations about the Chinese government's data access are hypothetical and speculative, alleging what could happen, not what actually has happened. Plaintiffs continue to rely on their misquote of the Chair of the Divesture Committee that "CapCut is 'spying [on users] by design,'" and completely ignore Defendants' explanation of this statement (*see* Mot. at 18). Opp. at 14. Plaintiffs' false and speculative allegations also fail to show that the Chinese government is intercepting communications *in transit* rather than in storage. Moreover, Plaintiffs do not cite a single authority supporting their position that the ability to *access* data constitutes actual *interception* of that data. That "CCP members" are allegedly "on site at Defendants' facilities in positions that give them access" thus does not help Plaintiffs. *Id.* at 19. To the extent Plaintiffs allege that the Chinese government is "embedded" in the company, these allegations fail because Defendants were a party to any communications. *See* Dismissal Order at 22.

### B. Plaintiffs Fail to Allege "Eavesdropping Upon" or "Recording" of "Confidential Communications"

Plaintiffs' arguments about Defendants' purported "recording" under CIPA Section 632 claim are difficult to parse, yet fail. Plaintiffs argue in their brief that their "smartphones" are a recording device, Opp. at 20, but do not plead such a claim in the SAC. *See* SAC ¶ 466; *Pirelli*, 631 F.3d at 448 (plaintiffs cannot amend complaint by opposition brief). The CapCut app is the

only "device" Plaintiffs attempt to allege was used to eavesdrop upon or record any confidential communications. *See* SAC ¶¶ 466–67. In any event, that allegation makes no sense because Defendants, as the operators of CapCut, were a party to any communications made with CapCut and therefore cannot have eavesdropped upon Plaintiffs. *See* Mot. at 15. Plaintiffs make the conclusory assertion that "Defendants were not a party," but they do not (and cannot) explain how that could be so. Opp. at 20. Moreover, speculation that communications include "sensitive" and "private" emails, texts, and videos, *id.*, does not mean that Plaintiffs' *own communications*, rather than unspecified putative class members' communications, contained confidential information. *See* Mot. at 15–16; *see also Spokeo*, 578 U.S. at 338 n.6; *Daugherty*, 2017 WL 4227942, at *5.

## IV. THE SCA CLAIM SHOULD BE DISMISSED AGAIN

As amended, Plaintiffs' SCA claim fails to plausibly allege disclosure of any U.S. CapCut data, let alone the contents of stored user communications. Plaintiffs argue that their conjectural allegations about (1) the 2024 Legislation and (2) purported connections between Defendants and the Chinese Communist Party are sufficient or at least present fact disputes. Plaintiffs are wrong.

*First*, Plaintiffs stretch the 2024 Legislation too far. No part of that Legislation states that U.S. CapCut data was actually disclosed or that such disclosures included the contents of user communications, let alone Plaintiffs' own communications. Plaintiffs' argument (Opp. at 21) that the Legislation applies to CapCut, among other "ByteDance apps," fails to connect these dots. The same goes for Plaintiffs' reliance (*Id.*) on the D.C. Circuit's characterization of the Legislation as addressing "foreign adversary control of a substantial medium of communication." The court was referring to *TikTok*, which is a substantial medium of communication, not *CapCut*. As Defendants explained, Mot. at 18, it is contrary to the Court's prior rulings for Plaintiffs to continue to rely on allegations about TikTok (not CapCut), *see* Dismissal Order at 9, and disclosures allegedly made to affiliates, *see id.* at 22. Plaintiffs do not address this point.

Likewise, Plaintiffs point to the Legislation's definition of "Covered Company" in an apparent attempt to show that the contents of CapCut communications were disclosed (Opp. at 21), but the mere fact that CapCut may be included in the Legislation falls well short of an allegation that the contents of CapCut communications were actually disclosed.

Second, Plaintiffs cannot state a claim with a conjectural allegation that their communications *may* have been seen by a foreign government. *See Spokeo*, 578 U.S. at 339 ("[A] plaintiff must show that he or she suffered an invasion of a legally protected interest that is actual or imminent, not conjectural or hypothetical.") (citation modified). Although Plaintiffs assert that members of the CCP are "embedded in ByteDance" (Opp. at 21–22), this does not amount to a plausible claim that any specific CapCut data was disclosed *outside* the company, or that such disclosure included the contents of communications. In short, while Plaintiffs state that theirs is not a "case where plaintiffs allege only that defendant . . . 'failed to protect the data,'" Opp. at 21 n.25, that is exactly the sum total of what they assert. *See, e.g.*, SAC ¶ 333. And it is not enough.

## V. THE UCL CLAIM SHOULD BE DISMISSED AGAIN

Plaintiffs' UCL claim should be dismissed because Plaintiffs have not suffered an economic loss caused by unfair business practices. Mot. at 19–23; *see* Dismissal Order at 29. Plaintiffs have now dropped their "diminution of value of their data" and "invasion of privacy" theories of loss. Opp. at 26 n.29. Their other forms of "loss" fail too.

**Subscription Fees.** Plaintiffs allege that they would not have paid subscription fees had they known about CapCut's data collection practices. Opp. at 22–23 (citing SAC ¶¶ 202, 413). But only two of the nine Plaintiffs allege they paid for a subscription, *see* SAC ¶¶ 10–26, which they admit they did for additional cloud storage and "additional features and effects"—not for any reason relating to data security or privacy, Mot. at 23 (citing SAC ¶¶ 7, 70). In any event, all Plaintiffs fail to plead reliance on any misrepresentations by CapCut. *See Hammerling v. Google*

*LLC*, 615 F. Supp. 3d 1069, 1083 (N.D. Cal. 2022) (dismissing UCL claim for failure to "plausibly allege actual reliance with particularity"). Plaintiffs' own cited authority says exactly that. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (omission must have been "a substantial factor in [plaintiff's] decision"); *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1084 (N.D. Cal. 2017) (no reliance shown where plaintiff did not allege "that she read or relied on the Disclosure" before purchasing) *aff'd*, 731 F. App'x 719 (9th Cir. 2018).[6]

**Battery Drain.** This theory fails for the same reasons discussed *supra* in Section I.

**Benefit of the Bargain**. The Court previously explained that Plaintiffs' "benefit of the bargain" theory falls short "[b]ecause Plaintiffs have not adequately alleged that their data lost value." Dismissal Order at 30 n.6. Plaintiffs still fail to allege facts showing their data lost value. Plaintiffs instead attempt to argue that even without loss of value, they suffered economic loss "because they received less in services from defendants than they had bargained for in exchange for access to their data or because defendants took more than they were entitled to receive under the bargain." Opp. at 25 n.28. But both cases cited by Plaintiffs for their incorrect theory of economic loss are distinguishable. In *Ji v. Naver Corp.*, 2023 WL 6466211, at *6–9 (N.D. Cal. Oct. 3, 2023), the court tied its holding to diminution of the data's market value and also relied on *Facebook Tracking*, which this Court has already distinguished from the instant case. Dismissal Order at 13 (distinguishing *Facebook Tracking* and explaining that Plaintiffs must, at minimum,

[6] None of Plaintiffs' other cited cases are to the contrary. The UCL claim in *In re Adobe Sys., Inc. Privacy Litigation* was allowed to proceed because there were allegations, unlike here, that plaintiffs specifically "relied on Adobe's Privacy Policy." 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014). In *Tenet Healthcare*, plaintiffs did not have to allege that they read any particular document because they relied on "defendants' status as healthcare providers," 2025 WL 1635956, at *21, which are held to stringent privacy standards. Plaintiffs cannot rely on any such status here. The UCL claim in *Stark v. Patreon, Inc.* was sufficient because the plaintiffs specifically alleged that they "paid for access . . . because they trusted that Patreon's privacy practices comported with their privacy preferences." 635 F. Supp. 3d 841, 854–55 (N.D. Cal. 2022). Not so here. And *Edwards v. MUBI, Inc.* cannot help Plaintiffs, as the court there *granted* a motion to dismiss a UCL claim. 773 F. Supp. 3d 868, 885 (N.D. Cal. 2025).

allege they intended to sell their data). And in *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1025 (N.D. Cal. 2024), the plaintiffs alleged the defendant *sold* their valuable tax filing data, which Plaintiffs do not allege here. Courts have also rejected the reasoning in *Meta Pixel Tax Filing* that "privacy loss constitutes an economic loss." *E.g.*, *Hubbard v. Google LLC*, 2025 WL 82211, at *13 (N.D. Cal. Jan. 13, 2025).

**Identity Theft.** Plaintiffs do not meaningfully contest Defendants' argument that they have no standing under an identity theft theory. The case Plaintiffs cite identified UCL loss in the form of "credit monitoring"—a *cost* Plaintiffs never incurred here. *See* Opp. at 26 (citing *Owens v. Smith, Gambrell and Russell Int'l, LLP*, 2024 WL 391663, at *14 (C.D. Cal. May 30, 2024)). Moreover, as another case cited by Plaintiffs held, this claim fails because "Plaintiffs still do not allege 'that the information actually has been taken by the Chinese government or other entities.'" *Naver*, 2023 WL 6466211, at *6 (citation omitted).

## VI. THE FAL CLAIM SHOULD BE DISMISSED AGAIN

Plaintiffs' FAL claim should be dismissed because Plaintiffs fail to sufficiently allege (1) economic loss, (2) a fraudulent omission, or (3) reliance on any purported omission. Mot. at 23–25. Plaintiffs' responses to those points (Opp. at 26–31) fall short.

As explained above, Plaintiffs still fail to show any economic loss. *See* Section V, *supra*.

They also fail to identify a fraudulent omission. A pure omission is actionable only if a defendant is under a duty to disclose the omitted fact. *See* Mot. at 24–25. The "majority of district courts" hold that a duty to disclose exists only when the matter at issue (1) "relates to an unreasonable safety hazard" or (2) is "material" and "central to the product's function," and (3) the plaintiff shows one of the four so-called *LiMandri* factors. *Hammerling*, 615 F. Supp. 3d at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). Plaintiffs dispute this standard, suggesting they need only show any one of those elements. *See* Opp. at 30 n.40. But the

case they cite, *In re Toyota RAV4 Hybrid Fuel Tank Litigation*, 534 F. Supp. 3d 1067, 1102 (N.D. Cal. 2021), is an outlier that this Court need not follow. *See Hammerling*, 615 F. Supp. 3d at 1085 (rejecting *In re Toyota* test because it conflicted with *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018)); *see also Callen v. Daimler AG*, 2021 WL 4523436, at *9 (N.D. Ga. Oct. 4, 2021) (declining to follow *In re Toyota* and noting that "the Court's research has turned up no decisions aligning with [it] on this issue").

Plaintiffs make no serious effort to meet any part of the correct test. For element one (central to product function), they merely assert that "the omissions are central to CapCut," Opp. at 31, but do not claim that the alleged issue renders the product "incapable of use." Mot. at 25. As for element two (unreasonable safety hazard), Plaintiffs suggest that the 2024 Legislation somehow makes CapCut a "hazard," Opp. at 31, but that claim ignores that the omission must relate to a *safety* hazard. Mot. at 24–25. And, even if Plaintiffs could get to element three, they have not shown that any *LiMandri* factors apply, aside from an unenlightening statement that "most if not all . . . apply here." Opp. at 30 n.40.

Faced with those failures, Plaintiffs invent baseless tests for creating a duty to disclose. They first assert (at 26–27) that a duty to disclose can be created by other statutes but cite no authority and ignore Defendants' cited case—*Cullis v. Tesla Inc.*—which confirms the *Hammerling* test applies even when there is an allegation of a violation of a statutory duty. 2024 WL 4581655, at *4 n.4 (E.D. Cal. Oct. 25, 2024).[7] Plaintiffs also claim (at 27) that a duty can arise from merely promulgating a privacy policy, but cite no supporting cases. In any event, this approach conflicts with *Hammerling* and California courts' "general[] reject[tion] of a broad obligation to disclose." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).

[7] Plaintiffs also claim—for the first time—that BIPA purportedly creates a duty to disclose under the FAL. This eleventh-hour attempt to amend the SAC should be rejected. *See Pirelli*, 631 F.3d at 448.

Any portion of Plaintiffs' FAL claim that is based on a partial omission—that is, an omission that was "contrary to a representation actually made," *Hodsdon*, 891 F.3d at 865—is similarly doomed. The alleged representations—such as CapCut's "belie[f] in data transparency," Opp. at 27 (quoting SAC ¶ 431)—are purely aspirational and not actionable representations of material fact that contradict the facts. *See Doe v. Grindr Inc.*, 128 F.4th 1148, 1154 (9th Cir. 2025) ("[T]he statement that an interactive computer service provider will create a safe and secure environment is too general to be enforced."); *Vitt v. Apple Comp., Inc.*, 2010 WL 11545683, at *4 (C.D. Cal. May 21, 2010) (holding that "inherently vague and generalized terms . . . cannot be relied upon by reasonable consumers"), *aff'd*, 469 F. App'x 605 (9th Cir. 2012); *In re Marriott Int'l, Inc.*, 31 F.4th 898, 902 n.1 (4th Cir. 2022) (statement that "data security was 'critically important' to [defendant] . . . amounts to little more than puffery").

Plaintiffs also fail to show their personal *reliance* on any alleged misrepresentation. *See* Mot. at 23, 25. Plaintiffs' claim is premised on purported misstatements from CapCut and TikTok websites (including privacy policies), app store listings, and Congressional testimony, *see* Opp. at 27–30, but Plaintiffs do not allege they read those things before using the app and allege they never read CapCut's privacy policy. SAC ¶¶ 10, 13, 16–19, 22–25. Plaintiffs' allegations thus show they could not have relied on any alleged misstatement. *See* Dismissal Order at 32.

## VII. THE RESTITUTION AND UNJUST ENRICHMENT CLAIMS SHOULD BE DISMISSED AGAIN

Plaintiffs essentially concede that their restitution/unjust enrichment claim is merely a repackaged version of their defective UCL and FAL claims by citing to the UCL and FAL sections of their brief. *See* Opp. at 36. In any event, Plaintiffs' attempt to decouple these claims fails. They theorize that the restitution/unjust enrichment claim "could just as easily be premised on" claims that the Court declined to dismiss, *see id.*, but that does not match up with how Plaintiffs actually

pleaded their restitution/unjust enrichment claim, *see* SAC ¶¶ 493–521. Plaintiffs cannot amend their claim in a response brief. *Pirelli*, 631 F.3d at 448. When, as here, a plaintiff chooses to have "an unjust enrichment claim rest[] on the same improper conduct alleged in another claim, then the . . . unjust enrichment [claim] will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

## VIII. THE BIPA SECTION 15(e) CLAIM SHOULD BE DISMISSED AGAIN

Plaintiffs concede that many of their BIPA "15(e)" claims rely solely on section 15(b) and 15(d)'s informed consent and disclosure requirements, Opp. at 33, which this Court and others have held is improper. Mot. at 26. Plaintiffs claim those measures are "important" to allow users to "control" their biometric information.[8] Opp. at 33. But sections 15(b) and 15(d) already address data control and transfer. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020) (section 15(b)'s purpose is "to ensure that consumers understand" how biometric data will be used); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) ("Section 15(d) limits transfers of biometric information[.]"). Plaintiffs also fail to acknowledge that their claims about "controls" and "clear policies," Opp. at 33–34, are repurposed section 15(a) claims, and that their allegations about disclosure to China relate only to section 15(c). Mot. at 27.

The Opposition (not to mention the SAC) lacks any facts to support violations of widely adopted industry standards. Mot. at 28–29. For instance, Plaintiffs do not (1) claim that the ISO and NIST standards are reasonable (as opposed to aspirational), (2) identify the relevant industry, or (3) assert that these standards apply to that industry. Plaintiffs merely add more citations to the

[8] Defendants continue to reserve the right to argue that CapCut features do not collect or store biometric identifiers. Mot. at 26 n.15. The Court did not suggest "there is no factual issue to resolve" on that question. Opp. at 32 n.41. Pursuant to Rule 12(b)(6), the Court took at face value the complaint's allegations that CapCut collects "scans of face geometry" and "voiceprints," but recognized the cases holding that data must be "capable of identifying users" to be considered a biometric identifier. Dismissal Order at 40.

ISO and NIST, *see, e.g.*, Opp. at 32 n.42, 33 n.43, but do not address these deficiencies, essentially conceding they fail to state a claim. *See Bonte*, 624 F.3d at 466; *see also McClaine v. DX Enters., Inc.*, 2024 WL 3860971, at *4 (S.D. Ill. Aug. 19, 2024) (holding that "speculation" as to "the reasonable standard of care" cannot support a 15(e) claim).

Plaintiffs further claim that certain Defendants are subject to the CCPA and GDPR, laws that apply outside Illinois—unlike BIPA. Opp. at 34. But nothing in section 15(e) suggests that a private entity storing or transmitting data in Illinois must comply with other jurisdictions' purported legal requirements. *Cf. Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018) ("[I]f the liability-creating conduct occurs outside of California, California law generally should not govern that conduct[.]"). Indeed, the CCPA contains a specific provision forbidding its use "as the basis for a private right of action under any other statute." *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) (quoting Cal. Civ. Code § 1798.150(c)). Plaintiffs also fail to identify facts to suggest that California or European privacy law supplies relevant industry standards. To the contrary, Plaintiffs' reference to *Irish* and *EU* enforcement actions, Opp. at 34 n.47, only demonstrates that the GDPR does not reflect reasonable standards for data stored in Illinois.

Regardless, the CCPA's prohibition on using data for an unspecified purpose, Opp. at 34 n.45, has nothing to do with biometric data security. Mot. at 30. And claims that Defendants "collect[ed] more data than necessary," Opp. at 33; SAC ¶ 555, are too vague to be plausible. Mot. at 30; *see Canel v. Art Inst. of Chi.*, 2025 WL 564504, at *11 (N.D. Ill. Feb. 20, 2025). Plaintiffs repeat that some Defendants are subject to the CCPA, Opp. at 34, but do not identify those other purposes or how Defendants used Plaintiffs' purported biometric data outside of video editing. Mot. at 30. Moreover, "there is no private right of action" under the CCPA for collecting and

disclosing more data than necessary, *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *7 (N.D. Cal. Sep. 16, 2024), and allowing one through a BIPA backdoor would contradict the intent of voters who enacted the CCPA.

Plaintiffs also fail to support their remaining claims: that Defendants do not encrypt or segregate biometric data or conduct security audits of biometric data. Opp. at 34. As Defendants showed, Plaintiffs failed to plausibly allege that Defendants do not implement those or other data security measures for all data, including data that Plaintiffs claim is biometric. Mot. at 28–29. Plaintiffs' response—which merely recites the ISO and NIST standards (Opp. at 34)—does not correct this deficiency.

Finally, Plaintiffs do not identify any facts suggesting that CapCut stores or transmits biometric data in a deficient manner. Mot. at 28. TikTok Inc.'s spending money on "wall[ing] off data from China," Opp. at 35, has nothing to do with measures that the ByteDance entities who run CapCut are taking with respect to CapCut user biometric data. Additionally, Plaintiffs ignore—and thus concede—the point that TikTok Inc.'s general data security practices do not speak to Defendants' biometric data security practices for CapCut users. Mot. at 28.[9]

## CONCLUSION

For the foregoing reasons, and those discussed in Defendants' Motion to Dismiss, the SAC's first, second, third, fourth, seventh, eighth, ninth and twelfth causes of action should be dismissed with prejudice, as should the thirteenth cause of action to the extent that it asserts a claim under the BIPA Section 15(e).

[9] Plaintiffs acknowledge that the article they misleadingly cite (*see* Mot. at 28) did not mention data security. Opp. at 35 n.35. Vague "worries" and "concerns" that running CapCut out of China could subject companies to criticism has nothing to do with data security practices.

Dated: July 30, 2025

Respectfully submitted,

By: */s/ Anthony J Weibell*

Anthony J Weibell
Kristin W. Silverman
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
(650) 331-2030
aweibell@mayerbrown.com
ksilverman@mayerbrown.com

Sophia Mancall-Bitel
MAYER BROWN LLP
333 S. Grand Ave. 47th Floor
Los Angeles, CA 90071
(213) 229-9500
smancall-bitel@mayerbrown.com

J. Gregory Deis
Matthew D. Provance
Anastasiya Lobacheva
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
gdeis@mayerbrown.com
mprovance@mayerbrown.com
alobacheva@mayerbrown.com

*Counsel for Defendants ByteDance Inc., TikTok Inc., ByteDance Pte. Ltd., and ByteDance Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party through the Court's electronic filing service on July 30, 2025, which will send notification of such filing to the e-mail addresses registered.

Dated: July 30, 2025

*/s/ Anthony J Weibell*